1  JOSEPH R. ESQUIVEL, JR.
   LORI ESQUIVEL fka LORI HERDA
2  6940 Surrey Ct.
   Las Vegas, Nevada 89145
3  (702) 856-0609
4  DEBTORS IN PROPER PERSON

5                    UNITED STATES BANKRUPTCY COURT

6                         DISTRICT OF NEVADA

7                                    )
                                     ) CASE No.: BK-S-09BK-29236-BAM
8  In RE:                            )
                                     ) Date:
9  JOSEPH R.ESQUIVEL, JR. and        ) Time:
10      LORI ESQUIVEL,               )
                                     ) Chapter 7
11  _____Debtors_____    )

                              AFFIDAVIT
12
13      WE, JOSEPH R. ESQUIVEL, JR. and LORI ESQUIVEL hereby declare and state as
   follows:
14
        We are the Debtors in the above-entitled case;
15
        We received the attached correspondence dated _3/18/10_ from alleged creditor
16  BAC on _3/19/10_ ;

17      We are submitting a TRUE and CORRECT COPY of the attached correspondence via

18  this affidavit FOR THE RECORD and to be made a part of this file;

19      We declare under penalty of perjury under the laws of the State of Nevada that the

   forgoing is true and correct.
20
        Dated this _26th_ day of March, 2010.
21
                              By:
22
23                            _____
                              JOSEPH R. ESQUIVEL, JR., PRO SE
24                            DEBTOR

25                            _____
                              LORI ESQUIVEL fka LORI HERDA, PRO SE
26                            DEBTOR

cc: WILDE HANSEN, LLP

GREGORY R. WILDE, Esq.

Nevada Bar No. 4417

KEVIN S. SODERSTROM, Esq.

Nevada Bar No. 10235

208 South Jones Boulevard

Las Vegas, Nevada 89107


Dilworth Paxson, LLP

Adam L. Bliss

Pennsylvania Bar No. 307036

1500 Market Street 3500 E.

Philadelphia, PA 19102


UNITED STATES BANKRUPTCY TRUSTEE

    Yvette Weinstein

    6450 Spring Mountain Road., Suite No. 14

    Las Vegas, Nevada 89146

Lori Esquivel fka Lori Herda
6940 Surrey Ct.
Las Vegas, NV 89145
March 26, 2010


Dilworth Paxson LLP
Adam L. Bliss
1500 Market Street 3500E
Philadelphia, PA 19102


Dear Mr. Bliss:

RE:    Property Address    : 6940 Surrey Ct. Las Vegas, NV 89145

       Alleged Loan # 0009713537405005

       Clark Co. APN : 138-34-610-006

I have received correspondence from the above-indicated Philadelphia location dated March 18, 2010, mailed 03/18/2010 and received by me March 19, 2010 regarding my previous inquiry dated December 14, 2009.  By law, you were required to answer it within sixty (60) days.

       However late your reply, it was considered a non-response according to the terms of the contract which required an answer to all counts, point by point, under oath with document proof.

I have also noted that your firm is not licensed to practice law in the state of Nevada.

Sincerely,



Lori Esquivel  fka Lori Herda

*Lori Esquivel*

JOSEPH R. ESQUIVEL, JR.
LORI  ESQUIVEL fka LORI HERDA
6940 Surrey Ct.
Las Vegas, Nevada  89145
(702) 856-0609

DEBTORS IN PROPER PERSON

UNITED STATES BANKRUPTCY COURT

DISTRICT OF NEVADA

|  |  |
|---|---|
| In RE: | ) |
|  | ) CASE No.: BK-S-09BK-29236-BAM |
|  | ) |
|  | ) Date: 3/26/2010 |
| JOSEPH R.ESQUIVEL, JR. and | ) |
|     LORI ESQUIVEL, | ) |
|  | ) Chapter 7 |
|        Debtors | ) |

### RECEIPT OF COPY

RECEIPT of Correspondence with BAC  is hereby acknowledged this 26th day of
March , 2010 .

_____
EMPLOYEE OF WILDE & ASSOCIATES



direct dial number:
(215) 575-7290

**Dilworth Paxson** LLP

Adam L. Bliss
abliss@dilworthlaw.com

March 18, 2010

Lori Herda
6940 Surrey Court
Las Vegas, NV 89145

Re:    Borrower(s): Lori Herda (the "Borrower")
       Property Address: 6940 Surrey Court, Las Vegas, NV 89145
       Loan Number(s): 97135374 (the "Loan")

Dear Ms. Herda:

This firm represents BAC Home Loans Servicing, LP, a subsidiary of Bank of America, N.A. ("BAC Home Loans"), f/k/a Countrywide Home Loans Servicing LP, with regard to the Loan. We are writing in response to your correspondence dated December 14, 2009 and January 13, 2010 (collectively, the "Letter") which were sent to BAC Home Loans for response, wherein you request information regarding the Loan. Although couched as a "qualified written request," the information requested in the Letter goes well beyond that which is available through a qualified written request made under 12 U.S.C. §2605 ("QWR").

As you may be aware, a QWR is a written correspondence which includes a statement of specific reasons why the borrower believes that its account is in error and which provides sufficient detail to allow the servicer of the loan to review the borrower's account to determine whether there were errors made in connection with the account, and to either make appropriate corrections where errors were made or explain to the borrower why the servicer believes the account is accurate. A QWR is not a vehicle for a borrower to obtain confidential information concerning the lender's business practices, trade secrets or other proprietary information, nor can it be used to support a fishing expedition for documents that may support a claim or as a mechanism for seeking any other information which does not relate specifically to the borrower's loan. The Letter seeks information which goes well beyond that which is available through a QWR, while failing to provide any of the necessary detail regarding any specific error(s) made by the servicer in connection with the Loan.

The Letter also purports to require BAC Home Loans to respond to each of the Borrower's inquiries or waive certain of its rights, and further concludes, without any factual or legal support, that a failure to respond will confer certain rights upon the Borrower. Please be advised that BAC Home Loans is under no obligation to respond to the majority of the Borrower's inquiries, and expressly rejects any claim, conclusion or inference that it has somehow limited or waived any rights or remedies it may now or hereafter have, whether arising under the Loan documents, at law or in equity, as the result of its response, or lack thereof, to all or any portion of the Letter, all of which rights and remedies are expressly reserved. BAC Home Loans also

Dilworth Paxson LLP

expressly rejects any claim, conclusion or inference that any failure by BAC Home Loans to respond to all or any portion of the Letter will cause any right, power or authority to be granted or bestowed upon, or otherwise inure to, the Borrower or any agent of the Borrower. Notwithstanding any failure by BAC Home Loans to respond to all or any portion of the Letter, the Loan documents shall remain enforceable as written and the respective rights and obligations of the parties shall remain unaffected.

Although the Letter is overly broad, unduly burdensome and not in conformity with 12 U.S.C §2605, we reviewed BAC Home Loans' file documents in an attempt to obtain information responsive to those of your inquiries which were consistent with 12 U.S.C §2605. We will address those of your inquiries which require a response in the same order as presented in the Letter as follows:

### 1.) Original Note and Chain of Transfer

With respect to your demand for evidence of the original note and a chain of transfer, you cite no authority that supports your claim that you are entitled to the information/documentation you request and we are not aware of the existence of any such authority. Accordingly, we respectfully decline this request. In lieu of allowing inspection of the original note, we have enclosed herewith a true and correct copy of the note.

### 2.) Document Copies

Enclosed are copies of the following documents:

- a) Uniform Residential Loan Application;
- b) Appraisal Report;
- c) Good Faith Estimate(s);
- d) Deed of Trust;
- e) Note;
- f) Truth in Lending Disclosure Statement(s); and
- g) HUD-1 Settlement Statement.

Your requests for all other documents and copies of checks have been declined, as such requests are either overly broad, do not concern the application of payments or the disbursement of funds, or do not relate to any specific acts of wrongdoing that you have alleged.

### 3.) Account Accounting and Servicing Systems

Enclosed is a Payment History that provides a detailed outline of transactions for the Loan during BAC Home Loans' servicing. Please note that this history provides pertinent information on payments received, tax and insurance payments disbursed, funds in the suspense/unapplied funds balance, and late charges assessed and paid. The Payment History is designed to be user-friendly and there are no codes or terms used in the Payment History that require specific definitions. Please note the Payment History sets forth the application of payments per the terms of the Borrowers' loan documents and may not represent the application of prepetition and postpetition payments pursuant to an applicable bankruptcy plan which may be in effect.

To date, the fees that have been charged against the account and are not reflected in the Payment History are as follows: attorney/trustee fees, $300.00; expedited payoff service fees, $30.00; inspection fees, $15.00; mailing fees, $83.86; mortgage pay by web service fees, $207.00; recording fees, $65.00; and title fees, $225.00. The remainder of these requests are overly broad, do not concern the application of payments or the disbursement of funds to the Borrower, and make no allegations whatsoever of any wrongdoing by BAC Home Loans. Accordingly, these requests are declined as they seek documentation that goes beyond that which is available through a "qualified written request" under 12 U.S.C. §2605.

**4.) Debits and Credits**

See paragraph 3 above. The remainder of these requests are overly broad, do not concern the application of payments or the disbursement of funds to the Borrower, and make no allegations whatsoever of any wrongdoing by BAC Home Loans. Accordingly, these requests are declined as they seek documentation that goes beyond that which is available through a "qualified written request" under 12 U.S.C. §2605.

**5.) Mortgage and Assignments**

The current owner of the note is the Fannie Mae, with an address of 13150 World Gate Drive, Herndon, VA 20170 and a telephone number of (703) 833-1700. BAC Home Loans is the servicer of the Loan. The remainder of these requests are overly broad, do not concern the application of payments or the disbursement of funds to the Borrower, and make no allegations whatsoever of any wrongdoing by BAC Home Loans. Accordingly, these requests are declined as they seek documentation that goes beyond that which is available through a "qualified written request" under 12 U.S.C. §2605.

**6.) Attorney Fees**

See paragraph 3 above. The remainder of these requests are overly broad, do not concern the application of payments or the disbursement of funds to the Borrower, and make no allegations whatsoever of any wrongdoing by BAC Home Loans. Accordingly, these requests are declined as they seek documentation that goes beyond that which is available through a "qualified written request" under 12 U.S.C. §2605.

**7.) Suspense/Unapplied Accounts**

See paragraph 3 above. The remainder of these requests are overly broad, do not concern the application of payments or the disbursement of funds to the Borrower, and make no allegations whatsoever of any wrongdoing by BAC Home Loans. Accordingly, these requests are declined as they seek documentation that goes beyond that which is available through a "qualified written request" under 12 U.S.C. §2605.

**8.) Late Fees**

Late charges are reported as interest paid effective with the 2008 tax year. Prior to the 2008 tax year, there was no interest paid or reported to the IRS relating to late charges assessed and paid to this account. See also paragraphs 2 and 3 above. The remainder of these requests are overly broad, do not concern the application of payments or the disbursement of funds to the Borrower, and make no allegations whatsoever of any wrongdoing by BAC Home Loans. Accordingly,

Dilworth Paxson LLP

Page 4

these requests are declined as they seek documentation that goes beyond that which is available through a "qualified written request" under 12 U.S.C. §2605.

## 9.) Property Inspections

Please review paragraph 3 above for the fees due in connection with property inspections performed. Please refer to the enclosed documents for information regarding the circumstances whereby property inspections may be performed. The remainder of these requests are overly broad, do not concern the application of payments or the disbursement of funds to the Borrower, and make no allegations whatsoever of any wrongdoing by BAC Home Loans. Accordingly, these requests are declined as they seek documentation that goes beyond that which is available through a "qualified written request" under 12 U.S.C. §2605.

## 10.) BPO Fees

See the response to paragraph 3 above. The remainder of these requests are overly broad, do not concern the application of payments or the disbursement of funds to the Borrower, and make no allegations whatsoever of any wrongdoing by BAC Home Loans. Accordingly, these requests are declined as they seek documentation that goes beyond that which is available through a "qualified written request" under 12 U.S.C. §2605.

## 11.) Forced Placed Insurance

Per the terms and conditions of the aforementioned documents, forced placed insurance, also known as lender secured insurance, can be secured by the lender if notification is received via property inspections that indicates the property as being vacant during the delinquency of the loan. Lender secured insurance can also be placed if a borrower does not provide the lender with his preferred insurance information in a timely manner.

As of the date of this correspondence, no lender placed insurance has been secured in connection with the Loan.

The remainder of these requests are overly broad, do not concern the application of payments or the disbursement of funds to the Borrower, and make no allegations whatsoever of any wrongdoing by BAC Home Loans. Accordingly, these requests are declined as they seek documentation that goes beyond that which is available through a "qualified written request" under 12 U.S.C. §2605.

## 12.) Servicing Related Questions

These requests are overly broad, do not concern the application of payments or the disbursement of funds to the Borrower, and make no allegations whatsoever of any wrongdoing by BAC Home Loans. Accordingly, these requests are declined as they seek documentation that goes beyond that which is available through a "qualified written request" under 12 U.S.C. §2605.

## 13.) Verification of Debt

To the extent the Letter can be construed as a request for verification of the debt, please be advised that the Loan is evidenced by a Note dated May 3, 2005 in the principal amount of $205,000.00, executed by the Borrower, in favor of Countrywide Home Loans, Inc., a copy of which is enclosed. The Loan is secured by a Deed of Trust dated the same date, a copy of which

is enclosed. Please see paragraph 5 above for information concerning the current owner of the note. Please refer to the enclosed documents for additional information.

A payoff demand statement has been requested and will be forwarded to you under separate cover. This payoff demand statement will show all amounts necessary to pay off the Loan.

The Letter also encloses a document titled "Conditional Acceptance of Your Offer Charging Me $204,842.07 and the Terms of Contract" (the "Acceptance"). The Acceptance asserts, without legal support, that BAC Home Loans' failure to provide the Borrower with the original promissory note will release BAC Home Loans' claim against the Borrower and will entitle the Borrower to damages in the amount of $614,526.21. Please see paragraph 1 above regarding your request for the original promissory note. Please also be advised that, notwithstanding anything in the Acceptance or the QWR, BAC Home Loans makes no admission of fraud or any other wrongdoing, the Loan documents shall remain enforceable as written, and the respective rights and obligations of the parties shall remain unaffected.

If you have further concerns or questions regarding this matter please contact BAC Home Loans' bankruptcy technician, Kathy Kinel, at (805) 995-3004. Thank you for this opportunity to be of service.

In providing the above response, BAC Home Loans is not limiting or waiving any rights or remedies it may now have or hereafter have, whether arising under the loan documents, at law or in equity, all of which rights and remedies are expressly reserved.

Very truly yours,

Adam L. Bliss

Enclosures

853701_1



**Home Loans**
P.O. Box 5170
Simi Valley, CA 93062-5170

**Notice Date:** 03/17/2010

**Account No.:** 97135374

LORI HERDA
6940 Surrey Ct
Las Vegas, NV 89145

**Property Address:**
6940 SURREY COURT
LAS VEGAS, NV 89145

---

**ABOUT YOUR LOAN**

Attached is a loan history that provides a detailed outline of transactions for the above-referenced account number.

Please note that this history provides pertinent information on payments received, tax and insurance payments disbursed, and late charges assessed and paid.

---

**THANK YOU FOR YOUR BUSINESS**

You are a valued customer here at BAC Home Loans Servicing, LP and it is our continued goal to provide our customers with the highest level of customer satisfaction.

If you need further assistance, please contact our Customer Service Department directly at 1-800-669-6607.

This communication is from BAC Home Loans Servicing, LP, a subsidiary of Bank of America, N.A.

LNHISTF 7473/9944 06/27/2007

**Bank of America**
**Home Loans**

Page 3

Account Number:  97135374
Statement Period:  05/2005 - 03/2010
Date Prepared:  03/17/2010

Property Address:
6940 SURREY COURT
LAS VEGAS, NV  89145

| Transaction Date | Description | Total Payment | PMT/Mo | Principal Balance | Interest | Escrow Balance | Optional | Buydown | Late Charges Total | Unapplied Total |
|---|---|---|---|---|---|---|---|---|---|---|
| | **Beginning Balance** | | | 205,000.00 | | .00 | | | .00 | .00 |
| | | | | | | .00 | | | .00 | .00 |
| 05/25/2005 | MISC POSTING | 286.40 | 06/2005 | .00 | 286.40 | .00 | .00 | .00 | .00 | .00 |
| | | | | 205,000.00 | | .00 | | | .00 | .00 |
| 05/25/2005 | INITIAL INS DEP | 186.99 | 06/2005 | .00 | .00 | 186.99 | .00 | .00 | .00 | .00 |
| | | | | 205,000.00 | | 186.99 | | | .00 | .00 |
| 05/25/2005 | INITIAL TAX DEP | 138.97 | 06/2005 | .00 | .00 | 138.97 | .00 | .00 | .00 | .00 |
| | | | | 205,000.00 | | 325.96 | | | .00 | .00 |
| 07/14/2005 | REGULAR PAYMENT | 1,441.90 | 07/2005 | 189.87 | 1,089.06 | 162.97 | .00 | .00 | .00 | .00 |
| | | | | 204,810.13 | | 488.93 | | | .00 | .00 |
| 08/11/2005 | COUNTY TAX PMT | -326.07 | 07/2005 | .00 | .00 | -326.07 | .00 | .00 | .00 | .00 |
| | | | | 204,810.13 | | 162.86 | | | .00 | .00 |
| 08/15/2005 | REGULAR PAYMENT | 1,441.90 | 08/2005 | 190.88 | 1,088.05 | 162.97 | .00 | .00 | .00 | .00 |
| | | | | 204,619.25 | | 325.83 | | | .00 | .00 |
| 09/14/2005 | REGULAR PAYMENT | 1,441.90 | 09/2005 | 191.89 | 1,087.04 | 162.97 | .00 | .00 | .00 | .00 |
| | | | | 204,427.36 | | 488.80 | | | .00 | .00 |
| 09/29/2005 | COUNTY TAX PMT | -326.06 | 09/2005 | .00 | .00 | -326.06 | .00 | .00 | .00 | .00 |
| | | | | 204,427.36 | | 162.74 | | | .00 | .00 |
| 10/17/2005 | REGULAR PAYMENT | 1,441.90 | 10/2005 | 192.91 | 1,086.02 | 162.97 | .00 | .00 | .00 | .00 |
| | | | | 204,234.45 | | 325.71 | | | .00 | .00 |
| 11/15/2005 | REGULAR PAYMENT | 1,441.90 | 11/2005 | 193.93 | 1,085.00 | 162.97 | .00 | .00 | .00 | .00 |
| | | | | 204,040.52 | | 488.68 | | | .00 | .00 |
| 12/14/2005 | REGULAR PAYMENT | 1,441.90 | 12/2005 | 194.96 | 1,083.97 | 162.97 | .00 | .00 | .00 | .00 |
| | | | | 203,845.56 | | 651.65 | | | .00 | .00 |
| 12/23/2005 | COUNTY TAX PMT | -326.06 | 12/2005 | .00 | .00 | -326.06 | .00 | .00 | .00 | .00 |
| | | | | 203,845.56 | | 325.59 | | | .00 | .00 |
| 01/11/2006 | REGULAR PAYMENT | 1,441.90 | 01/2006 | 196.00 | 1,082.93 | 162.97 | .00 | .00 | .00 | .00 |
| | | | | 203,649.56 | | 488.56 | | | .00 | .00 |
| 02/15/2006 | REGULAR PAYMENT | 1,462.07 | 02/2006 | 197.04 | 1,081.89 | 183.14 | .00 | .00 | .00 | .00 |
| | | | | 203,452.52 | | 671.70 | | | .00 | .00 |
| 02/28/2006 | COUNTY TAX PMT | -326.06 | 02/2006 | .00 | .00 | -326.06 | .00 | .00 | .00 | .00 |
| | | | | 203,452.52 | | 345.64 | | | .00 | .00 |

**Bank of America**
Home Loans

Page 4

Account Number:      97135574
Statement Period:    05/2005 - 03/2010
Date Prepared:       03/17/2010

Property Address:
6940 SURREY COURT
LAS VEGAS, NV 89145

| Transaction Date | Description | Total Payment | PMT/Mo | Principal Balance | Interest | Escrow Balance | Optional | Buydown | Late Charges Total | Unapplied Total |
|---|---|---|---|---|---|---|---|---|---|---|
| 03/15/2006 | REGULAR PAYMENT | 1,462.07 | 03/2006 | 198.09 203,254.43 | 1,080.84 | 183.14 528.78 | .00 | .00 | .00 .00 | .00 .00 |
| 04/14/2006 | REGULAR PAYMENT | 1,462.07 | 04/2006 | 199.14 203,055.29 | 1,079.79 | 183.14 711.92 | .00 | .00 | .00 .00 | .00 .00 |
| 05/15/2006 | REGULAR PAYMENT | 1,462.07 | 05/2006 | 200.20 202,855.09 | 1,078.73 | 183.14 895.06 | .00 | .00 | .00 .00 | .00 .00 |
| 05/22/2006 | HAZARD INS PMT | -706.00 | 05/2006 | .00 202,855.09 | .00 | -706.00 189.06 | .00 | .00 | .00 .00 | .00 .00 |
| 06/15/2006 | REGULAR PAYMENT | 1,462.07 | 06/2006 | 201.26 202,653.83 | 1,077.67 | 183.14 372.20 | .00 | .00 | .00 .00 | .00 .00 |
| 07/14/2006 | REGULAR PAYMENT | 1,462.07 | 07/2006 | 202.33 202,451.50 | 1,076.60 | 183.14 555.34 | .00 | .00 | .00 .00 | .00 .00 |
| 07/21/2006 | COUNTY TAX PMT | -352.14 | 07/2006 | .00 202,451.50 | .00 | -352.14 203.20 | .00 | .00 | .00 .00 | .00 .00 |
| 08/14/2006 | REGULAR PAYMENT | 1,462.07 | 08/2006 | 203.41 202,248.09 | 1,075.52 | 183.14 386.34 | .00 | .00 | .00 .00 | .00 .00 |
| 09/15/2006 | REGULAR PAYMENT | 1,462.07 | 09/2006 | 204.49 202,043.60 | 1,074.44 | 183.14 569.48 | .00 | .00 | .00 .00 | .00 .00 |
| 09/27/2006 | COUNTY TAX PMT | -352.15 | 09/2006 | .00 202,043.60 | .00 | -352.15 217.33 | .00 | .00 | .00 .00 | .00 .00 |
| 10/16/2006 | REGULAR PAYMENT | 1,462.07 | 10/2006 | 205.57 201,838.03 | 1,073.36 | 183.14 400.47 | .00 | .00 | .00 .00 | .00 .00 |
| 11/13/2006 | REGULAR PAYMENT | 1,462.07 | 11/2006 | 206.67 201,631.36 | 1,072.26 | 183.14 583.61 | .00 | .00 | .00 .00 | .00 .00 |
| 12/15/2006 | REGULAR PAYMENT | 1,459.34 | 12/2006 | 207.76 201,423.60 | 1,071.17 | 180.41 764.02 | .00 | .00 | .00 .00 | .00 .00 |
| 12/22/2006 | COUNTY TAX PMT | -352.15 | 12/2006 | .00 201,423.60 | .00 | -352.15 411.87 | .00 | .00 | .00 .00 | .00 .00 |

**Bank of America**
**Home Loans**

Page 5

Account Number: 97135374
Statement Period: 05/2005 - 03/2010
Date Prepared: 03/17/2010

Property Address:
6940 SURREY COURT
LAS VEGAS, NV 89145

| Transaction Date | Description | Total Payment | PMT/Mo | Principal Balance | Interest | Escrow Balance | Optional | Buydown | Late Charges Total | Unapplied Total |
|---|---|---|---|---|---|---|---|---|---|---|
| 01/12/2007 | REGULAR PAYMENT | 1,459.34 | 01/2007 | 208.87 201,214.73 | 1,070.06 | 180.41 592.28 | .00 | .00 | .00 .00 | .00 .00 |
| 02/13/2007 | REGULAR PAYMENT | 1,459.34 | 02/2007 | 209.98 201,004.75 | 1,068.95 | 180.41 772.69 | .00 | .00 | .00 .00 | .00 .00 |
| 02/28/2007 | COUNTY TAX PMT | -352.15 | 02/2007 | .00 201,004.75 | .00 | -352.15 420.54 | .00 | .00 | .00 .00 | .00 .00 |
| 03/14/2007 | REGULAR PAYMENT | 1,459.34 | 03/2007 | 211.09 200,793.66 | 1,067.84 | 180.41 600.95 | .00 | .00 | .00 .00 | .00 .00 |
| 04/16/2007 | REGULAR PAYMENT | 1,459.34 | 04/2007 | 212.21 200,581.45 | 1,066.72 | 180.41 781.36 | .00 | .00 | .00 .00 | .00 .00 |
| 05/15/2007 | REGULAR PAYMENT | 1,459.34 | 05/2007 | 213.34 200,368.11 | 1,065.59 | 180.41 961.77 | .00 | .00 | .00 .00 | .00 .00 |
| 05/21/2007 | HAZARD INS PMT | -629.00 | 05/2007 | .00 200,368.11 | .00 | -629.00 332.77 | .00 | .00 | .00 .00 | .00 .00 |
| 06/15/2007 | REGULAR PAYMENT | 1,459.34 | 06/2007 | 214.47 200,153.64 | 1,064.46 | 180.41 513.18 | .00 | .00 | .00 .00 | .00 .00 |
| 07/16/2007 | REGULAR PAYMENT | 1,459.34 | 07/2007 | 215.61 199,938.03 | 1,063.32 | 180.41 693.59 | .00 | .00 | .00 .00 | .00 .00 |
| 08/14/2007 | REGULAR PAYMENT | 1,459.34 | 08/2007 | 216.76 199,721.27 | 1,062.17 | 180.41 874.00 | .00 | .00 | .00 .00 | .00 .00 |
| 08/15/2007 | COUNTY TAX PMT | -380.32 | 08/2007 | .00 199,721.27 | .00 | -380.32 493.68 | .00 | .00 | .00 .00 | .00 .00 |
| 09/17/2007 | REGULAR PAYMENT | 1,459.34 | 09/2007 | 217.91 199,503.36 | 1,061.02 | 180.41 674.09 | .00 | .00 | .00 .00 | .00 .00 |
| 09/29/2007 | COUNTY TAX PMT | -380.32 | 09/2007 | .00 199,503.36 | .00 | -380.32 293.77 | .00 | .00 | .00 .00 | .00 .00 |
| 10/15/2007 | REGULAR PAYMENT | 1,459.34 | 10/2007 | 219.07 199,284.29 | 1,059.86 | 180.41 474.18 | .00 | .00 | .00 .00 | .00 .00 |

**Bank of America**
**Home Loans**

Account Number: 97135374
Statement Period: 05/2005 - 03/2010
Date Prepared: 03/17/2010

Property Address:
6940 SURREY COURT
LAS VEGAS, NV 89145

Page 6

| Transaction Date | Description | Total Payment | PMT/Mo | Principal Balance | Interest | Escrow Balance | Optional | Buydown | Late Charges Total | Unapplied Total |
|---|---|---|---|---|---|---|---|---|---|---|
| 11/16/2007 | REGULAR PAYMENT | 1,459.34 | 11/2007 | 220.23 / 199,064.06 | 1,058.70 | 180.41 / 654.59 | .00 | .00 | .00 / .00 | .00 / .00 |
| 12/17/2007 | REGULAR PAYMENT | 1,456.63 | 12/2007 | 221.40 / 198,842.66 | 1,057.53 | 178.00 / 832.59 | .00 | .00 | .00 / .00 | .00 / .00 |
| 12/26/2007 | COUNTY TAX PMT | -380.32 | 12/2007 | .00 / 198,842.66 | .00 | -380.32 / 452.27 | .00 | .00 | .00 / .00 | .00 / .00 |
| 01/16/2008 | REGULAR PAYMENT | 1,456.93 | 01/2008 | 222.58 / 198,620.08 | 1,056.35 | 178.00 / 630.27 | .00 | .00 | .00 / .00 | .00 / .00 |
| 02/15/2008 | REGULAR PAYMENT | 1,456.93 | 02/2008 | 223.76 / 198,396.32 | 1,055.17 | 178.00 / 808.27 | .00 | .00 | .00 / .00 | .00 / .00 |
| 02/27/2008 | COUNTY TAX PMT | -380.32 | 02/2008 | .00 / 198,396.32 | .00 | -380.32 / 427.95 | .00 | .00 | .00 / .00 | .00 / .00 |
| 03/14/2008 | REGULAR PAYMENT | 1,456.93 | 03/2008 | 224.95 / 198,171.37 | 1,053.98 | 178.00 / 605.95 | .00 | .00 | .00 / .00 | .00 / .00 |
| 04/25/2008 | REGULAR PAYMENT | 1,520.83 | 04/2008 | 226.14 / 197,945.23 | 1,052.79 | 178.00 / 783.95 | .00 | .00 | 63.95 / .00 | .00 / .00 |
| 05/16/2008 | REGULAR PAYMENT | 1,456.93 | 05/2008 | 227.35 / 197,717.88 | 1,051.58 | 178.00 / 961.95 | .00 | .00 | .00 / .00 | .00 / .00 |
| 05/19/2008 | HAZARD INS PMT | -670.00 | 05/2008 | .00 / 197,717.88 | .00 | -670.00 / 291.95 | .00 | .00 | .00 / .00 | .00 / .00 |
| 06/16/2008 | REGULAR PAYMENT | 1,456.93 | 06/2008 | 228.55 / 197,489.33 | 1,050.38 | 178.00 / 469.95 | .00 | .00 | .00 / .00 | .00 / .00 |
| 07/21/2008 | REGULAR PAYMENT | 1,520.83 | 07/2008 | 229.77 / 197,259.56 | 1,049.16 | 178.00 / 647.95 | .00 | .00 | 63.95 / .00 | .00 / .00 |
| 08/11/2008 | COUNTY TAX PMT | -410.73 | 07/2008 | .00 / 197,259.56 | .00 | -410.73 / 237.22 | .00 | .00 | .00 / .00 | .00 / .00 |
| 08/15/2008 | REGULAR PAYMENT | 1,456.93 | 08/2008 | 230.99 / 197,028.57 | 1,047.94 | 178.00 / 415.22 | .00 | .00 | .00 / .00 | .00 / .00 |

**Bank of America**
**Home Loans**

Account Number: 97135374
Statement Period: 05/2005 - 03/2010
Date Prepared: 03/17/2010

Property Address:
6940 SURREY COURT
LAS VEGAS, NV 89145

Page 7

| Transaction Date | Description | Total Payment | PMT/Mo | Principal Balance | Interest | Escrow Balance | Optional | Buydown | Late Charges Total | Unapplied Total |
|---|---|---|---|---|---|---|---|---|---|---|
| 09/29/2008 | REGULAR PAYMENT | 1,520.88 | 09/2008 | 232.22 / 196,796.35 | 1,046.71 | 178.00 / 593.22 | .00 | .00 | 63.95 / .00 | .00 / .00 |
| 09/30/2008 | COUNTY TAX PMT | -410.75 | 09/2008 | .00 / 196,796.35 | .00 | -410.75 / 182.47 | .00 | .00 | .00 / .00 | .00 / .00 |
| 10/17/2008 | REGULAR PAYMENT | 1,520.88 | 10/2008 | 233.45 / 196,562.90 | 1,045.48 | 178.00 / 360.47 | .00 | .00 | 63.95 / .00 | .00 / .00 |
| 11/17/2008 | REGULAR PAYMENT | 1,456.93 | 11/2008 | 234.69 / 196,328.21 | 1,044.24 | 178.00 / 538.47 | .00 | .00 | .00 / .00 | .00 / .00 |
| 12/22/2008 | REGULAR PAYMENT | 1,484.17 | 12/2008 | 235.94 / 196,092.27 | 1,042.99 | 205.24 / 743.71 | .00 | .00 | .00 / -63.95 | .00 / .00 |
| 12/22/2008 | COUNTY TAX PMT | -410.75 | 12/2008 | .00 / 196,092.27 | .00 | -410.75 / 332.96 | .00 | .00 | .00 / -63.95 | .00 / .00 |
| 01/13/2009 | REGULAR PAYMENT | 1,548.12 | 01/2009 | 237.19 / 195,855.08 | 1,041.74 | 205.24 / 538.20 | .00 | .00 | 63.95 / .00 | .00 / .00 |
| 02/17/2009 | REGULAR PAYMENT | 1,484.17 | 02/2009 | 238.45 / 195,616.63 | 1,040.48 | 205.24 / 743.44 | .00 | .00 | .00 / .00 | .00 / .00 |
| 02/25/2009 | COUNTY TAX PMT | -410.75 | 02/2009 | .00 / 195,616.63 | .00 | -410.75 / 332.69 | .00 | .00 | .00 / .00 | .00 / .00 |
| 03/17/2009 | REGULAR PAYMENT | 1,484.17 | 03/2009 | 239.72 / 195,376.91 | 1,039.21 | 205.24 / 537.93 | .00 | .00 | .00 / .00 | .00 / .00 |
| 05/04/2009 | REGULAR PAYMENT | 1,484.17 | 04/2009 | 240.99 / 195,135.92 | 1,037.94 | 205.24 / 743.17 | .00 | .00 | .00 / -63.95 | .00 / .00 |
| 05/22/2009 | HAZARD INS PMT | -703.00 | 04/2009 | .00 / 195,135.92 | .00 | -703.00 / 40.17 | .00 | .00 | .00 / -63.95 | .00 / .00 |
| 05/26/2009 | REGULAR PAYMENT | 1,612.07 | 05/2009 | 242.27 / 194,893.65 | 1,036.66 | 205.24 / 245.41 | .00 | .00 | 127.90 / .00 | .00 / .00 |
| 08/11/2009 | COUNTY TAX PMT | -301.22 | 05/2009 | .00 / 194,893.65 | .00 | -301.22 / -55.81 | .00 | .00 | .00 / .00 | .00 / .00 |

**Bank of America**
Home Loans

Page 3

Account Number: 97135374
Statement Period: 05/2005 - 03/2010
Date Prepared: 03/17/2010

Property Address:
6940 SURREY COURT
LAS VEGAS, NV 89145

| Transaction Date | Description | Total Payment | PMT/Mo | Principal Balance | Interest | Escrow Balance | Optional | Buydown | Late Charges Total | Unapplied Total |
|---|---|---|---|---|---|---|---|---|---|---|
| 03/25/2009 | SPEC. ASSESSMENT | -51.42 | 05/2009 | .00 194,893.65 | .00 | -51.42 -107.23 | .00 | .00 | .00 .00 | .00 .00 |
| 03/30/2009 | COUNTY TAX PMT | -301.23 | 05/2009 | .00 194,893.65 | .00 | -301.23 -408.46 | .00 | .00 | .00 .00 | .00 .00 |
| 12/04/2009 | TAX CREDIT | 51.42 | 05/2009 | .00 194,893.65 | .00 | 51.42 -357.04 | .00 | .00 | .00 .00 | .00 .00 |
| 12/24/2009 | COUNTY TAX PMT | -301.23 | 05/2009 | .00 194,893.65 | .00 | -301.23 -658.27 | .00 | .00 | .00 .00 | .00 .00 |
| 02/22/2010 | COUNTY TAX PMT | -301.23 | 05/2009 | .00 194,893.65 | .00 | -301.23 -959.50 | .00 | .00 | .00 .00 | .00 .00 |

05/19/2005   09:47   7022476900           ALLIANCE MORTGAGE           PAGE   02/06

# Uniform Residential Loan Application
## ALLIANCE MORTGAGE

This application is designed to be completed by the applicant(s) with the lender's assistance. Applicants should complete this form as "Borrower" or "Co-Borrower," as applicable. Co-Borrower information must also be provided (and the appropriate box checked) when ☐ the income or assets of a person other than the "Borrower" (including the Borrower's spouse) will be used as a basis for loan qualification or ☐ the income or assets of the Borrower's spouse will not be used as a basis for loan qualification, but his or her liabilities must be considered because the Borrower resides in a community property state, the security property is located in a community property state, or the Borrower is relying on other property located in a community property state as a basis for repayment of the loan.

## I. TYPE OF MORTGAGE AND TERMS OF LOAN

| Mortgage Applied for: | ☐ VA  ☒ Conventional  ☐ Other  ☐ FHA  ☐ USDA/Rural Housing Service | Agency Case Number | | Lender Case Number | |
|---|---|---|---|---|---|
| Amount $ 205,000.00 | Interest Rate 6.500 % | No. of Months 360 | Amortization Type: ☒ Fixed Rate ☐ GPM | ☐ Other (explain): ☐ ARM (type): | |

## II. PROPERTY INFORMATION AND PURPOSE OF LOAN

| Subject Property Address (street, city, state & zip code) 6940 SURREY CT, LAS VEGAS, NV 89145 | | | County CLARK | No. of Units 1 |
|---|---|---|---|---|
| Legal Description of Subject Property (attach description if necessary) SEE PRELIMINARY TITLE REPORT | | | | Year Built 1971 |

| Purpose of Loan | ☒ Purchase  ☐ Construction  ☐ Construction-Permanent  ☐ Refinance  ☐ Other (explain): | Property will be: ☒ Primary Residence  ☐ Secondary Residence  ☐ Investment |
|---|---|---|

Complete this line if construction or construction-permanent loan.

| Year Lot Acquired | Original Cost $ | Amount Existing Liens $ | (a) Present Value of Lot $ | (b) Cost of Improvements $ | Total (a+b) $ |
|---|---|---|---|---|---|

Complete this line if this is a refinance loan.

| Year Acquired | Original Cost $ | Amount Existing Liens $ | Purpose of Refinance | Describe Improvements ☐ made ☐ to be made  Cost: $ |
|---|---|---|---|---|

| Title will be held in what Name(s) LORI  M HERDA | Manner in which Title will be held Sole & Separate Property | Estate will be held in: ☒ Fee Simple ☐ Leasehold (show expiration date) |
|---|---|---|

| Source of Down Payment, Settlement Charges and/or Subordinate Financing (explain) SAVINGS |
|---|

## III. BORROWER INFORMATION

| | Borrower | | | Co-Borrower | |
|---|---|---|---|---|---|
| Borrower's Name (include Jr. or Sr. if applicable) LORI M HERDA | | | Co-Borrower's Name (include Jr. or Sr. if applicable) | | |
| Social Security Number 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 | Home Phone (incl. area code) (702) 658-0809 | DOB (MM/DD/YYYY) 07/22/1968 | Yrs. School 14 | Social Security Number | Home Phone (incl. area code) | DOB (MM/DD/YYYY) | Yrs. School |
| ☒ Married  ☐ Unmarried (include single, divorced, widowed)  ☐ Separated | | Dependents (not listed by Co-Borrower) no. 1  ages | ☐ Married  ☐ Unmarried (include single, divorced, widowed)  ☐ Separated | | Dependents (not listed by Borrower) no.  ages |
| Present Address (street, city, state, zip code)  ☒ Own  ☐ Rent _No. Yrs. 102 PARKER RANCH DR LAS VEGAS, NV 89012 | | | Present Address (street, city, state, zip code)  ☐ Own  ☐ Rent _No. Yrs. | | |
| Mailing Address, if different from Present Address | | | Mailing Address, if different from Present Address | | |

If residing at present address for less than two years, complete the following:

| Former Address (street, city, state, zip code)  ☐ Own  ☐ Rent _No. Yrs. | | | Former Address (street, city, state, zip code)  ☐ Own  ☐ Rent _No. Yrs. | | |
|---|---|---|---|---|---|

## IV. EMPLOYMENT INFORMATION

| | Borrower | | | Co-Borrower | |
|---|---|---|---|---|---|
| Name & Address of Employer VENETZIA FINE JEWELRY 3355 S. LAS VEGAS BLVD LAS VEGAS, NV 89109 | ☐ Self Employed | Yrs. on this job 2Y & 6M  Yrs. employed in this line of work/profession 6Y & 6M | Name & Address of Employer | ☐ Self Employed | Yrs. on this job  Yrs. employed in this line of work/profession |
| Position/Title/Type of Business SALES | Business Phone (incl. area code) (702) 734-2800 | | Position/Title/Type of Business | Business Phone (incl. area code) | |

If employed in current position for less than two years or if currently employed in more than one position, complete the following:

| Name & Address of Employer | ☐ Self Employed | Dates (from - to) | Name & Address of Employer | ☐ Self Employed | Dates (from - to) |
|---|---|---|---|---|---|
| | | Monthly Income | | | Monthly Income |
| Position/Title/Type of Business | Business Phone (incl. area code) | | Position/Title/Type of Business | Business Phone (incl. area code) | |
| Name & Address of Employer | ☐ Self Employed | Dates (from - to) | Name & Address of Employer | ☐ Self Employed | Dates (from - to) |
| | | Monthly Income | | | Monthly Income |
| Position/Title/Type of Business | Business Phone (incl. area code) | | Position/Title/Type of Business | Business Phone (incl. area code) | |

| Freddie Mac Form 65 01/04 Borrower's Initials | Page 1 of 4 CENESIS 2000, INC. ● W17.0 ● (800) 555-0504 | Fannie Mae Form 1003 01/04 Co-Borrower's Initials |
|---|---|---|

HERDA

05/13/2005   09:47   7022476       ALLIANCE MORTGA          PAGE   03/06

## ALLIANCE MORTGAGE

### V. MONTHLY INCOME AND COMBINED HOUSING EXPENSE INFORMATION

| Gross Monthly Income | Borrower | Co-Borrower | Total | Combined Monthly Housing Expense | Present | Proposed |
|---|---|---|---|---|---|---|
| Base Empl. Income* | $ 7,000.00 | | $ 7,000.00 | Rent | $ | |
| Overtime | | | | First Mortgage (P&I) | | 1,416.00 | 1,298.74 |
| Bonuses | | | | Other Financing (P&I) | | 349.00 | |
| Commissions | | | | Hazard Insurance | | | 70.00 |
| Dividends/Interest | | | | Real Estate Taxes | | | 100.58 |
| Net Rental Income | | | | Mortgage Insurance | | | |
| Other (before completing, see the notice in "describe other income," below) | | | | Homeowner Assn. Dues | | | |
| Total | $ 7,000.00 | $ | $ 7,000.00 | Other: | | | |
| | | | | Total | $ 1,767.00 | 1,468.32 |

* Self Employed Borrower(s) may be required to provide additional documentation such as tax returns and financial statements.

| B/C | Describe Other Income   Notice: Alimony, child support, or separate maintenance income need not be revealed if the Borrower (B) or Co-borrower (C) does not choose to have it considered for repaying this loan. | Monthly Amount |
|---|---|---|
| | | $ |
| | | |

### VI. ASSETS AND LIABILITIES

This Statement and any applicable supporting schedules may be completed jointly by both married and unmarried Co-Borrowers if their assets and liabilities are sufficiently joined so that the Statement can be meaningfully and fairly presented on a combined basis; otherwise separate Statements and Schedules are required. If the Co-Borrower section was completed about a spouse, this Statement and supporting schedules must be completed about that spouse also.

Completed ☐ Jointly ☒ Not Jointly

| ASSETS Description | Cash or Market Value | Liabilities and Pledged Assets. List the creditor's name, address and account number for all outstanding debts, including automobile loans, revolving charge accounts, real estate loans, alimony, child support, stock pledges, etc. Use continuation sheet, if necessary. Indicate by (*) those liabilities which will be satisfied upon sale of real estate owned or upon refinancing of the subject property. | | Monthly Payment & Months Left to Pay | Unpaid Balance |
|---|---|---|---|---|---|
| Cash deposit toward purchase held by: EARNEST | $ 5,000 | LIABILITIES | | $ Payment/Months | $ |
| | | Name and address of Company   (R.E. Loan) HOME COMING | | | |
| List checking and saving accounts below | | | | | |
| Name and address of Bank, S&L, or Credit Union BOF A | | | | | |
| | | Acct. no. 418672093 | | 1,416.00 / | 191,333 |
| Acct. no. 004959570402 | $ 80,487.00 | Name and address of Company   (R.E. Loan) BOFA | | $ Payment/Months | $ |
| Name and address of Bank, S&L, or Credit Union WELLS | | | | | |
| | | Acct. no. 681500355499 | | 349.00 / | 87,959 |
| Acct. no. | $ 27,299.00 | Name and address of Company   (Charge Acct.) WELLS | | $ Payment/Months | $ |
| Name and address of Bank, S&L, or Credit Union WELLS | | | | | |
| | | Acct. no. 448542154071 | | 232.00 / | 11,848 |
| Acct. no. 0555800994 | $ 16,000.00 | Name and address of Company   (Auto Loan) | | $ Payment/Months | $ |
| Name and address of Bank, S&L, or Credit Union | | | | | |
| | | Acct. no. | | 239.00 / | 6,475 |
| Acct. no. | $ | Name and address of Company   (Auto Loan) | | $ Payment/Months | $ |
| Stock & Bonds (Company name/number & description) | $ | | | | |
| | | Acct. no. | | 352.00 / | 14,300 |
| Life insurance net cash value Face amount $ | $ | Name and address of Company | | $ Payment/Months | $ |
| Subtotal Liquid Assets | $ 128,786 | | | | |
| Real estate owned (enter market value from schedule of real estate owned) | $ 235,000 | Acct. no. | | | |
| Vested interest in retirement fund | $ | Name and address of Company | | $ Payment/Months | $ |
| Net worth of business(es) owned (attach financial statement) | $ | | | | |
| Automobiles owned (make and year) 2002 MITSUBISHI 1998 DODGE RAM | $ 7,000 15,000 | Acct. no. | | | |
| | | Alimony/Child Support/Separate Maintenance Payments Owed to: | $ | | |
| Other Assets (itemize) PERSONAL | $ 50,000 | Job Related Expense (child care, union dues, etc.) | $ | | |
| | | Net Worth | | | |
| Total Assets a. | $ 435,786 | (a minus b) ► $ 173,874 | | Total Monthly Payments $ 2,580.00 | |
| | | | | Total Liabilities b. | 261,912 |

Freddie Mac Form 65 01/04
Borrower's Initials [signature]

Page 3 of 4
GENESIS 2000, INC. * W17.0 * (800) 562-0504

Fannie Mae Form 1003 01/04
Co-Borrower's Initials

0513902908_7

05/19/2005   09:47   702247699⬤          ALLIANCE MORTGAGE              PAGE   04/06

## ALLIANCE MORTGAGE
### ASSETS AND LIABILITIES (cont.)

Schedule of Real Estate Owned  (If additional properties are owned, use continuation sheet.)

| Property Address (enter S if sold, PS if pending sale or R if rental being held for income) | Type of Property | Present Market Value | Amount of Mortgages & Liens | Gross Rental Income | Mortgage Payments | Insurance, Maintenance, Taxes & Misc. | Net Rental Income |
|---|---|---|---|---|---|---|---|
| 108 PARKER RANCH DR<br>LAS VEGAS, NV 89012 | R    SFR | $ 235,000 | $ 229,289 | $ 1,780.00 | $ 1,767.00 | $ 0.00 | $ -432.00 |
|  |  |  |  |  |  |  |  |
|  | Totals | $ 235,000 | $ 229,289 | $ 1,780.00 | $ 1,767.00 | $ 0.00 | $ -432.00 |

List any additional names under which credit has previously been received and indicate appropriate creditor name(s) and account number(s):

| Alternate Name | Creditor Name | Account Number |
|---|---|---|
|  |  |  |

## VII.   DETAILS OF TRANSACTION          VIII.   DECLARATIONS

| | | |
|---|---|---|
| a. Purchase price | $ 205,000.00 | |
| b. Alterations, improvements, repairs | | |
| c. Land (if acquired separately) | | |
| d. Refinance (incl. debts to be paid off) | | |
| e. Estimated prepaid items | 3,158.46 | |
| f. Estimated closing costs | 4,993.00 | |
| g. PMI, MIP, Funding Fee | | |
| h. Discount (if Borrower will pay) | | |
| i. Total costs (add items a through h) | 313,151.46 | |
| j. Subordinate financing | | |
| k. Borrower's closing costs paid by Seller | | |
| l. Other Credits (explain)<br>Held Deposit<br>Paid Charges in GFE | 5,000.00 | |
| m. Loan amount (exclude PMI, MIP, Funding Fee financed) | 205,000.00 | |
| PMI, MIP, Funding Fee financed | | |
| n. Loan amount (add m & n) | 205,000.00 | |
| p. Cash from Borrower (subtract j, k, l & o from i) | 103,151.46 | |

VIII. DECLARATIONS

If you answer "yes" to any questions a through i, please use continuation sheet for explanation.

|  | Borrower Yes | No | Co-Borrower Yes | No |
|---|---|---|---|---|
| a. Are there any outstanding judgments against you? | | X | | X |
| b. Have you been declared bankrupt within the past 7 years? | | X | | X |
| c. Have you had property foreclosed upon or given title or deed in lieu thereof in the last 7 years? | | X | | X |
| d. Are you a party to a lawsuit? | | X | | X |
| e. Have you directly or indirectly been obligated on any loan which resulted in foreclosure, transfer of title in lieu of foreclosure, or judgment? | | X | | X |
| f. Are you presently delinquent or in default on any Federal debt or any other loan, mortgage, financial obligation, bond, or loan guarantee? | | X | | X |
| g. Are you obligated to pay alimony, child support, or separate maintenance? | | X | | X |
| h. Is any part of the down payment borrowed? | | X | | X |
| i. Are you a co-maker or endorser on a note? | | X | | X |
| j. Are you a U.S. citizen? | X | | X | |
| k. Are you a permanent resident alien? | | X | | X |
| l. Do you intend to occupy the property as your primary residence? | X | | X | |
| m. Have you had an ownership interest in a property in the last three years? | X | | | X |
| (1) What type of property did you own - principal residence (PR), second home (SH), or investment property (IP)? | PR | | | |
| (2) How did you hold title to the home - solely by yourself (S), jointly with your spouse (SP), or jointly with another person (O)? | S | | | |

## IX.   ACKNOWLEDGMENT AND AGREEMENT

Each of the undersigned specifically represents to Lender and to Lender's actual or potential agents, brokers, processors, attorneys, insurers, servicers, successors and assigns and agrees and acknowledges that: (1) the information provided in this application is true and correct as of the date set forth opposite my signature and that any intentional or negligent misrepresentation of this information contained in this application may result in civil liability, including monetary damages, to any person who may suffer any loss due to reliance upon any misrepresentation that I have made on this application...

| Borrower's Signature | Date | Co-Borrower's Signature | Date |
|---|---|---|---|
| X  *Lori M. Herda* | 5/17/05 | X | |

## INFORMATION FOR GOVERNMENT MONITORING PURPOSES

The following information is requested by the Federal Government for certain types of loans related to a dwelling in order to monitor the Lender's compliance with equal credit opportunity, fair housing and home mortgage disclosure laws...

| | BORROWER | | CO-BORROWER |
|---|---|---|---|
|  | ☒ I do not wish to furnish this information | | ☒ I do not wish to furnish this information |
| Ethnicity: | ☐ Hispanic or Latino    ☒ Not Hispanic or Latino | Ethnicity: | ☐ Hispanic or Latino    ☐ Not Hispanic or Latino |
| Race: | ☐ American Indian or Alaska Native    ☐ Asian    ☐ Black or African American | Race: | ☐ American Indian or Alaska Native    ☐ Asian    ☐ Black or African American |
| | ☒ White | | ☐ White |
| Sex: | ☒ Female    ☐ Male | Sex: | ☐ Female    ☐ Male |

| To be Completed by Interviewer | Interviewer's Name (print or type) | Name and Address of Interviewer's Employer |
|---|---|---|
| This application was taken by:<br>☒ Face-to-face interview<br>☐ Mail<br>☐ Telephone<br>☐ Internet | VICKY FIDONE<br>Interviewer's Signature  *Vicky...*   Date 5/17/01<br>Interviewer's Phone Number (incl. area code)<br>(702) 247-4320    FAX:(702) 247-5917 | ALLIANCE MORTGAGE<br>3330 S. BUFFALO DR.<br>SUITE 108<br>LAS VEGAS, NV 89117 |

Freddie Mac Form 65  01/04                Page 3 of 4                Fannie Mae Form 1003  01/04
GENESIS 2000, INC. - W17.0 - (800) 882-0504

05/19/2005  09:47  7022476___                    ALLIANCE MORTGA___                    PAGE  05/06

## Continuation Sheet/Residential Loan Application
### ALLIANCE MORTGAGE

| Use this continuation sheet if you need more space to complete the Residential Loan Application. Mark B for Borrower or C for Co-Borrower. | Borrower: LORI M HERDA | | Agency Case Number |
|---|---|---|---|
| | Co-Borrower: | | Lender Case Number |

I/We fully understand that it is a Federal crime punishable by fine or imprisonment, or both, to knowingly make any false statements concerning any of the above facts as applicable under the provisions of Title 18, United States Code, Section 1001, et seq.

| Borrower's Signature | Date | Co-Borrower's Signature | Date |
|---|---|---|---|
| X  *Lori M. Herda* | 8/17/05 | X | |

Freddie Mac Form 65  01/04                          Page 4 of 4                          Fannie Mae Form 1003  01/04
GENESIS 2000, INC. * W17.0 * (800) 882-0504

0513902910_7

FW APPRAISAL SERVICES

# FORM RESIDENTIAL APPRAISAL REPORT

File No. 05-110F

**Property Description**

| | | |
|---|---|---|
| Property Address 6940 SURREY COURT | City LAS VEGAS | State NV | Zip Code 89145-9224 |
| Legal Description CHARLESTON RAINBOW UNIT #07B; PLAT BOOK 13, PAGE 51, LOT 6, BLOCK 12 | | County CLARK |
| Assessor's Parcel No. 138-34-610-006 | | |
| Borrower HERDA | Tax Year 2004 | R.E. Taxes $ 1,207.84 | Special Assessments $ N/A |
| Property rights appraised [X] Fee Simple [ ] Leasehold | Current Owner MIKTRRTTA | Occupant: [X] Owner [ ] Tenant [ ] Vacant |
| Neighborhood or Project Name CHARLESTON RAINBOW | Project Type [ ] PUD [ ] Condominium (HUD/VA only) | HOA $ | N/A /Mo. |
| Sale Price $ 308,000.00 | Date of Sale PENDING | Description and $ amount of loan charges/concessions to be paid by seller N/A | Census Tract 0030.05 |
| Lender/Client ALLIANCE MORTGAGE | Address 3230 S. BUFFALO DR. #108, LAS VEGAS, NV 89147 |
| Appraiser FRED M. VIROTHKY | Address 1009 NEWBOLD STREET, LAS VEGAS, NV 89139 |

| Location | [ ] Urban [X] Suburban [ ] Rural | Predominant occupancy | Single family housing | Present land use % | Land use change |
|---|---|---|---|---|---|
| Built up | [X] Over 75% [ ] 25-75% [ ] Under 25% | | PRICE $(000) AGE (yrs) | One family 90% | [X] Not likely [ ] Likely |
| Growth rate | [ ] Rapid [X] Stable [ ] Slow | [X] Owner | 200 Low 10 | 2-4 family 0% | [ ] In process |
| Property values | [X] Increasing [ ] Stable [ ] Declining | [ ] Tenant | 325 High 40 | Multi-family 0% | To: |
| Demand/supply | [ ] Shortage [X] In balance [ ] Over supply | [ ] Vacant (0-5%) | Predominant | Commercial 5% | |
| Marketing time | [X] Under 3 mos. [ ] 3-6 mos. [ ] Over 6 mos. | [ ] Vacant (over 5%) | 300 35 | VACANT 5% | |

Note: Race and the racial composition of the neighborhood are not appraisal factors.

Neighborhood boundaries and characteristics: SUMMERLIN PARKWAY TO THE NORTH, RAINBOW BLVD. TO THE EAST, WEST CHARLESTON BLVD. TO THE SOUTH AND NORTH BUFFALO DRIVE TO THE WEST.

Factors that affect the marketability of the properties in the neighborhood (proximity to employment and amenities, employment stability, appeal to market, etc.): THE SUBJECT IS LOCATED IN A RESIDENTIAL AREA WHERE THE HOMES ARE COMPATIBLE IN APPEAL AND MARKETABILITY. STREET PATTERNS ARE GOOD, SITES ARE ADEQUATE AND THE SUBJECT IS TYPICAL FOR THE NEIGHBORHOOD. THE COMMERCIAL INFLUENCE CONSISTS OF RETAIL BUSINESSES; NOT ADVERSE. NO UNFAVORABLE FACTORS AFFECTING MARKETABILITY WERE NOTED.

Market conditions in the subject neighborhood (including support for the above conclusions related to the trend of property values, demand/supply, and marketing time -- such as data on competitive properties for sale in the neighborhood, description of the prevalence of sales and financing concessions, etc.): PREVAILING INTEREST RATES ARE RANGING FROM 6.5% TO 8.0%. TYPICALLY SELLERS ARE PAYING FROM 1 TO 3 DISCOUNT POINTS IN THE MARKETING OF THEIR HOMES. MARKET CONDITIONS APPEAR TO BE STABLE WITH PROPERTY VALUES INCREASING.

Project Information for PUDs (if applicable) - - Is the developer/builder in control of the Home Owners' Association (HOA)? [ ] YES [ ] NO
Approximate total number of units in the subject project N/A    Approximate total number of units for sale in the subject project N/A
Describe common elements and recreational facilities: N/A

| | | |
|---|---|---|
| Dimensions SEE ATTACHED PLAT MAP | Topography LEVEL |
| Site area 6568 SF | Size TYPICAL |
| Specific zoning classification and description R-1 (SINGLE FAMILY RESIDENTIAL) | Corner Lot [ ] Yes [X] No | Shape MOSTLY RECTANGULAR |
| Zoning compliance [X] Legal [ ] Legal nonconforming (Grandfathered use) [ ] Illegal [ ] No zoning | Drainage APPEARS ADEQUATE |
| Highest & best use as improved: [X] Present use [ ] Other use (explain) | View TYPICAL |
| Utilities | Public | Other | Off-site Improvements | Type | Public | Private | Landscaping GOOD; FRONT & REAR |
| Electricity | [X] | UNDERGROUND | Street | ASPHALT | [X] | [ ] | Driveway Surface CONCRETE |
| Gas | [X] | | Curb/gutter | CONCRETE | [X] | [ ] | Apparent easements NONE NOTED |
| Water | [X] | | Sidewalk | CONCRETE | [X] | [ ] | FEMA Special Flood Hazard Area [ ] Yes [X] No |
| Sanitary sewer | [X] | | Street lights | YES | [X] | [ ] | FEMA Zone X    Map Date 09/27/2002 |
| Storm sewer | | NONE/TYPICAL | Alley | NONE/COMMON | | | FEMA Map No. 320276 2160D |

Comments (apparent adverse easements, encroachments, special assessments, slide areas, illegal or legal nonconforming zoning, use, etc.): NO ADVERSE EASEMENTS OR ENCROACHMENTS WERE APPARENT. HOWEVER, MY INSPECTION WAS MADE WITHOUT THE BENEFIT OF A TITLE REPORT OR SURVEY.

| GENERAL DESCRIPTION | EXTERIOR DESCRIPTION | FOUNDATION | BASEMENT | INSULATION |
|---|---|---|---|---|
| No. of Units 1 | Foundation CONCRETE | Slab CONC/100% | Area Sq.Ft. 0 | Roof |
| No. of Stories ONE | Exterior Walls FRAME/STUCCO | Crawl Space NONE | % Finished N/A | Ceiling [X] |
| Type (Det./Att.) DETACHED | Roof Surface CONC/TILE | Basement NONE | Ceiling N/A | Walls [X] |
| Design (Style) 1 STORY | Gutters & Dwnspts. NONE | Sump Pump NONE | Walls N/A | Floor |
| Existing/Proposed EXISTING | Window Type ALUM./SLIDE | Dampness NONE NOTED | Floor N/A | None [X] |
| Age (Yrs.) 34 | Storm/Screens SCREENS | Settlement NONE NOTED | Outside Entry NONE | Unknown UNKN |
| Effective Age (Yrs.) 10 | Manufactured House NO | Infestation NONE NOTED | | *CONCEALED |

| ROOMS | Foyer | Living | Dining | Kitchen | Den | Family Rm. | Rec. Rm. | Bedrooms | # Baths | Laundry | Other | Area Sq.Ft. |
|---|---|---|---|---|---|---|---|---|---|---|---|---|
| Basement | | | | | | | | | | | | 0 |
| Level 1 | X | 1 | AREA | 1 | | | | 3 | 2 | X | | 1,683 |
| Level 2 | | | | | | | | | | | | 0 |
| | | | | | | | | | | | | 0 |

Finished area above grade contains: 6 Rooms; 3 Bedroom(s); 2 Bath(s); 1,683 Square Feet of Gross Living Area

| INTERIOR | Materials/Condition | HEATING | KITCHEN EQUIP. | ATTIC | AMENITIES | CAR STORAGE: |
|---|---|---|---|---|---|---|
| Floors | CERAMIC/CAR/AVG | Type FWA | Refrigerator | None | Fireplace(s) # 1 [X] | None |
| Walls | DRYWALL/AVG | Fuel GAS | Range/Oven [X] | Stairs | Patio 464 SF (2) [X] | Garage 2 # of cars |
| Trim/Finish | WOOD/AVG | Condition AVG | Disposal [X] | Drop Stair | Deck 350 SF [X] | Attached 2-CAR |
| Bath Floor | CERAMIC/AVG+ | COOLING | Dishwasher [X] | Scuttle [X] | Porch 80 SF [X] | Detached |
| Bath Wainscot | CERAMIC/AVG | Central YES | Fan/Hood [X] | Floor | Fence BLOCK [X] | Built-in |
| Doors | WOOD/AVG | Other N/A | Microwave [X] | Heated | Pool 450 SF [X] | Carport 1-CP |
| | | Condition AVG | Washer/Dryer | Finished | | Driveway CONC |

Additional features (special energy efficient items, etc.): THE SUBJECT FEATURES A 450 SF IN-GROUND SWIMMING POOL WITH 350 SF POOL DECK, 384 SF COVERED PATIO, 200 SF CONCRETE PATIO, 80 SF FRONT PORCH, #01 POND, FIREPLACE AND FRONT & REAR LANDSCAPING.

Condition of the improvements, depreciation (physical, functional, and external), repairs needed, quality of construction remodeling/additions, etc.: OWNER HAS MAINTAINED PROPERTY IN AVERAGE/AVERAGE CONDITION. QUALITY OF CONSTRUCTION AND MATERIALS ARE AVERAGE. NO FUNCTIONAL OR EXTERNAL INADEQUACIES NOTED.

Adverse environmental conditions (such as, but not limited to, hazardous wastes, toxic substances, etc.) present in the improvements, on the site, or in the immediate vicinity of the subject property: NO VISIBLE ADVERSE ENVIRONMENTAL CONDITIONS WERE NOTED

Freddie Mac Form 70 6-93    PAGE 1 OF 2    Fannie Mae Form 1004 6-93
Produced using ACI software, 800.234.8727 www.aciweb.com

FW APPRAISAL SERVICES

## FORM RESIDENTIAL APPRAISAL REPORT

File No. 05-110F

**Valuation Section**

| | | | | |
|---|---|---|---|---|
| ESTIMATED SITE VALUE | | = $ | 65,000 | Comments on Cost Approach (such as, source of cost estimate, site value, square foot calculation and for HUD, VA and FmHA, the estimated remaining economic life of the property): |
| ESTIMATED REPRODUCTION COST-NEW-OF IMPROVEMENTS: | | | | |
| Dwelling 1,683 Sq. Ft. @ $ 115.00 | = $ | 193,545 | | MY COST COMPUTATIONS COME FROM THREE SOURCES: |
| Bsmt. 0 Sq. Ft. @ $ | = $ | 0 | | MARSHALL AND SWIFT COST HANDBOOK; LOCAL BUILDERS |
| POOL,DECK,SCR,PATIO,PAT,POR,FP | = $ | 36,000 | | COST QUOTES AND APPRAISERS OWN FILES. THE ESTIMATED |
| Garage/Carport 453 Sq. Ft. @ $ 35.00 | = $ | 18,900 | | REMAINING ECONOMIC LIFE IS 60 YEARS. |
| Total Estimated Cost New | = $ | 248,450 | | |
| Less 10 Physical Functional External | | | | |
| Depreciation $24,845 90 90 | = $ | 24,845 | | |
| Depreciated Value of Improvements | = $ | 223,605 | | |
| "As-is" Value of Site Improvements | = $ | 15,000 | | |
| INDICATED VALUE BY COST APPROACH | = $ | 303,000 | | |

| ITEM | SUBJECT | COMPARABLE NO. 1 | COMPARABLE NO. 2 | COMPARABLE NO. 3 |
|---|---|---|---|---|
| Address | 6940 BURREY COURT LAS VEGAS | 7109 SHORE LANE LAS VEGAS;138-34-313-041 | 7124 ALTA DRIVE LAS VEGAS; 138-34-214-049 | 7412 BLIZZARD COURT LAS VEGAS;138-34-112-008 |
| Proximity to Subject | | 0.49 MI SW | 0.33 MI WSW | 0.37 MI WNW |
| Sales Price | $ 305,000 | $ 280,000 | $ 280,000 | $ 300,000 |
| Price/Gross Liv. Area | $ 181.22 | $ 166.86 | $ 147.52 | $ 158.31 |
| Data and/or Verification Sources | INSPECTION DOC # | COUNTY RECORDS DOC#2004120804406 | COUNTY RECORDS/MLS DOC#200502100304048 | COUNTY RECORDS/MLS DOC#2004110804087 |
| VALUE ADJUSTMENTS | DESCRIPTION | DESCRIPTION / +(-)$ Adjustment | DESCRIPTION / +(-)$ Adjustment | DESCRIPTION / +(-)$ Adjustment |
| Sales or Financing Concessions | N/A N/A | CONV. NO CONCESS | CONV. NO CONCESS | CONV. NO CONCESS |
| Date of Sale/Time | PENDING | 12/03/2004 | 02/10/2005 | 11/08/2004 |
| Location | SUBURBAN | SUBURBAN | SUBURBAN/BUSY +10,000 | SUBURBAN |
| Leasehold/Fee Simple | FEE SIMPLE | FEE SIMPLE | FEE SIMPLE | FEE SIMPLE |
| Site | 9656 SF | 10199 SF -1,500 | 8124 SF | 9408 SF |
| View | TYPICAL | TYPICAL | TYPICAL | TYPICAL |
| Design and Appeal | 1 STORY/AVG | 1 STORY/AVG | 2 STORY/AVG | 2 STORY/AVG |
| Quality of Construction | GD/AV/TILE ROOF | AVG/SHING.ROOF +2,500 | AVG/SHING.ROOF +2,500 | AVG/SHING.ROOF +2,500 |
| Age | 34 | 33 | 34 | 28 |
| Condition | AVERAGE/UPD | AVERAGE +5,000 | AVERAGE +5,000 | AVERAGE/UPD |
| Above Grade Room Count | Total Bdrms Baths 5 3 2.00 | Total Bdrms Baths 5 3 2.00 | Total Bdrms Baths 7 4 3 | Total Bdrms Baths 7 4 2.00 |
| Gross Living Area | 1,683 Sq.Ft. | 1,688 Sq.Ft. -3,800 | 1,898 Sq.Ft. -6,500 | 1,895 Sq.Ft. -6,400 |
| Basement & Finished Rooms Below Grade | NONE N/A | NONE MLS#N/A | NONE MLS#492254 | NONE MLS#444698 |
| Functional Utility | AVERAGE | AVERAGE | GD/4 BEDRMS -5,000 | GD/4 BEDRMS -5,000 |
| Heating/Cooling | FWA/CAC | FWA/CAC | FWA/CAC | FWA/CAC |
| Energy Efficient Items | STANDARD | STANDARD | STANDARD | STANDARD |
| Garage/Carport | 2-CAR GAR/1-CP | 2 CAR GARAGE +2,000 | 2 CAR GARAGE +2,000 | 2 CAR GARAGE +2,000 |
| Porch, Patio, Deck, Fireplace(s), etc. | BC,PAT,PAT,POR, FIREPLACE | PATIO +6,500 NONE +2,500 | CV,PATIO CV.PATIO,PATIO +3,500 FIREPLACE | CV.PATIO,PATIO +2,500 FIREPLACE |
| Fence, Pool, etc. | POOL,DK,PNO,LS UPGRADES | FENCE,LNDSCP +20,000 SIMILAR | POOL,DK,INP,LS +7,500 SIMILAR | POOL,DK,LNDSCP +5,000 SIMILAR |
| Net Adj. (total) | | X + 40,800 | X + 19,000 | X + 600 |
| Adjusted Sales Price of Comparable | | Gross: 16.0% Net: 14.7% $ 300,800 | Gross: 16.0% Net: 6.9% $ 299,000 | Gross: 7.9% Net: 0.2% $ 300,600 |

Comments on Sales Comparison (including the subject property's compatibility to the neighborhood, etc.): ALL COMPARABLES ARE LOCATED IN THE SUBJECT'S COMPETITIVE MARKET AREA, POSITIVE AND NEGATIVE ADJUSTMENTS IF THE COMPARABLE SALES WERE REQUIRED IN AREAS OF DISSIMILARITY TO PRODUCE THE BEST INDICATED VALUE OF THE SUBJECT. THIS SUMMARY APPRAISAL REPORT IS INTENDED FOR USE BY THE LENDER/CLIENT AND/OR THEIR ASSIGNS FOR A MORTGAGE FINANCE TRANSACTION ONLY. THIS REPORT IS NOT INTENDED FOR ANY OTHER USE.

| ITEM | SUBJECT | COMPARABLE NO. 1 | COMPARABLE NO. 2 | COMPARABLE NO. 3 |
|---|---|---|---|---|
| Date, Price and Data Source for prior sales within year of appraisal | NO SALES IN PAST 3 YEARS CNTY RCDS | NO PRIOR SALES IN PAST 3 YEARS COUNTY RECORDS | 08/16/2004 $175,000 COUNTY RECORDS | NO PRIOR SALES IN PAST 3 YEARS COUNTY RECORDS |

Analysis of any current agreement of sale, option, or listing of the subject property and analysis of any prior sales of subject and comparables within one year of the date of appraisal: SUBJECT IS UNDER CONTRACT FOR SALE AT $305,000, SUBJECT HAS NOT SOLD IN PAST 3 YEARS. COMPS. #1 & #3 HAVE NOT SOLD PRIOR IN PAST 3 YRS. COMP #2 WAS SOLD PRIOR ON 08/16/2004 AS NOTED ABOVE. NO OTHER PRIOR SALES IN PAST 3 YEARS.

| | | | |
|---|---|---|---|
| INDICATED VALUE BY SALES COMPARISON APPROACH | | | $ 300,000 |
| INDICATED VALUE BY INCOME APPROACH (If Applicable) Estimated Market Rent $ N/A /Mo. x Gross Rent Multiplier N/A = $ | | | 0 |

This appraisal is made [X] "as is" ☐ subject to the repairs, alterations, inspections or conditions listed below ☐ subject to completion per plans and specifications.
Conditions of Appraisal: THIS IS A COMPLETE APPRAISAL/SUMMARY REPORT.

Final Reconciliation: SALES COMPARISON APPROACH PROVIDES THE MOST DEFENSIBLE METHOD OF DETERMINING VALUE FOR SINGLE FAMILY RESIDENTIAL PROPERTIES. THE COST APPROACH SUPPORTS THE SALES COMPARISON APPROACH. THE INCOME APPROACH LACKS SUFFICIENT DATA TO JUSTIFY VALUE.

The purpose of this appraisal is to estimate the market value of the real property that is the subject of this report, based on the above conditions and the certification, contingent and limiting conditions, and market value definition that are stated in the attached Freddie Mac Form 439/Fannie Mae Form 1004B (Revised    6/93    ).

I (WE) ESTIMATE THE MARKET VALUE, AS DEFINED, OF THE REAL PROPERTY THAT IS THE SUBJECT OF THIS REPORT, AS OF 03/24/2005 (WHICH IS THE DATE OF INSPECTION AND THE EFFECTIVE DATE OF THIS REPORT) TO BE $ 300,000.

| APPRAISER: | SUPERVISORY APPRAISER (ONLY IF REQUIRED): |
|---|---|
| Signature | Signature ☐ Did ☐ Did Not |
| Name FRED M. WINOTZKY | Name Inspect Property |
| Date Report Signed 03/29/2005 | Date Report Signed |
| State Certification # | State Certification # |
| Or State License # 04R54    State NV | Or State License #    State NV |

## ADDENDUM

| | | |
|---|---|---|
| Borrower: HERDA | | |
| Property Address: 5940 SURREY COURT | File No.: 10F | |
| City: LAS VEGAS | State: NV | Case No.: |
| Lender: ALLIANCE MORTGAGE | | Zip: 89145-5224 |

ADDENDUM TO APPRAISAL DATED MARCH 29, 2005.

THE SUBJECT IS LOCATED IN A RESIDENTIAL SUBDIVISION CALLED CHARLESTON RAINBOW, WHICH IS LOCATED IN THE NORTHWESTERN SECTION OF LAS VEGAS. THE HOMES APPEAR TO BE COMPATIBLE IN APPEAL AND MARKETABILITY. EMPLOYMENT, SCHOOLS, SHOPPING AND PUBLIC PARKS ARE CONVENIENT. THE SUBJECT IS TYPICAL FOR THE AREA. NO ADVERSE CONDITIONS WERE NOTED THAT WOULD AFFECT THE MARKETABILITY OF THE SUBJECT PROPERTY.

PRESENT TRENDS IN THE SUBJECT'S GENERAL NEIGHBORHOOD SUGGEST THAT PROPERTY VALUES ARE INCREASING AND THAT SUPPLY AND DEMAND ARE IN BALANCE. AT THE TIME OF THIS REPORT MARKETING TIME ON HOMES IN THE SUBJECT'S GENERAL COMPETITIVE MARKET AND IN THE SUBJECT'S VALUE RANGE IS UNDER 3 MONTHS. FUTURE MARKETING TIME AND EXPOSURE WILL ALSO BE DETERMINED BY THE BALANCE OF SUPPLY AND DEMAND. I FIND NO APPARENT EVIDENCE OF ANY SUBSTANTIAL CHANGE ANTICIPATED IN THIS MARKET AREA.

SUBJECT SITE

THE SIZE OF SITE IS TYPICAL FOR THE AREA. NO ADVERSE EASEMENTS OR ENCROACHMENTS WERE NOTED.

HIGHEST AND BEST USE

THE HIGHEST AND BEST USE OF THE SUBJECT PROPERTY IS ITS PRESENT USE: DETACHED SINGLE FAMILY RESIDENTIAL HOME.

THE SUBJECT OF THIS REPORT WAS PHYSICALLY INSPECTED ON THE DATE OF THE REPORT AND THAT IS THE EFFECTIVE DATE OF THE APPRAISAL.

THE SUBJECT PROPERTY IS A DETACHED ONE STORY SINGLE FAMILY DWELLING. THE QUALITY OF CONSTRUCTION IS AVERAGE. THE SUBJECT IS IN AVERAGE/UPDATED CONDITION (UPDATED KITCHEN WITH STAINLESS STEEL APPLIANCES, UPDATED BATHS; FLOORING,FIXTURES; CONCRETE TILE ROOF REPLACING COMP.SHINGLE ROOF). SUBJECT FEATURES INCLUDE: 450 SF IN-GROUND SWIMMING POOL WITH 350 SF POOL DECK, 264 SF COVERED, SCREENED REAR PATIO, 200 SF OPEN CONCRETE PATIO, 50 SF COVERED FRONT ENTRY AREA/PORCH, KOI POND WITH WATERFALL, BUILT-IN BBQ AREA, STONE FIREPLACE AND FRONT AND REAR LANDSCAPING.

NO VALUE IS GIVEN TO PERSONAL PROPERTY.

APPRAISAL PROCESS

THE APPRAISAL IS BASED ON THE INFORMATION GATHERED BY THE APPRAISER FROM PUBLIC RECORDS, OTHER IDENTIFIED SOURCES, INSPECTION OF THE SUBJECT PROPERTY AND NEIGHBORHOOD AND SELECTION OF COMPARABLE SALES WITHIN THE SUBJECT MARKET AREA. THE ORIGINAL SOURCE OF THE COMPARABLE IS SHOWN IN THE "DATA SOURCE" SECTION OF THE MARKET GRID ALONG WITH THE SOURCE OF CONFIRMATION, IF AVAILABLE. THE ORIGINAL SOURCE IS PRESENTED FIRST. THE SOURCES AND DATA ARE CONSIDERED RELIABLE. WHEN CONFLICTING INFORMATION IS PROVIDED THE SOURCE DEEMED MOST RELIABLE HAS BEEN USED. DATA BELIEVED TO BE UNRELIABLE HAS NOT BEEN INCLUDED IN THE REPORT OR USED AS A BASIS FOR THE VALUE CONCLUSION.

FUNCTIONAL AND/OR EXTERNAL DEPRECIATION, IF PRESENT, ARE SPECIFICALLY ADDRESSED IN THE APPRAISAL REPORT OR ADDENDUM. IN ESTIMATING THE SITE VALUE THE APPRAISER HAS RELIED ON LOCAL MARKET KNOWLEDGE. THE KNOWLEDGE IS BASED ON PRIOR AND/OR CURRENT ANALYSIS OF LAND SALES AND/OR EXTRACTION OF LAND VALUE FROM IMPROVED SALES.

THE SUBJECT PROPERTY IS LOCATED IN AN AREA OF PRIMARILY OWNER OCCUPIED SINGLE FAMILY RESIDENCES AND THEREFORE THE INCOME APPROACH IS NOT CONSIDERED TO BE A MEANINGFUL APPROACH TO VALUE.

ANALYSIS

THE APPRAISER IS LIMITED IN THE SELECTION OF COMPARABLE SALES THAT ARE VERIFIABLE IN THE MARKET PLACE. TYPICAL BUYERS IN THE SUBJECT PRICE RANGE IN THIS LOCALITY WILL CONSIDER AND COMPARE HOMES WITHIN SEVERAL MILES FROM THE SUBJECT PROPERTY. ALL SELECTED COMPARABLES ARE IN THE SUBJECT'S COMPETITIVE MARKET AREA. THE SELECTED SALES WERE THE BEST INDICATORS IN VALUE AND MOST COMPARABLE TO THE SUBJECT.

THE COMPARABLE SALES USED WERE ADJUSTED TO REFLECT THE MARKET'S REACTION TO THE VARIABLES.

SITE SIZE ADJUSTED AT $1.00 PER SQUARE FOOT.

BEDROOMS ADJUSTED AT $5,000 EACH.

GROSS LIVING AREA ADJUSTED AT $30 PER SQUARE FOOT.

FINAL RECONCILIATION

ALL COMPARABLES APPEAR TO BE GOOD INDICATORS OF VALUE. MAJOR RELIANCE IS PLACED ON THE DIRECT SALES COMPARISON APPROACH.

ALL SALES WERE REPORTED CLOSED WITH CASH TO SELLER AND TYPICAL FINANCING.

COST COMPUTATIONS ARE FROM THREE SOURCES:

MARSHALL AND SWIFT COST HANDBOOK.

ADDENDUM

| | |
|---|---|
| Borrower: HERDA | File No.: 10F |
| Property Address: 6940 SURREY COURT | Case No.: |
| City: LAS VEGAS | State: NV    Zip: 89148-6224 |
| Lender: ALLIANCE MORTGAGE | |

LOCAL BUILDER'S COST QUOTES.
APPRAISER'S FILES.

PLEASE NOTE

THE PURPOSE OF THE APPRAISAL IS TO ESTIMATE MARKET VALUE OF THE SUBJECT PROPERTY FOR FEDERALLY RELATED MORTGAGE LOAN PURPOSES.

THIS IS A COMPLETE APPRAISAL/SUMMARY REPORT WHICH IS INTENDED TO COMPLY WITH THE REPORTING REQUIREMENTS SET FORTH UNDER STANDARDS RULE 2-2B OF THE USPAP FOR A SUMMARY APPRAISAL REPORT.

I CERTIFY THAT TO THE BEST OF MY KNOWLEDGE AND BELIEF THE REPORTED ANALYSIS, OPINIONS AND CONCLUSIONS WERE DEVELOPED, AND THIS REPORT HAS BEEN PREPARED IN CONFORMITY WITH THE REQUIREMENTS OF THE CODE OF PROFESSIONAL ETHICS.

IN ACCORDANCE WITH THE COMPETENCY PROVISION OF THE USPAP, I, FRED M. WISOTSKY, CERTIFY THAT MY KNOWLEDGE AND EXPERIENCE IS SUFFICIENT TO ALLOW ME TO COMPETENTLY COMPLETE THIS APPRAISAL.

THE TERM "COMPARABLE" AS USED IN THE GRID SECTION OF THIS REPORT MEANS: THE UNIT OR ELEMENT OF COMPARISON IN THE COMPARABLE SALE IS SUFFICIENTLY SIMILAR TO THE SUBJECT.

IN THE PREPARATION OF THIS REPORT, I HAVE RELIED ON DATA FROM COUNTY RECORDS, MULTIPLE LISTING SERVICE~ (MLS), METROSCAN, TITLE COMPANIES, ETC. I BELIEVE THIS REPORT TO BE COMPLETE AND ACCURATE, HOWEVER, SHOULD ANY ERROR OR OMISSION BE SUBSEQUENTLY DISCOVERED, I RESERVE THE RIGHT TO CORRECT IT.

IT IS HEREIN NOTED THAT THE SIGNATURE CONTAINED WITHIN THIS REPORT HAS BEEN GENERATED ELECTRONICALLY.

FLOOD MAP

| Borrower: HERDA | | | |
|---|---|---|---|
| Property Address: 9040 SURREY COURT | | File No.: 05-110F | |
| City: LAS VEGAS | | Case No.: | |
| Lender: ALLIANCE MORTGAGE | State: NV | | Zip: 89145-5224 |



**FloodMap Legend**

Flood Zones

- Areas inundated by 500-year flooding
- Areas outside of the 100- and 500-year floodplains
- Areas inundated by 100-year flooding
- Areas inundated by 100-year flooding with velocity hazard
- Floodway areas
- Floodway areas with velocity hazard
- Areas of undetermined but possible flood hazards
- Areas not mapped on any published FIRM

**Flood Information**

Community: 325276 - LAS VEGAS, CITY OF
Property is not in a FEMA special flood hazard area.
Map Number: 325276 2185D
Panel: 2185D
Zone: X
Map Date: 09/27/2002
FIPS: 32003

Neither Transamerica Flood Hazard Certification (TFHC) nor ACI make any representations or warranties to any party concerning the contents, accuracy or completeness of this flood report, including any warranty of merchantability or fitness for a particular purpose. Neither TFHC nor ACI nor the seller of this flood report shall have any liability to any third party for any use or misuse of this flood report.

PLAT MAP

| Borrower: HERDA | | File No.:  05-110F |
| Property Address: 6940 SURREY COURT | | Case No.: |
| City: LAS VEGAS | State: NV | Zip: 89145-5224 |
| Lender: ALLIANCE MORTGAGE | | |



**LOCATION MAP**

| | | | | |
|---|---|---|---|---|
| Borrower: UERDA | | | File No.: | 05-110F |
| Property Address: 6940 SURREY COURT | | | Case No.: | |
| City: LAS VEGAS | | State: NV | | Zip: 89146-8224 |
| Lender: ALLIANCE MORTGAGE | | | | |



Prepared by: FW Appraisal Services (702) 218-4092

| ID | Address | | Date | Price | RM | SR | Bath | SqFt | Proximity |
|---|---|---|---|---|---|---|---|---|---|
| S | 6940 | SURREY CT | PENDING | 305000 | 5 | 3 | 2 | 1682 | 0.00 MI |
| 1 | 7109 | SHORE LN | 12/08/2004 | 260000 | 7 | 3 | 2 | 1386 | 0.42 MI SW |
| 2 | 7124 | ALTA DR | 02/10/2005 | 280000 | 7 | 4 | 2 | 1890 | 0.33 MI NNW |
| 3 | 7412 | BLIZZARD CT | 11/09/2004 | 300000 | 7 | 4 | 2 | 1855 | 0.37 MI NNW |

**FLOORPLAN**

| | |
|---|---|
| Borrower: HERDA | File No.: 05-110F |
| Property Address: 6940 SURREY COURT | Case No.: |
| City: LAS VEGAS | State: NV  Zip: 89145-5224 |
| Lender: ALLIANCE MORTGAGE | |



Sketch by Apex IV Windows™

| AREA CALCULATIONS SUMMARY | | | |
|---|---|---|---|
| Code | Description | Size | Totals |
| GLA1 | First Floor | 1683.00 | 1683.00 |
| GAR | Garage | 483.00 | 483.00 |
| | | | |
| **TOTAL LIVABLE    (rounded)** | | | **1683** |

| LIVING AREA BREAKDOWN | |
|---|---|
| Breakdown | Subtotals |
| First Floor | |
| 30.0  x  48.0 | 1440.00 |
| 9.0  x  27.0 | 243.00 |
| | |
| **2 Areas Total (rounded)** | **1683** |



File No. 06-110F

**DEFINITION OF MARKET VALUE:**    The most probable price which a property should bring in a competitive and open market under all conditions requisite to a fair sale, the buyer and seller, each acting prudently, knowledgeably and assuming the price is not affected by undue stimulus. Implicit in this definition is the consummation of a sale as of a specified date and the passing of title from seller to buyer under conditions whereby: (1) buyer and seller are typically motivated; (2) both parties are well informed or well advised, and each acting in what he considers his own best interest; (3) a reasonable time is allowed for exposure in the open market; (4) payment is made in terms of cash in U.S. dollars or in terms of financial arrangements comparable thereto; and (5) the price represents the normal consideration for the property sold unaffected by special or creative financing or sales concessions* granted by anyone associated with the sale.

*Adjustments to the comparables must be made for special or creative financing or sales concessions. No adjustments are necessary for those costs which are normally paid by sellers as a result of tradition or law in a market area; these costs are readily identifiable since the seller pays these costs in virtually all sales transactions. Special or creative financing adjustments can be made to the comparable property by comparisons to financing terms offered by a third party institutional lender that is not already involved in the property or transaction. Any adjustment should not be calculated on a mechanical dollar for dollar cost of the financing or concession but the dollar amount of any adjustment should approximate the market's reaction to the financing or concessions based on the Appraiser's judgment.

## STATEMENT OF LIMITING CONDITIONS AND APPRAISER'S CERTIFICATION

**CONTINGENT AND LIMITING CONDITIONS:**    The appraiser's certification that appears in the appraisal report is subject to the following conditions:

1. The appraiser will not be responsible for matters of a legal nature that affect either the property being appraised or the title to it. The appraiser assumes that the title to the property is good and marketable and, therefore, will not render any opinions about the title. The property is appraised on the basis of it being under responsible ownership.

2. The appraiser has provided a sketch in the appraisal report to show approximate dimensions of the improvements and the sketch is included only to assist the reader of the report in visualizing the property and understanding the appraiser's determination of its size.

3. The appraiser has examined the available flood maps that are provided by the Federal Emergency Management Agency (or other data sources) and has noted in the appraisal report whether the subject site is located in an identified Special Flood Hazard Area. Because the appraiser is not a surveyor, he or she makes no guarantees, express or implied, regarding this determination.

4. The appraiser will not give testimony or appear in court because he or she made an appraisal of the property in question, unless specific arrangements to do so have been made beforehand.

5. The appraiser has estimated the value of the land in the cost approach at its highest and best use and the improvements at their contributory value. These separate valuations of the land and improvements must not be used in conjunction with any other appraisal and are invalid if they are so used.

6. The appraiser has noted in the appraisal report any adverse conditions (such as, needed repairs, depreciation, the presence of hazardous wastes, toxic substances, etc. ) observed during the inspection of the subject property or that he or she became aware of during the normal research involved in performing the appraisal. Unless otherwise stated in the appraisal report, the appraiser has no knowledge of any hidden or unapparent conditions of the property or adverse environmental conditions (including the presence of hazardous wastes, toxic substances, etc. ) that would make the property more or less valuable, and has assumed that there are no such conditions and makes no guarantees or warranties, express or implied, regarding the condition of the property. The appraiser will not be responsible for any such conditions that do exist or for any engineering or testing that might be required to discover whether such conditions exist. Because the appraiser is not an expert in the field of environmental hazards, the appraisal report must not be considered as an environmental assessment of the property.

7. The appraiser obtained the information, estimates, and opinions that were expressed in the appraisal report from sources that he or she considers to be reliable and believes them to be true and correct. The appraiser does not assume responsibility for the accuracy of such items that were furnished by other parties.

8. The appraiser will not disclose the contents of the appraisal report except as provided for in the Uniform Standards of Professional Appraisal Practice.

9. The appraiser has based his or her appraisal report and valuation conclusion for an appraisal that is subject to satisfactory completion, repairs, or alterations on the assumption that completion of the improvements will be performed in a workmanlike manner.

10. The appraiser must provide his or her prior written consent before the lender/client specified in the appraisal report can distribute the appraisal report (including conclusions about the property value, the appraiser's identity and professional designations, and references to any professional appraisal organizations or the firm with which the appraiser is associated ) to anyone other than the borrower; the mortgagee or its successors and assigns; the mortgage insurer; consultants; professional appraisal organizations; any state or federally approved financial institution; or any department, agency, or instrumentality of the United States or any state or the District of Columbia; except that the lender/client may distribute the property description section of the report only to data collection or reporting service(s) without having to obtain the appraiser's prior written consent. The appraiser's written consent and approval must also be obtained before the appraisal can be conveyed by anyone to the public through advertising, public relations, news, sales, or other media.

 

File No. 05-1107

**APPRAISERS CERTIFICATION:**    The Appraiser certifies and agrees that:

1. I have researched the subject market area and have selected a minimum of three recent sales of properties most similar and proximate to the subject property for consideration in the sales comparison analysis and have made a dollar adjustment when appropriate to reflect the market reaction to those items of significant variation. If a significant item in a comparable property is superior to , or more favorable than, the subject property, I have made a negative adjustment to reduce the adjusted sales price of the comparable and, if a significant item in a comparable property is inferior to, or less favorable than the subject property, I have made a positive adjustment to increase the adjusted sales price of the comparable.

2. I have taken into consideration the factors that have an impact on value in my development of the estimate of market value in the appraisal report. I have not knowingly withheld any significant information from the appraisal report and I believe, to the best of my knowledge, that all statements and information in the appraisal report are true and correct.

3. I stated in the appraisal report only my own personal, unbiased, and professional analysis, opinions, and conclusions, which are subject only to the contingent and limiting conditions specified in this form.

4. I have no present or prospective interest in the property that is the subject to this report, and I have no present or prospective personal interest or bias with respect to the participants in the transaction. I did not base, either partially or completely, my analysis and/or the estimate of market value in the appraisal report  on the race, color, religion, sex, handicap, familial status, or national origin of either the prospective owners or occupants of the subject property or of the present owners or occupants of the properties in the vicinity of the subject property.

5. I have no present or contemplated future interest in the subject property, and neither my current or future employment nor my compensation for performing this appraisal is contingent on the appraised value of the property.

6. I was not required to report a predetermined value or direction in value that favors the cause of the client or any related party, the amount of the value estimate, the attainment of a specific result, or the occurrence of a subsequent event in order to receive my compensation and/or employment for performing the appraisal. I did not base the appraisal report on a requested minimum valuation, a specific valuation, or the need to approve a specific mortgage loan.

7. I performed this appraisal in conformity with the Uniform Standards of Professional Appraisal Practice that were adopted and promulgated by the Appraisal Standards Board of The Appraisal Foundation and that were in place as of the effective date of this appraisal, with the exception of the departure provision of those Standards, which does not apply. I acknowledge that an estimate of a reasonable time for exposure in the open market is a condition in the definition of market value and the estimate I developed is consistent with the marketing time noted in the neighborhood section of this report, unless I have otherwise stated in the reconciliation section.

8. I have personally inspected the interior and exterior areas of the subject property and the exterior of all properties listed as comparables in the appraisal report. I further certify that I have noted any apparent or known adverse conditions in the subject improvements, on the subject site, or on any site within the immediate vicinity of the subject property of which I am aware and have made adjustments for these adverse conditions in my analysis of the property value to the extent that I had market evidence to support them. I have also commented about the effect of the adverse conditions on the marketability of the subject property.

9. I personally prepared all conclusions and opinions about the real estate that were set forth in the appraisal report. If I relied on significant professional assistance from any individual or individuals in the performance of the appraisal or the preparation of the appraisal report, I have named such individual(s) and disclosed the specific tasks performed by them in the reconciliation section of this appraisal report. I certify that any individual so named is qualified to perform the tasks. I have not authorized anyone to make a change to any item in the report; therefore, if an unauthorized change is made to the appraisal report, I will take no responsibility for it.

**SUPERVISORY APPRAISER'S CERTIFICATION:**    If a supervisory appraiser signed the appraisal report, he or she certifies and agrees that: I directly supervise the appraiser who prepared the appraisal report, have reviewed the appraisal report, agree with the statements and conclusions of the appraiser, agree to be bound by the appraiser's certifications numbered 4 through 7 above, and am taking full responsibility for the appraisal and the appraisal report.

**ADDRESS OF PROPERTY APPRAISED:** 8940 SURREY COURT, LAS VEGAS, NV 89145-6224

**APPRAISER:**                                                          **SUPERVISORY APPRAISER (only if required)**

Signature: _Fred M. Wrotny_                        Signature: _____
Name: FRED M WROTNY                                     Name: _____
Date Signed: 03/28/2008                                 Date Signed: _____
State Certification #: _____                  State Certification #: _____
or State License #: 04884                               or State License #: _____
State: NV                                               State: NV
Expiration Date of Certification or License: 09/30/2008   Expiration Date of Certification or License: _____

☐ Did    ☐ Did Not Inspect Property

---

Freddie Mac Form 439 6-93                    Page 2 of 2                    Fannie Mae Form 1004B 6-93

Borrower: HERDA
Property Address: 8040 SURREY COURT
City: LAS VEGAS State: NV Zip: 89146-6224
Lender: ALLIANCE MORTGAGE
File No.: 5-110F
Case No.:



**FRONT VIEW OF
SUBJECT PROPERTY**

Appraised Date: March 24, 2005



**REAR VIEW OF
SUBJECT PROPERTY**



**STREET SCENE**

**COMPARABLE PROPERTY PHOTO ADDENDUM**

| | | |
|---|---|---|
| Borrower: HERDA | | File No: 09-110F |
| Property Address: 6940 SURREY COURT | | Case No.: |
| City: LAS VEGAS | State: NV | Zip: 89145-6224 |
| Lender: ALLIANCE MORTGAGE | | |



**COMPARABLE SALE #1**

7109 SHORE LANE
LAS VEGAS; 138-34-313-041
Sale Date: 12/08/2004
Sale Price: $ 280,000



**COMPARABLE SALE #2**

7124 ALTA DRIVE
LAS VEGAS; 138-34-214-049
Sale Date: 02/10/2005
Sale Price: $ 280,000



**COMPARABLE SALE #3**

7412 BLIZZARD COURT
LAS VEGAS; 138-34-112-008
Sale Date: 11/08/2004
Sale Price: $ 300,000

| Borrower: HERDA | | |
|---|---|---|
| Property Address: 8940 SURREY COURT | File No.: ___-110F | |
| City: LAS VEGAS | State: NV | Zip: 89145-____ |
| Lender: ALLIANCE MORTGAGE | Case No.: | |



SUBJECT: POOL



SUBJECT: KOI POND & WATERFALL





Lic# 04864
Expiration: Sept. 30, 2005

LOAN #: 97135374          CASE #:

Lender: Countrywide Home Loans, Inc., itself or as agent for
Countrywide Bank, a Division of Treasury Bank, N.A.

Prepared by: TARA CULLEN

# GOOD FAITH ESTIMATE

Address: 4500 Park Granada
Calabasas, CA 91302-1613

Applicant(s): LORI HERDA

Sales Price: 305,000.00
Base Loan Amount: 205,000.00
Total Loan Amount: 205,000.00
Type of Loan: CONV UNINSURED
Date Prepared: 03/24/2005

Property Address: 6940 SURREY CT
LAS VEGAS, NV 89145

The information provided below reflects estimates of the charges which you are likely to incur at the settlement of your loan. The fees listed are estimates - the actual charges may be more or less. Your transaction may not involve a fee for every item listed.

The numbers listed beside the estimates generally correspond to the numbered lines contained in the HUD-1 settlement statement which you will be receiving at settlement. The HUD-1 settlement statement will show you the actual cost for items paid at settlement.

Interest rate 6.500 %                                          Term of loan  30          Years

## 800 ITEMS PAYABLE IN CONNECTION WITH LOAN

| | | |
|---|---|---|
| 801 | $ _____ | Loan Origination Fee _____ 0.000 % |
| 802 | $ _____ | Loan Discount _____ % |
| 803 | $ 0.00 | Appraisal |
| 804 | $ 0.00 | Credit Report |
| 805 | $ 0.00 | Lender's Inspection |
| 806 | $ 0.00 | Mortgage Insurance Application Fee |
| 807 | $ 0.00 | Assumption Fee |
| 808 | $ _____ | Warehouse Fee |
| 809 | $ 395.00 | Processing Fee |
| 810 | $ 60.00 | Tax Service    - Paid To: Tax Service Provider |
| 811 | $ 26.00 | Flood Check Fee    - Paid To: Flood Service Provider |
| 813 | $ 0.00 | Wire Transfer |
| 814 | $ 0.00 | Buydown Expense |
| 815 | $ 0.00 | Premium may be paid to broker by lender in range of 0-4% |
| 816 | $ 625.00 | Underwriting Fee |
| 817 | $ _____ | ----- Broker Fees ----- |
| 818 | $ 350.00 | Broker Full Appraisal |
| 819 | $ 18.00 | Broker Credit Report |
| 820 | $ 2,050.00 | Broker Origination Fee |
| 821 | $ _____ | |
| 822 | $ _____ | |
| 823 | $ _____ | |

## 900 ITEMS REQUIRED BY LENDER TO BE PAID IN ADVANCE

| | | |
|---|---|---|
| 901 | $ 1,095.30 | 30   Days interest @ $  36.51   /Day |
| 902 | $ 0.00 | Conventional PMI/FHA Up-front MIP/VA Funding Fee     Financed $ _____ Paid Cash $ _____ |
| 903 | $ 515.00 | Hazard Insurance Premium |
| 904 | $ 0.00 | Flood Insurance Premium |
| 905 | $ _____ | |

## 1000 RESERVES DEPOSITED WITH LENDER

| | | | | | |
|---|---|---|---|---|---|
| 1001 | $ 153.75 | Hazard Insurance | 3 Months @ $ | 51.25 | /month |
| 1002 | $ 0.00 | Mortgage Insurance | 0 Months @ $ | 0.00 | /month |
| 1003 | $ 380.66 | Taxes | 2 Months @ $ | 190.33 | /month |
| 1004 | $ 0.00 | Taxes | 0 Months @ $ | 0.00 | /month |
| 1005 | $ 0.00 | Taxes | 0 Months @ $ | 0.00 | /month |
| 1006 | $ 0.00 | Flood Insurance | 0 Months @ $ | 0.00 | /month |
| 1007 | $ 453.82 | Aggregate Analysis Adjustment | | | |

## 1100 TITLE CHARGES

| | | |
|---|---|---|
| 1101 | $ 500.00 | Closing or Escrow Fee |
| 1102 | $ 0.00 | Abstract or Title Search |
| 1103 | $ 0.00 | Title Examination |
| 1104 | $ 0.00 | Title Insurance Binder |
| 1105 | $ 0.00 | Document Preparation |
| 1106 | $ 0.00 | Notary |
| 1107 | $ 0.00 | Attorney/Settlement Agent |
| 1108 | $ 800.00 | Title Insurance |
| 1109 | $ 30.00 | Courier/Express Mail-Clsng |
| 1110 | $ _____ | |
| 1111 | $ _____ | |

## 1200 GOVERNMENT RECORDING & TRANSFER CHARGES

| | | |
|---|---|---|
| 1201 | $ 50.00 | Recording Fees |
| 1202 | $ 0.00 | City/County Tax/Stamps |
| 1203 | $ 0.00 | State Tax/Stamps |
| 1204 | $ 0.00 | |

## 1300 ADDITIONAL SETTLEMENT CHARGES

| | | |
|---|---|---|
| 1301 | $ 0.00 | Survey |
| 1302 | $ 0.00 | Pest Inspection |
| 1303 | $ 0.00 | Well and Septic Tank Inspection Fee |
| 1304 | $ 0.00 | |

$ 7,602.53     **TOTAL ESTIMATED BORROWER SETTLEMENT CHARGES**
"S" next to an item designates a cost to be paid by Seller (Not included in the total).
"POC-L" next to an item designates a cost paid by the Lender (Not included in the total).
"POC-B" next to an item designates a cost paid by the Borrower (Included in the total).

**Lender requires the use of a particular provider for this settlement service. See attached for additional information.

FHA/VA/CONV
● Good Faith Estimate
2C410-US (05/04)(d)

Initials: _____

* 2 3 8 9 1 *

* 0 9 7 1 3 5 3 7 4 0 0 0 0 0 2 C 4 1 0 *

LOAN #: 97135374

**TOTAL ESTIMATED FUNDS NEEDED TO CLOSE:**

| | | |
|---|---|---|
| $ | 100,000.00 | Downpayment |
| $ | 4,904.00 | Estimated Closing Costs |
| $ | 2,698.53 | Estimated Prepaid Items/Reserves |
| $ | | Other |
| $ | | Financed PMI/MIP/VA Funding Fee |
| $ | 107,602.53 | TOTAL |

**TOTAL ESTIMATED MONTHLY PAYMENT**

| | | |
|---|---|---|
| $ | 1,295.74 | Principal and Interest |
| $ | 190.33 | Taxes |
| $ | 51.25 | Hazard & Flood Insurance |
| $ | 0.00 | Mortgage Insurance |
| $ | 1,537.32 | TOTAL MONTHLY PAYMENT* |

These estimates of closing costs are provided pursuant to the Real Estate Settlement Procedures Act (RESPA). If your loan application is for a first lien residential mortgage and is made in a transaction to purchase a home, additional important information can be found in the HUD Special Information Booklet provided to you by your lender or mortgage broker.

### DISCLOSURES CONCERNING REQUIRED USE OF SETTLEMENT SERVICE PROVIDERS

If an estimated charge shown on page 1 is identified with a double asterisk (**), the lender requires the use of a particular provider of that settlement service. The estimated charge shown is based on the charges of the designated provider. The relationship between the lender and the settlement service provider is that the lender has repeatedly used the provider's services in the past. The lender may decide to choose a different provider, the HUD-1 or HUD-1A statement given to you at settlement will disclose the provider used.

Reserves deposited with lender may not include a proration of taxes due seller or a credit due from seller at closing. For proration calculations please consult your closing agent.

* Does not include Optional Insurance.

| | | | |
|---|---|---|---|
| Applicant | Date | Applicant | Date |
| LORI HERDA | | | |

| | | | |
|---|---|---|---|
| Applicant | Date | Applicant | Date |

FHA/VA/CONV
● Good Faith Estimate
2C410-US (05/04)

Page 2 of 2

# GOOD FAITH ESTIMATE
## ALLIANCE MORTGAGE

| | |
|---|---|
| Lender: | |
| Address: | |

| | | |
|---|---|---|
| Applicant(s): **LORI M HERDA** | Sales Price: | 305,000.00 |
| | Base Loan Amount: | 205,000.00 |
| | Total Loan Amount: | 205,000.00 |
| Property Address: **6940 SURREY CT** | Interest Rate: | 6.500 % |
| **LAS VEGAS, NV 89145** | Type of Loan: **Conventional** |
| | Preparation Date: **March 22, 2005** |
| | Loan Number: **99-0130** |

The information provided below reflects estimates of the charges which you are likely to incur at the settlement of your loan. The fees listed are estimates - actual charges may be more or less. Your transaction may not involve a fee for every item listed. The numbers listed beside the estimates generally correspond to the numbered lines contained in the HUD-1 or HUD-1A settlement statement which you will be receiving at settlement. The HUD-1 or HUD-1A settlement statement will show you the actual cost for items paid at settlement.

| 800 | ITEMS PAYABLE IN CONNECTION WITH LOAN: | | | 1100 | TITLE CHARGES: | | |
|---|---|---|---|---|---|---|---|
| 801. A | Origination Fee @ 1.000% | $ | 2,050.00 | 1101. A. | Closing or Escrow Fee | $ | 150.00 |
| 802. | Discount Fee | $ | 0.00 | 1102. | Abstract or Title Search | $ | 0.00 |
| 803. | Appraisal Fee | $ | 350.00 | 1103. | Title Examination | $ | 0.00 |
| 804. | Credit Report | $ | 18.00 | 1105. | Document Preparation Fee | $ | 0.00 |
| 805. | Lender's Inspection Fee | $ | 0.00 | 1106. | Notary Fee | $ | 0.00 |
| 806. | Mortgage Insurance Application Fee | $ | 0.00 | 1107. | Attorney's Fee | $ | 0.00 |
| 807. | Assumption Fee | $ | 0.00 | 1108. | Title Insurance | $ | 800.00 |
| 808. | Mortgage Broker Fee | $ | 0.00 | | | $ | |
| 810. | Tax Related Service Fee | $ | 0.00 | | | $ | |
| 811. | Application Fee | $ | 0.00 | | | c | |
| 812. | Commitment Fee | $ | 0.00 | | | $ | |
| 813. | Lender's Rate Lock-in Fee | $ | 0.00 | | | | |
| 814. A | Processing Fee | $ | 395.00 | 1200 | GOVERNMENT RECORDING AND TRANSFER CHARGES: | | |
| 815. | Underwriting Fee | $ | 530.00 | 1201. | Recording Fee | $ | 50.00 |
| 816. | Wire Transfer Fee | $ | 0.00 | 1202. | City/County Tax/Stamps | $ | 0.00 |
| 817. | Yield spread premium to mortgage broker@4.00 | | | 1203. | State Tax/Stamps | $ | 0.00 |
| 900 | ITEMS REQUIRED BY LENDER TO BE PAID IN ADVANCE: | | | 1204. | Intangible Tax | $ | 0.00 |
| 901. A | Interest @ $37.0139/day for 15 days | $ | 555.21 | | | R | |
| 902. | Mortgage Insurance Premium for 12 months | $ | 0.00 | | | $ | |
| 903. | Hazard Insurance Premium for 12 months | $ | 0.00 | | | $ | |
| 904. | County Property Taxes | $ | 0.00 | 1300 | ADDITIONAL SETTLEMENT CHARGES: | | |
| 905. | Flood Insurance | $ | 0.00 | 1301. | Survey | $ | 0.00 |
| | | $ | | 1302. | Pest Inspection | $ | 0.00 |
| | | $ | | 1303. | TRANSACTIONS | $ | 650.00 |
| 1000 | RESERVES DEPOSITED WITH LENDER: | | | | | $ | |
| 1001. | Hazard Ins. @ $58.0833/mo. for 12 months | $ | 697.00 | | | $ | |
| 1002. | Mortgage Ins. | $ | 0.00 | | | $ | |
| 1004. A | Tax & Assmt. @ $317.7083/mo. for 6 months | $ | 1,906.25 | | | $ | |
| 1005. | Flood Insurance | $ | 0.00 | TOTAL ESTIMATED SETTLEMENT CHARGES: | | $ | 8,151.46 |
| 1006. | Aggregate Escrow Adjustment | $ | 0.00 | "A" designates those costs affecting APR. "P" designates financed costs. | | | |

"S"/"B" designates those costs to be paid by Seller/Broker.

| TOTAL ESTIMATED MONTHLY PAYMENT: | | | TOTAL ESTIMATED FUNDS NEEDED TO CLOSE: | | |
|---|---|---|---|---|---|
| Principal & Interest | $ | 1,295.74 | Down Payment | $ | 100,000.00 |
| Real Estate Taxes | $ | 317.71 | Estimated Closing Costs (Not Financed) | $ | 4,993.00 |
| Hazard Insurance | $ | 58.08 | Estimated Prepaid Items / Reserves | $ | 3,158.46 |
| Flood Insurance | $ | | Total Paid Items (Subtract) | | |
| Mortgage Insurance | $ | | Other **Rep/Imp. (Non Fin.)** | | |
| Other | $ | | Cash From Borrower | $ | 108,151.46 |
| TOTAL MONTHLY PAYMENT | $ | 1,671.53 | | | |

THIS SECTION IS COMPLETED ONLY IF A PARTICULAR PROVIDER OF SERVICE IS REQUIRED. Listed below are providers of service which we required you to use. The charges indicated in the Good Faith Estimate above are based upon the corresponding charge of the below designated providers.

| ITEM NO. | NAME & ADDRESS OF PROVIDER | TELEPHONE NO. | NATURE OF RELATIONSHIP |
|---|---|---|---|
| 0 | | | |
| 0 | | | |
| 0 | | | |

These estimates are provided pursuant to the Real Estate Settlement Procedures Act of 1974, as amended (RESPA). Additional information can be found in the HUD Special Information Booklet, which is to be provided to you by your mortgage broker or lender, if your application is to purchase residential property and the Lender will take a first lien on the property.

| Applicant **LORI M HERDA** | Date | Applicant | Date |
|---|---|---|---|
| | | | |

| Applicant | Date | Applicant | Date |
|---|---|---|---|
| | | | |

[X] This Good Faith Estimate is being provided by **ALLIANCE MORTGAGE** a mortgage broker, and no lender has yet been obtained.

## GOOD FAITH ESTIMATE OF
## SETTLEMENT CHARGES

Borrower(s) _____    Property Address _____

The information listed immediately below gives an estimate of financing terms and payment breakdown on the loan you are applying for. The figures shown are estimates and are subject to change.

### PAYMENT BREAKDOWN AND FINANCING TERMS

| | | | | |
|---|---|---|---|---|
| Type of Program | $_____ | Sales Price | $_____ | |
| P & I @_____% | $_____ | | | |
| P & I (2nd) | $_____ | Down Payment | "A" $_____ | |
| Hazard Insurance | $_____ | | | |
| Real Estate Taxes | $_____ | 1st Mortgage (____%) | $_____ | |
| Mortgage Insurance | $_____ | Financed MIP (FHA) | $_____ | |
| Home Owners Assn. Dues | $_____ | V.A. Funding Fee (____%) | $_____ | |
| TOTAL PAYMENT | $_____ | Gross Mortgage | $_____ | |

The information provided below reflects estimates of the charges which you are likely to incur at the settlement of your loan. The fees listed are estimates — the actual charges may be more or less. Your Transaction may not involve a fee for every item listed. The numbers listed beside the estimates generally correspond to the numbered lines contained in the HUD-1 Settlement Statement which you will receive at settlement. The HUD-1 Settlement Statement will show you the actual cost for the items paid at settlement.

### NONRECURRING CLOSING COSTS

| | | |
|---|---|---|
| 801 | Origination Fee ___% +$_____ | $ 200 |
| 802 | Loan Discount _____% | $ |
| 803 | Appraisal Fee | $ 350 |
| 804 | Credit Report | $ 18 |
| 805 | Inspection Fee | $ |
| 806 | Transaction Fee | $ 650 |
| 808 | Mortgage Broker Fee _____% | $ |
| 809 | Tax related Service Fee | $ |
| 810 | Processing Fee | $ 395 |
| 811 | Underwriting Fee | $ 530 |
| 812 | Wire Transfer Fee | $ 50 |
| 813 | YSP (POC) 0 to 4% | $ |
| 1101 | Settlement or Closing Fee (Escrow Fee) | $ 150 |
| 1105 | Document Preparation Fee | $ |
| 1106 | Notary Fee | $ |
| 1108 | Title Insurance Fee | $ 800 |
| 1201 | Recording Fees | $ 50 |
| 1202 | City/County Tax Stamps | $ |
| 1302 | Pest Inspection | $ |
| | Flood Certification Fee | $ 25 |

"B" $_____

### RECURRING, CLOSING OR PREPAID EXPENSES

| | | |
|---|---|---|
| 901* | Interest for 15 days @$_____ per day | $_____ |
| 903 | Hazard Insurance Premium for one year | $_____ |
| 1001 | Hazard Insurance Impounds @$_____ for_____ Month(s) | $_____ |
| 1002 | Mortgage Insurance Impounds @$_____ for_____ Month(s) | $_____ |
| 1004 | Tax Impounds @ $_____ for_____ month(s) | $_____ |
| 1006 | Flood Insurance Impounds @ $_____ for_____ month(s) | $_____ |

"C" $_____

| | |
|---|---|
| ESTIMATED TOTAL SETTLEMENT CHARGES (A+B+C) | $_____ |
| LESS MONIES ADVANCED (Earnest Money Deposit) | $_____ |
| LESS SELLER CONTRIBUTIONS | $_____ |
| CASH NEEDED – TO CLOSE/TO BORROWER | $_____ |
| 2 MONTHS RESERVES | $_____ |

...is Interest calculation is computed for one month, which would be the maximum period for which advance interest would be collected. At closing interest will be collected for the period from close of escrow to one month before the first due date of a regular ...tallment.

...ese estimates are provided pursuant to the Real Estate Settlement Procedures Act of 1974, as amended (RESPA). Additional ...ormation can be found in the Special Information Booklet, which is to be provided to you by your mortgage broker or lender.

...E FEDERAL EQUAL CREDIT OPPORTUNITY ACT PROHIBITS CREDITORS FROM DISCRIMINATING AGAINST ...EDIT APPLICANTS ON THE BASIS OF SEX OR MARITAL STATUS. THE FEDERAL AGENCY WHICH ADMINISTERS ...MPLIANCE WITH THIS LAW CONCERNING THIS MORTGAGE BANKER IS:

FEDERAL TRADE COMMISSION
11000 WILSHIRE BLVD., ROOM 13209
LOS ANGELES, CA. 90024

...undersigned acknowledge the above information, and further acknowledge receipt of the HUD "SETTLEMENT COSTS AND ...U" booklet and the ECOA Notice contained therein.

...rower(s) _Rosi. M. Nerda_ _3/22/10_ Borrower(s) _____
                        Date                                                                    Date

...pared and mailed/hand delivered a copy of the Good Faith Estimate of Settlement Charges and the booklet "Settlement Costs and ...t" to the above named applicant.  Preparer: _____

Assessor's Parcel Number:
13834610006
After Recording Return To:
COUNTRYWIDE HOME LOANS, INC.

The undersigned hereby certifies this to be a true & correct copy of the original.
FIDELITY NATIONAL TITLE AGENCY OF NEVADA, INC.

By _____

MS SV-79 DOCUMENT PROCESSING
P.O.Box 10423
Van Nuys, CA 91410-0423
Prepared By:
JANELL HAAS
Recording Requested By:
K. POCHY


COUNTRYWIDE HOME LOANS, INC.


650 WHITE DRIVE, STE 280
LAS VEGAS
NV 89119

————————————————[Space Above This Line For Recording Data]— *181703-LD*  ————

0518181703          0009713537405005
[Escrow/Closing #]          [Doc ID #]

# DEED OF TRUST

MIN 1000157-0005020090-2


DEFINITIONS
Words used in multiple sections of this document are defined below and other words are defined in Sections 3, 11, 13, 18, 20 and 21. Certain rules regarding the usage of words used in this document are also provided in Section 16.

(A) "Security Instrument" means this document, which is dated  MAY 03, 2005                    ,
together with all Riders to this document.

NEVADA-Single Family- Fannie Mae/Freddie Mac UNIFORM INSTRUMENT WITH MERS


-6A(NV) (0307) CHL (07/03)(d)          Page 1 of 16          initials: _____
VMP Mortgage Solutions - (800)521-7291          Form 3029 1/01


* 2 3 9 9 1 *          * 0 9 7 1 3 5 3 7 4 0 0 0 0 0 1 0 0 8 A *

DOC ID #: 0009713537405005

**(B) "Borrower"** is
LORI HERDA, A MARRIED WOMAN AS HER SOLE AND SEPARATE PROPERTY

Borrower is the trustor under this Security Instrument.
**(C) "Lender"** is
COUNTRYWIDE HOME LOANS, INC.

Lender is a
CORPORATION

organized and existing under the laws of NEW YORK     . Lender's address is
P.O. Box 10219
Van Nuys, CA 91410-0219
**(D) "Trustee"** is
CTC REAL ESTATE SERVICES

400 COUNTRYWIDE WAY, MSN SV-88, SIMI VALLEY, CA 93065 , ,

**(E) "MERS"** is Mortgage Electronic Registration Systems, Inc. MERS is a separate corporation that is acting solely as a nominee for Lender and Lender's successors and assigns. **MERS is the beneficiary under this Security Instrument.** MERS is organized and existing under the laws of Delaware, and has an address and telephone number of P.O. Box 2026, Flint, MI 48501-2026, tel. (888) 679-MERS.
**(F) "Note"** means the promissory note signed by Borrower and dated MAY 03, 2005     .
The Note states that Borrower owes Lender
TWO HUNDRED FIVE THOUSAND and 00/100

Dollars (U.S. $ 205,000.00     ) plus interest. Borrower has promised to pay this debt in regular Periodic Payments and to pay the debt in full not later than JUNE 01, 2035     .
**(G) "Property"** means the property that is described below under the heading "Transfer of Rights in the Property."
**(H) "Loan"** means the debt evidenced by the Note, plus interest, any prepayment charges and late charges due under the Note, and all sums due under this Security Instrument, plus interest.
**(I) "Riders"** means all Riders to this Security Instrument that are executed by Borrower. The following Riders are to be executed by Borrower [check box as applicable]:

| ☐ Adjustable Rate Rider | ☐ Condominium Rider | ☐ Second Home Rider |
| ☐ Balloon Rider | ☐ Planned Unit Development Rider | ☐ 1-4 Family Rider |
| ☐ VA Rider | ☐ Biweekly Payment Rider | ☐ Other(s) [specify] |

**(J) "Applicable Law"** means all controlling applicable federal, state and local statutes, regulations, ordinances and administrative rules and orders (that have the effect of law) as well as all applicable final, non-appealable judicial opinions.

Initials: _X̶Ⱥ̶_

VMP-6A(NV) (0307)  CHL (07/03)     Page 2 of 16     Form 3029 1/01

DOC ID #: 0009713537405005

(K) **"Community Association Dues, Fees, and Assessments"** means all dues, fees, assessments and other charges that are imposed on Borrower or the Property by a condominium association, homeowners association or similar organization.

(L) **"Electronic Funds Transfer"** means any transfer of funds, other than a transaction originated by check, draft, or similar paper instrument, which is initiated through an electronic terminal, telephonic instrument, computer, or magnetic tape so as to order, instruct, or authorize a financial institution to debit or credit an account. Such term includes, but is not limited to, point-of-sale transfers, automated teller machine transactions, transfers initiated by telephone, wire transfers, and automated clearinghouse transfers.

(M) **"Escrow Items"** means those items that are described in Section 3.

(N) **"Miscellaneous Proceeds"** means any compensation, settlement, award of damages, or proceeds paid by any third party (other than insurance proceeds paid under the coverages described in Section 5) for: (i) damage to, or destruction of, the Property; (ii) condemnation or other taking of all or any part of the Property; (iii) conveyance in lieu of condemnation; or (iv) misrepresentations of, or omissions as to, the value and/or condition of the Property.

(O) **"Mortgage Insurance"** means insurance protecting Lender against the nonpayment of, or default on, the Loan.

(P) **"Periodic Payment"** means the regularly scheduled amount due for (i) principal and interest under the Note, plus (ii) any amounts under Section 3 of this Security Instrument.

(Q) **"RESPA"** means the Real Estate Settlement Procedures Act (12 U.S.C. Section 2601 et seq.) and its implementing regulation, Regulation X (24 C.F.R. Part 3500), as they might be amended from time to time, or any additional or successor legislation or regulation that governs the same subject matter. As used in this Security Instrument, "RESPA" refers to all requirements and restrictions that are imposed in regard to a "federally related mortgage loan" even if the Loan does not qualify as a "federally related mortgage loan" under RESPA.

(R) **"Successor in Interest of Borrower"** means any party that has taken title to the Property, whether or not that party has assumed Borrower's obligations under the Note and/or this Security Instrument.

TRANSFER OF RIGHTS IN THE PROPERTY

The beneficiary of this Security Instrument is MERS (solely as nominee for Lender and Lender's successors and assigns) and the successors and assigns of MERS. This Security Instrument secures to Lender: (i) the repayment of the Loan, and all renewals, extensions and modifications of the Note; and (ii) the performance of Borrower's covenants and agreements under this Security Instrument and the Note. For this purpose, Borrower

DOC ID #: 0009713537405005

irrevocably grants and conveys to Trustee, in trust, with power of sale, the following described property located in the  COUNTY                                                                      of
[Type of Recording Jurisdiction]

CLARK                                                                           :
[Name of Recording Jurisdiction]

LOT 6 IN BLOCK 12 OF CHARLESTON RAINBOW UNIT 7B, AS SHOWN BY
MAP THEREOF ON FILE IN BOOK 13 OF PLATS, PAGE 51 IN THE
OFFICE OF THE COUNTY RECORDER OF CLARK COUNTY, NEVADA.
ASSESSOR'S PARCEL NO: 138-34-610-006

which currently has the address of
6940 SURREY COURT, LAS VEGAS

[Street/City]

Nevada      89145          ("Property Address"):
[Zip Code]

TOGETHER WITH all the improvements now or hereafter erected on the property, and all easements, appurtenances, and fixtures now or hereafter a part of the property. All replacements and additions shall also be covered by this Security Instrument. All of the foregoing is referred to in this Security Instrument as the "Property." Borrower understands and agrees that MERS holds only legal title to the interests granted by Borrower in this Security Instrument, but, if necessary to comply with law or custom, MERS (as nominee for Lender and Lender's successors and assigns) has the right: to exercise any or all of those interests, including, but not limited to, the right to foreclose and sell the Property; and to take any action required of Lender including, but not limited to, releasing and canceling this Security Instrument.

BORROWER COVENANTS that Borrower is lawfully seised of the estate hereby conveyed and has the right to grant and convey the Property and that the Property is unencumbered, except for encumbrances of record. Borrower warrants and will defend generally the title to the Property against all claims and demands, subject to any encumbrances of record.

VMP®-6A(NV) (0307)  CHL (07/03)          Page 4 of 16          Initials: [signature]
                                                                                          Form 3029 1/01

DOC ID #: 0009713537405005

THIS SECURITY INSTRUMENT combines uniform covenants for national use and non-uniform covenants with limited variations by jurisdiction to constitute a uniform security instrument covering real property.

UNIFORM COVENANTS. Borrower and Lender covenant and agree as follows:

1. **Payment of Principal, Interest, Escrow Items, Prepayment Charges, and Late Charges.** Borrower shall pay when due the principal of, and interest on, the debt evidenced by the Note and any prepayment charges and late charges due under the Note. Borrower shall also pay funds for Escrow Items pursuant to Section 3. Payments due under the Note and this Security Instrument shall be made in U.S. currency. However, if any check or other instrument received by Lender as payment under the Note or this Security Instrument is returned to Lender unpaid, Lender may require that any or all subsequent payments due under the Note and this Security Instrument be made in one or more of the following forms, as selected by Lender: (a) cash; (b) money order; (c) certified check, bank check, treasurer's check or cashier's check, provided any such check is drawn upon an institution whose deposits are insured by a federal agency, instrumentality, or entity; or (d) Electronic Funds Transfer.

Payments are deemed received by Lender when received at the location designated in the Note or at such other location as may be designated by Lender in accordance with the notice provisions in Section 15. Lender may return any payment or partial payment if the payment or partial payments are insufficient to bring the Loan current. Lender may accept any payment or partial payment insufficient to bring the Loan current, without waiver of any rights hereunder or prejudice to its rights to refuse such payment or partial payments in the future, but Lender is not obligated to apply such payments at the time such payments are accepted. If each Periodic Payment is applied as of its scheduled due date, then Lender need not pay interest on unapplied funds. Lender may hold such unapplied funds until Borrower makes payment to bring the Loan current. If Borrower does not do so within a reasonable period of time, Lender shall either apply such funds or return them to Borrower. If not applied earlier, such funds will be applied to the outstanding principal balance under the Note immediately prior to foreclosure. No offset or claim which Borrower might have now or in the future against Lender shall relieve Borrower from making payments due under the Note and this Security Instrument or performing the covenants and agreements secured by this Security Instrument.

2. **Application of Payments or Proceeds.** Except as otherwise described in this Section 2, all payments accepted and applied by Lender shall be applied in the following order of priority: (a) interest due under the Note; (b) principal due under the Note; (c) amounts due under Section 3. Such payments shall be applied to each Periodic Payment in the order in which it became due. Any remaining amounts shall be applied first to late charges, second to any other amounts due under this Security Instrument, and then to reduce the principal balance of the Note.

If Lender receives a payment from Borrower for a delinquent Periodic Payment which includes a sufficient amount to pay any late charge due, the payment may be applied to the delinquent payment and the late charge. If more than one Periodic Payment is outstanding, Lender may apply any payment received from Borrower to the repayment of the Periodic Payments if, and to the extent that, each payment can be paid in full. To the extent that any excess exists after the payment is applied to the full payment of one or more Periodic Payments, such excess may be applied to any late charges due. Voluntary prepayments shall be applied first to any prepayment charges and then as described in the Note.

Any application of payments, insurance proceeds, or Miscellaneous Proceeds to principal due under the Note shall not extend or postpone the due date, or change the amount, of the Periodic Payments.

3. **Funds for Escrow Items.** Borrower shall pay to Lender on the day Periodic Payments are due under the Note, until the Note is paid in full, a sum (the "Funds") to provide for payment of amounts due for: (a) taxes and assessments and other items which can attain priority over this Security Instrument as a lien or encumbrance on the Property; (b) leasehold payments or ground rents on the Property, if any; (c) premiums

DOC ID #: 0009713537405005

any and all insurance required by Lender under Section 5; and (d) Mortgage Insurance premiums, if any, or any sums payable by Borrower to Lender in lieu of the payment of Mortgage Insurance premiums in accordance with the provisions of Section 10. These items are called "Escrow Items." At origination or at any time during the term of the Loan, Lender may require that Community Association Dues, Fees, and Assessments, if any, be escrowed by Borrower, and such dues, fees and assessments shall be an Escrow Item. Borrower shall promptly furnish to Lender all notices of amounts to be paid under this Section. Borrower shall pay Lender the Funds for Escrow Items unless Lender waives Borrower's obligation to pay the Funds for any or all Escrow Items. Lender may waive Borrower's obligation to pay to Lender Funds for any or all Escrow Items at any time. Any such waiver may only be in writing. In the event of such waiver, Borrower shall pay directly, when and where payable, the amounts due for any Escrow Items for which payment of Funds has been waived by Lender and, if Lender requires, shall furnish to Lender receipts evidencing such payment within such time period as Lender may require. Borrower's obligation to make such payments and to provide receipts shall for all purposes be deemed to be a covenant and agreement contained in this Security Instrument, as the phrase "covenant and agreement" is used in Section 9. If Borrower is obligated to pay Escrow Items directly, pursuant to a waiver, and Borrower fails to pay the amount due for an Escrow Item, Lender may exercise its rights under Section 9 and pay such amount and Borrower shall then be obligated under Section 9 to repay to Lender any such amount. Lender may revoke the waiver as to any or all Escrow Items at any time by a notice given in accordance with Section 15 and, upon such revocation, Borrower shall pay to Lender all Funds, and in such amounts, that are then required under this Section 3.

Lender may, at any time, collect and hold Funds in an amount (a) sufficient to permit Lender to apply the Funds at the time specified under RESPA, and (b) not to exceed the maximum amount a lender can require under RESPA. Lender shall estimate the amount of Funds due on the basis of current data and reasonable estimates of expenditures of future Escrow Items or otherwise in accordance with Applicable Law.

The Funds shall be held in an institution whose deposits are insured by a federal agency, instrumentality, or entity (including Lender, if Lender is an institution whose deposits are so insured) or in any Federal Home Loan Bank. Lender shall apply the Funds to pay the Escrow Items no later than the time specified under RESPA. Lender shall not charge Borrower for holding and applying the Funds, annually analyzing the escrow account, or verifying the Escrow Items, unless Lender pays Borrower interest on the Funds and Applicable Law permits Lender to make such a charge. Unless an agreement is made in writing or Applicable Law requires interest to be paid on the Funds, Lender shall not be required to pay Borrower any interest or earnings on the Funds. Borrower and Lender can agree in writing, however, that interest shall be paid on the Funds. Lender shall give to Borrower, without charge, an annual accounting of the Funds as required by RESPA.

If there is a surplus of Funds held in escrow, as defined under RESPA, Lender shall account to Borrower for the excess funds in accordance with RESPA. If there is a shortage of Funds held in escrow, as defined under RESPA, Lender shall notify Borrower as required by RESPA, and Borrower shall pay to Lender the amount necessary to make up the shortage in accordance with RESPA, but in no more than 12 monthly payments. If there is a deficiency of Funds held in escrow, as defined under RESPA, Lender shall notify Borrower as required by RESPA, and Borrower shall pay to Lender the amount necessary to make up the deficiency in accordance with RESPA, but in no more than 12 monthly payments.

Upon payment in full of all sums secured by this Security Instrument, Lender shall promptly refund to Borrower any Funds held by Lender.

4. Charges; Liens. Borrower shall pay all taxes, assessments, charges, fines, and impositions attributable to the Property which can attain priority over this Security Instrument, leasehold payments or ground rents on the Property, if any, and Community Association Dues, Fees, and Assessments, if any. To the extent that these items are Escrow Items, Borrower shall pay them in the manner provided in Section 3.

Borrower shall promptly discharge any lien which has priority over this Security Instrument unless Borrower: (a) agrees in writing to the payment of the obligation secured by the lien in a manner acceptable to Lender, but only so long as Borrower is performing such agreement; (b) contests the lien in good faith by, or

-6A(NV) (0307)    CHL (07/03)          Page 6 of 16                                  Initials: ___

                                                                                      Form 3029 1/01

DOC ID #: 0009713537405005

defends against enforcement of the lien in, legal proceedings which in Lender's opinion operate to prevent the enforcement of the lien while those proceedings are pending, but only until such proceedings are concluded; or (c) secures from the holder of the lien an agreement satisfactory to Lender subordinating the lien to this Security Instrument. If Lender determines that any part of the Property is subject to a lien which can attain priority over this Security Instrument, Lender may give Borrower a notice identifying the lien. Within 10 days of the date on which that notice is given, Borrower shall satisfy the lien or take one or more of the actions set forth above in this Section 4.

Lender may require Borrower to pay a one-time charge for a real estate tax verification and/or reporting service used by Lender in connection with this Loan.

**5. Property Insurance.** Borrower shall keep the improvements now existing or hereafter erected on the Property insured against loss by fire, hazards included within the term "extended coverage," and any other hazards including, but not limited to, earthquakes and floods, for which Lender requires insurance. This insurance shall be maintained in the amounts (including deductible levels) and for the periods that Lender requires. What Lender requires pursuant to the preceding sentences can change during the term of the Loan. The insurance carrier providing the insurance shall be chosen by Borrower subject to Lender's right to disapprove Borrower's choice, which right shall not be exercised unreasonably. Lender may require Borrower to pay, in connection with this Loan, either: (a) a one-time charge for flood zone determination, certification and tracking services; or (b) a one-time charge for flood zone determination and certification services and subsequent charges each time remappings or similar changes occur which reasonably might affect such determination or certification. Borrower shall also be responsible for the payment of any fees imposed by the Federal Emergency Management Agency in connection with the review of any flood zone determination resulting from an objection by Borrower.

If Borrower fails to maintain any of the coverages described above, Lender may obtain insurance coverage, at Lender's option and Borrower's expense. Lender is under no obligation to purchase any particular type or amount of coverage. Therefore, such coverage shall cover Lender, but might or might not protect Borrower, Borrower's equity in the Property, or the contents of the Property, against any risk, hazard or liability and might provide greater or lesser coverage than was previously in effect. Borrower acknowledges that the cost of the insurance coverage so obtained might significantly exceed the cost of insurance that Borrower could have obtained. Any amounts disbursed by Lender under this Section 5 shall become additional debt of Borrower secured by this Security Instrument. These amounts shall bear interest at the Note rate from the date of disbursement and shall be payable, with such interest, upon notice from Lender to Borrower requesting payment.

All insurance policies required by Lender and renewals of such policies shall be subject to Lender's right to disapprove such policies, shall include a standard mortgage clause, and shall name Lender as mortgagee and/or as an additional loss payee. Lender shall have the right to hold the policies and renewal certificates. If Lender requires, Borrower shall promptly give to Lender all receipts of paid premiums and renewal notices. If Borrower obtains any form of insurance coverage, not otherwise required by Lender, for damage to, or destruction of, the Property, such policy shall include a standard mortgage clause and shall name Lender as mortgagee and/or as an additional loss payee.

In the event of loss, Borrower shall give prompt notice to the insurance carrier and Lender. Lender may make proof of loss if not made promptly by Borrower. Unless Lender and Borrower otherwise agree in writing, any insurance proceeds, whether or not the underlying insurance was required by Lender, shall be applied to restoration or repair of the Property, if the restoration or repair is economically feasible and Lender's security is not lessened. During such repair and restoration period, Lender shall have the right to hold such insurance proceeds until Lender has had an opportunity to inspect such Property to ensure the work has been completed to Lender's satisfaction, provided that such inspection shall be undertaken promptly. Lender may disburse proceeds for the repairs and restoration in a single payment or in a series of progress payments as the work is completed. Unless an agreement is made in writing or Applicable Law requires interest to be

DOC ID #: 0009713537405005

paid on such insurance proceeds, Lender shall not be required to pay Borrower any interest or earnings on such proceeds. Fees for public adjusters, or other third parties, retained by Borrower shall not be paid out of the insurance proceeds and shall be the sole obligation of Borrower. If the restoration or repair is not economically feasible or Lender's security would be lessened, the insurance proceeds shall be applied to the sums secured by this Security Instrument, whether or not then due, with the excess, if any, paid to Borrower. Such insurance proceeds shall be applied in the order provided for in Section 2.

If Borrower abandons the Property, Lender may file, negotiate and settle any available insurance claim and related matters. If Borrower does not respond within 30 days to a notice from Lender that the insurance carrier has offered to settle a claim, then Lender may negotiate and settle the claim. The 30-day period will begin when the notice is given. In either event, or if Lender acquires the Property under Section 22 or otherwise, Borrower hereby assigns to Lender (a) Borrower's rights to any insurance proceeds in an amount not to exceed the amounts unpaid under the Note or this Security Instrument, and (b) any other of Borrower's rights (other than the right to any refund of unearned premiums paid by Borrower) under all insurance policies covering the Property, insofar as such rights are applicable to the coverage of the Property. Lender may use the insurance proceeds either to repair or restore the Property or to pay amounts unpaid under the Note or this Security Instrument, whether or not then due.

6. Occupancy. Borrower shall occupy, establish, and use the Property as Borrower's principal residence within 60 days after the execution of this Security Instrument and shall continue to occupy the Property as Borrower's principal residence for at least one year after the date of occupancy, unless Lender otherwise agrees in writing, which consent shall not be unreasonably withheld, or unless extenuating circumstances exist which are beyond Borrower's control.

7. Preservation, Maintenance and Protection of the Property; Inspections. Borrower shall not destroy, damage or impair the Property, allow the Property to deteriorate or commit waste on the Property. Whether or not Borrower is residing in the Property, Borrower shall maintain the Property in order to prevent the Property from deteriorating or decreasing in value due to its condition. Unless it is determined pursuant to Section 5 that repair or restoration is not economically feasible, Borrower shall promptly repair the Property if damaged to avoid further deterioration or damage. If insurance or condemnation proceeds are paid in connection with damage to, or the taking of, the Property, Borrower shall be responsible for repairing or restoring the Property only if Lender has released proceeds for such purposes. Lender may disburse proceeds for the repairs and restoration in a single payment or in a series of progress payments as the work is completed. If the insurance or condemnation proceeds are not sufficient to repair or restore the Property, Borrower is not relieved of Borrower's obligation for the completion of such repair or restoration.

Lender or its agent may make reasonable entries upon and inspections of the Property. If it has reasonable cause, Lender may inspect the interior of the improvements on the Property. Lender shall give Borrower notice at the time of or prior to such an interior inspection specifying such reasonable cause.

8. Borrower's Loan Application. Borrower shall be in default if, during the Loan application process, Borrower or any persons or entities acting at the direction of Borrower or with Borrower's knowledge or consent gave materially false, misleading, or inaccurate information or statements to Lender (or failed to provide Lender with material information) in connection with the Loan. Material representations include, but are not limited to, representations concerning Borrower's occupancy of the Property as Borrower's principal residence.

9. Protection of Lender's Interest in the Property and Rights Under this Security Instrument. If (a) Borrower fails to perform the covenants and agreements contained in this Security Instrument, (b) there is a legal proceeding that might significantly affect Lender's interest in the Property and/or rights under this Security Instrument (such as a proceeding in bankruptcy, probate, for condemnation or forfeiture, for enforcement of a lien which may attain priority over this Security Instrument or to enforce laws or regulations), or (c) Borrower has abandoned the Property, then Lender may do and pay for whatever is

Initials: _____

-6A(NV) (0307)    CHL (07/03)          Page 8 of 16                          Form 3029 1/01

DOC ID #: 0009713537405005

reasonable or appropriate to protect Lender's interest in the Property and rights under this Security Instrument, including protecting and/or assessing the value of the Property, and securing and/or repairing the Property. Lender's actions can include, but are not limited to: (a) paying any sums secured by a lien which has priority over this Security Instrument; (b) appearing in court; and (c) paying reasonable attorneys' fees to protect its interest in the Property and/or rights under this Security Instrument, including its secured position in a bankruptcy proceeding. Securing the Property includes, but is not limited to, entering the Property to make repairs, change locks, replace or board up doors and windows, drain water from pipes, eliminate building or other code violations or dangerous conditions, and have utilities turned on or off. Although Lender may take action under this Section 9, Lender does not have to do so and is not under any duty or obligation to do so. It is agreed that Lender incurs no liability for not taking any or all actions authorized under this Section 9.

Any amounts disbursed by Lender under this Section 9 shall become additional debt of Borrower secured by this Security Instrument. These amounts shall bear interest at the Note rate from the date of disbursement and shall be payable, with such interest, upon notice from Lender to Borrower requesting payment.

If this Security Instrument is on a leasehold, Borrower shall comply with all the provisions of the lease. If Borrower acquires fee title to the Property, the leasehold and the fee title shall not merge unless Lender agrees to the merger in writing.

10. Mortgage Insurance. If Lender required Mortgage Insurance as a condition of making the Loan, Borrower shall pay the premiums required to maintain the Mortgage Insurance in effect. If, for any reason, the Mortgage Insurance coverage required by Lender ceases to be available from the mortgage insurer that previously provided such insurance and Borrower was required to make separately designated payments toward the premiums for Mortgage Insurance, Borrower shall pay the premiums required to obtain coverage substantially equivalent to the Mortgage Insurance previously in effect, at a cost substantially equivalent to the cost to Borrower of the Mortgage Insurance previously in effect, from an alternate mortgage insurer selected by Lender. If substantially equivalent Mortgage Insurance coverage is not available, Borrower shall continue to pay to Lender the amount of the separately designated payments that were due when the insurance coverage ceased to be in effect. Lender will accept, use and retain these payments as a non-refundable loss reserve in lieu of Mortgage Insurance. Such loss reserve shall be non-refundable, notwithstanding the fact that the Loan is ultimately paid in full, and Lender shall not be required to pay Borrower any interest or earnings on such loss reserve. Lender can no longer require loss reserve payments if Mortgage Insurance coverage (in the amount and for the period that Lender requires) provided by an insurer selected by Lender again becomes available, is obtained, and Lender requires separately designated payments toward the premiums for Mortgage Insurance. If Lender required Mortgage Insurance as a condition of making the Loan and Borrower was required to make separately designated payments toward the premiums for Mortgage Insurance, Borrower shall pay the premiums required to maintain Mortgage Insurance in effect, or to provide a non-refundable loss reserve, until Lender's requirement for Mortgage Insurance ends in accordance with any written agreement between Borrower and Lender providing for such termination or until termination is required by Applicable Law. Nothing in this Section 10 affects Borrower's obligation to pay interest at the rate provided in the Note.

Mortgage Insurance reimburses Lender (or any entity that purchases the Note) for certain losses it may incur if Borrower does not repay the Loan as agreed. Borrower is not a party to the Mortgage Insurance.

Mortgage insurers evaluate their total risk on all such insurance in force from time to time, and may enter into agreements with other parties that share or modify their risk, or reduce losses. These agreements are on terms and conditions that are satisfactory to the mortgage insurer and the other party (or parties) to these agreements. These agreements may require the mortgage insurer to make payments using any source of funds that the mortgage insurer may have available (which may include funds obtained from Mortgage Insurance premiums).

As a result of these agreements, Lender, any purchaser of the Note, another insurer, any reinsurer, any other entity, or any affiliate of any of the foregoing, may receive (directly or indirectly) amounts that derive

DOC ID #: 0009713537405005

from (or might be characterized as) a portion of Borrower's payments for Mortgage Insurance, in exchange for sharing or modifying the mortgage insurer's risk, or reducing losses. If such agreement provides that an affiliate of Lender takes a share of the insurer's risk in exchange for a share of the premiums paid to the insurer, the arrangement is often termed "captive reinsurance." Further:

(a) Any such agreements will not affect the amounts that Borrower has agreed to pay for Mortgage Insurance, or any other terms of the Loan. Such agreements will not increase the amount Borrower will owe for Mortgage Insurance, and they will not entitle Borrower to any refund.

(b) Any such agreements will not affect the rights Borrower has - if any - with respect to the Mortgage Insurance under the Homeowners Protection Act of 1998 or any other law. These rights may include the right to receive certain disclosures, to request and obtain cancellation of the Mortgage Insurance, to have the Mortgage Insurance terminated automatically, and/or to receive a refund of any Mortgage Insurance premiums that were unearned at the time of such cancellation or termination.

11. Assignment of Miscellaneous Proceeds; Forfeiture. All Miscellaneous Proceeds are hereby assigned to and shall be paid to Lender.

If the Property is damaged, such Miscellaneous Proceeds shall be applied to restoration or repair of the Property, if the restoration or repair is economically feasible and Lender's security is not lessened. During such repair and restoration period, Lender shall have the right to hold such Miscellaneous Proceeds until Lender has had an opportunity to inspect such Property to ensure the work has been completed to Lender's satisfaction, provided that such inspection shall be undertaken promptly. Lender may pay for the repairs and restoration in a single disbursement or in a series of progress payments as the work is completed. Unless an agreement is made in writing or Applicable Law requires interest to be paid on such Miscellaneous Proceeds, Lender shall not be required to pay Borrower any interest or earnings on such Miscellaneous Proceeds. If the restoration or repair is not economically feasible or Lender's security would be lessened, the Miscellaneous Proceeds shall be applied to the sums secured by this Security Instrument, whether or not then due, with the excess, if any, paid to Borrower. Such Miscellaneous Proceeds shall be applied in the order provided for in Section 2.

In the event of a total taking, destruction, or loss in value of the Property, the Miscellaneous Proceeds shall be applied to the sums secured by this Security Instrument, whether or not then due, with the excess, if any, paid to Borrower.

In the event of a partial taking, destruction, or loss in value of the Property in which the fair market value of the Property immediately before the partial taking, destruction, or loss in value is equal to or greater than the amount of the sums secured by this Security Instrument immediately before the partial taking, destruction, or loss in value, unless Borrower and Lender otherwise agree in writing, the sums secured by this Security Instrument shall be reduced by the amount of the Miscellaneous Proceeds multiplied by the following fraction: (a) the total amount of the sums secured immediately before the partial taking, destruction, or loss in value divided by (b) the fair market value of the Property immediately before the partial taking, destruction, or loss in value. Any balance shall be paid to Borrower.

In the event of a partial taking, destruction, or loss in value of the Property in which the fair market value of the Property immediately before the partial taking, destruction, or loss in value is less than the amount of the sums secured immediately before the partial taking, destruction, or loss in value, unless Borrower and Lender otherwise agree in writing, the Miscellaneous Proceeds shall be applied to the sums secured by this Security Instrument whether or not the sums are then due.

If the Property is abandoned by Borrower, or if, after notice by Lender to Borrower that the Opposing Party (as defined in the next sentence) offers to make an award to settle a claim for damages, Borrower fails to respond to Lender within 30 days after the date the notice is given, Lender is authorized to collect and apply the Miscellaneous Proceeds either to restoration or repair of the Property or to the sums secured by this Security Instrument, whether or not then due. "Opposing Party" means the third party that owes Borrower Miscellaneous Proceeds or the party against whom Borrower has a right of action in regard to Miscellaneous Proceeds.

Initials: _____

DOC ID #: 0009713537405005

Borrower shall be in default if any action or proceeding, whether civil or criminal, is begun that, in Lender's judgment, could result in forfeiture of the Property or other material impairment of Lender's interest in the Property or rights under this Security Instrument. Borrower can cure such a default and, if acceleration has occurred, reinstate as provided in Section 19, by causing the action or proceeding to be dismissed with a ruling that, in Lender's judgment, precludes forfeiture of the Property or other material impairment of Lender's interest in the Property or rights under this Security Instrument. The proceeds of any award or claim for damages that are attributable to the impairment of Lender's interest in the Property are hereby assigned and shall be paid to Lender.

All Miscellaneous Proceeds that are not applied to restoration or repair of the Property shall be applied in the order provided for in Section 2.

**12. Borrower Not Released; Forbearance By Lender Not a Waiver.** Extension of the time for payment or modification of amortization of the sums secured by this Security Instrument granted by Lender to Borrower or any Successor in Interest of Borrower shall not operate to release the liability of Borrower or any Successors in Interest of Borrower. Lender shall not be required to commence proceedings against any Successor in Interest of Borrower or to refuse to extend time for payment or otherwise modify amortization of the sums secured by this Security Instrument by reason of any demand made by the original Borrower or any Successors in Interest of Borrower. Any forbearance by Lender in exercising any right or remedy including, without limitation, Lender's acceptance of payments from third persons, entities or Successors in Interest of Borrower or in amounts less than the amount then due, shall not be a waiver of or preclude the exercise of any right or remedy.

**13. Joint and Several Liability; Co-signers; Successors and Assigns Bound.** Borrower covenants and agrees that Borrower's obligations and liability shall be joint and several. However, any Borrower who co-signs this Security Instrument but does not execute the Note (a "co-signer"): (a) is co-signing this Security Instrument only to mortgage, grant and convey the co-signer's interest in the Property under the terms of this Security Instrument; (b) is not personally obligated to pay the sums secured by this Security Instrument; and (c) agrees that Lender and any other Borrower can agree to extend, modify, forbear or make any accommodations with regard to the terms of this Security Instrument or the Note without the co-signer's consent.

Subject to the provisions of Section 18, any Successor in Interest of Borrower who assumes Borrower's obligations under this Security Instrument in writing, and is approved by Lender, shall obtain all of Borrower's rights and benefits under this Security Instrument. Borrower shall not be released from Borrower's obligations and liability under this Security Instrument unless Lender agrees to such release in writing. The covenants and agreements of this Security Instrument shall bind (except as provided in Section 20) and benefit the successors and assigns of Lender.

**14. Loan Charges.** Lender may charge Borrower fees for services performed in connection with Borrower's default, for the purpose of protecting Lender's interest in the Property and rights under this Security Instrument, including, but not limited to, attorneys' fees, property inspection and valuation fees. In regard to any other fees, the absence of express authority in this Security Instrument to charge a specific fee to Borrower shall not be construed as a prohibition on the charging of such fee. Lender may not charge fees that are expressly prohibited by this Security Instrument or by Applicable Law.

If the Loan is subject to a law which sets maximum loan charges, and that law is finally interpreted so that the interest or other loan charges collected or to be collected in connection with the Loan exceed the permitted limits, then: (a) any such loan charge shall be reduced by the amount necessary to reduce the charge to the permitted limit; and (b) any sums already collected from Borrower which exceeded permitted limits will be refunded to Borrower. Lender may choose to make this refund by reducing the principal owed under the Note or by making a direct payment to Borrower. If a refund reduces principal, the reduction will be treated as a partial prepayment without any prepayment charge (whether or not a prepayment charge is provided for under the Note). Borrower's acceptance of any such refund made by direct payment to Borrower will constitute a waiver of any right of action Borrower might have arising out of such overcharge.

Initials: _____

DOC ID #: 0009713537405005

**15. Notices.** All notices given by Borrower or Lender in connection with this Security Instrument must be in writing. Any notice to Borrower in connection with this Security Instrument shall be deemed to have been given to Borrower when mailed by first class mail or when actually delivered to Borrower's notice address if sent by other means. Notice to any one Borrower shall constitute notice to all Borrowers unless Applicable Law expressly requires otherwise. The notice address shall be the Property Address unless Borrower has designated a substitute notice address by notice to Lender. Borrower shall promptly notify Lender of Borrower's change of address. If Lender specifies a procedure for reporting Borrower's change of address, then Borrower shall only report a change of address through that specified procedure. There may be only one designated notice address under this Security Instrument at any one time. Any notice to Lender shall be given by delivering it or by mailing it by first class mail to Lender's address stated herein unless Lender has designated another address by notice to Borrower. Any notice in connection with this Security Instrument shall not be deemed to have been given to Lender until actually received by Lender. If any notice required by this Security Instrument is also required under Applicable Law, the Applicable Law requirement will satisfy the corresponding requirement under this Security Instrument.

**16. Governing Law; Severability; Rules of Construction.** This Security Instrument shall be governed by federal law and the law of the jurisdiction in which the Property is located. All rights and obligations contained in this Security Instrument are subject to any requirements and limitations of Applicable Law. Applicable Law might explicitly or implicitly allow the parties to agree by contract or it might be silent, but such silence shall not be construed as a prohibition against agreement by contract. In the event that any provision or clause of this Security Instrument or the Note conflicts with Applicable Law, such conflict shall not affect other provisions of this Security Instrument or the Note which can be given effect without the conflicting provision.

As used in this Security Instrument: (a) words of the masculine gender shall mean and include corresponding neuter words or words of the feminine gender; (b) words in the singular shall mean and include the plural and vice versa; and (c) the word "may" gives sole discretion without any obligation to take any action.

**17. Borrower's Copy.** Borrower shall be given one copy of the Note and of this Security Instrument.

**18. Transfer of the Property or a Beneficial Interest in Borrower.** As used in this Section 18, "Interest in the Property" means any legal or beneficial interest in the Property, including, but not limited to, those beneficial interests transferred in a bond for deed, contract for deed, installment sales contract or escrow agreement, the intent of which is the transfer of title by Borrower at a future date to a purchaser.

If all or any part of the Property or any Interest in the Property is sold or transferred (or if Borrower is not a natural person and a beneficial interest in Borrower is sold or transferred) without Lender's prior written consent, Lender may require immediate payment in full of all sums secured by this Security Instrument. However, this option shall not be exercised by Lender if such exercise is prohibited by Applicable Law.

If Lender exercises this option, Lender shall give Borrower notice of acceleration. The notice shall provide a period of not less than 30 days from the date the notice is given in accordance with Section 15 within which Borrower must pay all sums secured by this Security Instrument. If Borrower fails to pay these sums prior to the expiration of this period, Lender may invoke any remedies permitted by this Security Instrument without further notice or demand on Borrower.

**19. Borrower's Right to Reinstate After Acceleration.** If Borrower meets certain conditions, Borrower shall have the right to have enforcement of this Security Instrument discontinued at any time prior to the earliest of: (a) five days before sale of the Property pursuant to any power of sale contained in this Security Instrument; (b) such other period as Applicable Law might specify for the termination of Borrower's right to reinstate; or (c) entry of a judgment enforcing this Security Instrument. Those conditions are that Borrower: (a) pays Lender all sums which then would be due under this Security Instrument and the Note as if no acceleration had occurred; (b) cures any default of any other covenants or agreements; (c) pays all expenses incurred in enforcing this Security Instrument, including, but not limited to, reasonable attorneys' fees,

DOC ID #: 0009713537405005

property inspection and valuation fees, and other fees incurred for the purpose of protecting Lender's interest in the Property and rights under this Security Instrument; and (d) takes such action as Lender may reasonably require to assure that Lender's interest in the Property and rights under this Security Instrument, and Borrower's obligation to pay the sums secured by this Security Instrument, shall continue unchanged. Lender may require that Borrower pay such reinstatement sums and expenses in one or more of the following forms, as selected by Lender: (a) cash; (b) money order; (c) certified check, bank check, treasurer's check or cashier's check, provided any such check is drawn upon an institution whose deposits are insured by a federal agency, instrumentality or entity; or (d) Electronic Funds Transfer. Upon reinstatement by Borrower, this Security Instrument and obligations secured hereby shall remain fully effective as if no acceleration had occurred. However, this right to reinstate shall not apply in the case of acceleration under Section 18.

**20. Sale of Note; Change of Loan Servicer; Notice of Grievance.** The Note or a partial interest in the Note (together with this Security Instrument) can be sold one or more times without prior notice to Borrower. A sale might result in a change in the entity (known as the "Loan Servicer") that collects Periodic Payments due under the Note and this Security Instrument and performs other mortgage loan servicing obligations under the Note, this Security Instrument, and Applicable Law. There also might be one or more changes of the Loan Servicer unrelated to a sale of the Note. If there is a change of the Loan Servicer, Borrower will be given written notice of the change which will state the name and address of the new Loan Servicer, the address to which payments should be made and any other information RESPA requires in connection with a notice of transfer of servicing. If the Note is sold and thereafter the Loan is serviced by a Loan Servicer other than the purchaser of the Note, the mortgage loan servicing obligations to Borrower will remain with the Loan Servicer or be transferred to a successor Loan Servicer and are not assumed by the Note purchaser unless otherwise provided by the Note purchaser.

Neither Borrower nor Lender may commence, join, or be joined to any judicial action (as either an individual litigant or the member of a class) that arises from the other party's actions pursuant to this Security Instrument or that alleges that the other party has breached any provision of, or any duty owed by reason of, this Security Instrument, until such Borrower or Lender has notified the other party (with such notice given in compliance with the requirements of Section 15) of such alleged breach and afforded the other party hereto a reasonable period after the giving of such notice to take corrective action. If Applicable Law provides a time period which must elapse before certain action can be taken, that time period will be deemed to be reasonable for purposes of this paragraph. The notice of acceleration and opportunity to cure given to Borrower pursuant to Section 22 and the notice of acceleration given to Borrower pursuant to Section 18 shall be deemed to satisfy the notice and opportunity to take corrective action provisions of this Section 20.

**21. Hazardous Substances.** As used in this Section 21: (a) "Hazardous Substances" are those substances defined as toxic or hazardous substances, pollutants, or wastes by Environmental Law and the following substances: gasoline, kerosene, other flammable or toxic petroleum products, toxic pesticides and herbicides, volatile solvents, materials containing asbestos or formaldehyde, and radioactive materials; (b) "Environmental Law" means federal laws and laws of the jurisdiction where the Property is located that relate to health, safety or environmental protection; (c) "Environmental Cleanup" includes any response action, remedial action, or removal action, as defined in Environmental Law; and (d) an "Environmental Condition" means a condition that can cause, contribute to, or otherwise trigger an Environmental Cleanup.

Borrower shall not cause or permit the presence, use, disposal, storage, or release of any Hazardous Substances, or threaten to release any Hazardous Substances, on or in the Property. Borrower shall not do, nor allow anyone else to do, anything affecting the Property (a) that is in violation of any Environmental Law, (b) which creates an Environmental Condition, or (c) which, due to the presence, use, or release of a Hazardous Substance, creates a condition that adversely affects the value of the Property. The preceding two sentences shall not apply to the presence, use, or storage on the Property of small quantities of Hazardous Substances that are generally recognized to be appropriate to normal residential uses and to maintenance of the Property (including, but not limited to, hazardous substances in consumer products).

Initials: _____

Form 3029 1/01

DOC ID #: 000971353740

Borrower shall promptly give Lender written notice of (a) any investigation, claim, demand, lawsuit or other action by any governmental or regulatory agency or private party involving the Property and any Hazardous Substance or Environmental Law of which Borrower has actual knowledge, (b) any Environmental Condition, including but not limited to, any spilling, leaking, discharge, release or threat of release of any Hazardous Substance, and (c) any condition caused by the presence, use or release of a Hazardous Substance which adversely affects the value of the Property. If Borrower learns, or is notified by any governmental or regulatory authority, or any private party, that any removal or other remediation of any Hazardous Substance affecting the Property is necessary, Borrower shall promptly take all necessary remedial actions in accordance with Environmental Law. Nothing herein shall create any obligation on Lender for an Environmental Cleanup.

NON-UNIFORM COVENANTS. Borrower and Lender further covenant and agree as follows:

**22. Acceleration; Remedies.** Lender shall give notice to Borrower prior to acceleration following Borrower's breach of any covenant or agreement in this Security Instrument (but not prior to acceleration under Section 18 unless Applicable Law provides otherwise). The notice shall specify: (a) the default; (b) the action required to cure the default; (c) a date, not less than 30 days from the date the notice is given to Borrower, by which the default must be cured; and (d) that failure to cure the default on or before the date specified in the notice may result in acceleration of the sums secured by this Security Instrument and sale of the Property. The notice shall further inform Borrower of the right to reinstate after acceleration and the right to bring a court action to assert the non-existence of a default or any other defense of Borrower to acceleration and sale. If the default is not cured on or before the date specified in the notice, Lender at its option, and without further demand, may invoke the power of sale, including the right to accelerate full payment of the Note, and any other remedies permitted by Applicable Law. Lender shall be entitled to collect all expenses incurred in pursuing the remedies provided in this Section 22, including, but not limited to, reasonable attorneys' fees and costs of title evidence.

If Lender invokes the power of sale, Lender shall execute or cause Trustee to execute written notice of the occurrence of an event of default and of Lender's election to cause the Property to be sold, and shall cause such notice to be recorded in each county in which any part of the Property is located. Lender shall mail copies of the notice as prescribed by Applicable Law to Borrower and to the persons prescribed by Applicable Law. Trustee shall give public notice of sale to the persons and in the manner prescribed by Applicable Law. After the time required by Applicable Law, Trustee, without demand on Borrower, shall sell the Property at public auction to the highest bidder at the time and place and under the terms designated in the notice of sale in one or more parcels and in any order Trustee determines. Trustee may postpone sale of all or any parcel of the Property by public announcement at the time and place of any previously scheduled sale. Lender or its designee may purchase the Property at any sale.

Trustee shall deliver to the purchaser Trustee's deed conveying the Property without any covenant or warranty, expressed or implied. The recitals in the Trustee's deed shall be prima facie evidence of the truth of the statements made therein. Trustee shall apply the proceeds of the sale in the following order: (a) to all expenses of the sale, including, but not limited to, reasonable Trustee's and attorneys' fees; (b) to all sums secured by this Security Instrument; and (c) any excess to the person or persons legally entitled to it.

**23. Reconveyance.** Upon payment of all sums secured by this Security Instrument, Lender shall request Trustee to reconvey the Property and shall surrender this Security Instrument and all notes evidencing debt secured by this Security Instrument to Trustee. Trustee shall reconvey the Property without warranty to the person or persons legally entitled to it. Such person or persons shall pay any recordation costs. Lender may charge such person or persons a fee for reconveying the Property, but only if the fee is paid to a third party (such as the Trustee) for services rendered and the charging of the fee is permitted under Applicable Law.

**24. Substitute Trustee.** Lender at its option, may from time to time remove Trustee and appoint a successor trustee to any Trustee appointed hereunder. Without conveyance of the Property, the successor trustee shall succeed to all the title, power and duties conferred upon Trustee herein and by Applicable Law.

**25. Assumption Fee.** If there is an assumption of this loan, Lender may charge an assumption fee of U.S. $    300.00    .

Initials: ✗✗✗

-6A(NV) (0307)    CHL (07/03)        Page 14 of 16                Form 3029 1/01

DOC ID #: 0009713537405005

BY SIGNING BELOW, Borrower accepts and agrees to the terms and covenants contained in this Security Instrument and in any Rider executed by Borrower and recorded with it.

Witnesses:

_____

_____

_____ *Lori Herda* _____(Seal)
LORI HERDA                                                        -Borrower

_____(Seal)
                                                                        -Borrower

_____(Seal)
                                                                        -Borrower

_____(Seal)
                                                                        -Borrower

DOC ID #: 0009713537405005

STATE OF NEVADA
COUNTY OF Clark

This instrument was acknowledged before me on _MAY 13, 2005_ by
Loni HERDA



Morris W Rose

Mail Tax Statements To:
TAX DEPARTMENT SV3-24

450 American Street
Simi Valley CA, 93065

-6A(NV) (0307)    CHL (07/03)    Page 16 of 16

Initials: _____
Form 3029 1/01

# EXHIBIT "ONE"

Lot 6 in Block 12 of Charleston Rainbow Unit 7B, as shown by map thereof on file in Book 13 of Plats, Page 51 in the Office of the County Recorder of Clark County, Nevada.

Assessor's Parcel No: 138-34-610-006

Prepared by: JANELL HAAS

LOAN #: 97135374

# NOTE

The undersigned hereby certifies this to be a true & correct copy of the original.

FIDELITY NATIONAL TITLE AGENCY OF NEVADA, INC.

By _____
                    NEVADA

MAY 03, 2005                    LAS VEGAS                    By
[Date]                          [City]                                  [State]

6940 SURREY COURT, LAS VEGAS, NV 89145
[Property Address]

## 1. BORROWER'S PROMISE TO PAY

In return for a loan that I have received, I promise to pay U.S. $ 205,000.00          (this    amount    is    called
"Principal"), plus interest, to the order of the Lender. The Lender is
COUNTRYWIDE HOME LOANS, INC.
I will make all payments under this Note in the form of cash, check or money order.

I understand that the Lender may transfer this Note. The Lender or anyone who takes this Note by transfer and who is entitled to receive payments under this Note is called the "Note Holder."

## 2. INTEREST

Interest will be charged on unpaid principal until the full amount of Principal has been paid. I will pay interest at a yearly rate of  6.375 %.

The interest rate required by this Section 2 is the rate I will pay both before and after any default described in Section 6(B) of this Note.

## 3. PAYMENTS

### (A) Time and Place of Payments

I will pay principal and interest by making a payment every month.

I will make my monthly payment on the  FIRST          day of each month beginning on
JULY 01, 2005       . I will make these payments every month until I have paid all of the principal and interest and any other charges described below that I may owe under this Note. Each monthly payment will be applied as of its scheduled due date and will be applied to interest before Principal. If, on  JUNE 01, 2035       , I still owe amounts under this Note, I will pay those amounts in full on that date, which is called the "Maturity Date."

I will make my monthly payments at
P.O. Box 10219, Van Nuys, CA 91410-0219
or at a different place if required by the Note Holder.

### (B) Amount of Monthly Payments

My monthly payment will be in the amount of U.S. $ 1,278.93

## 4. BORROWER'S RIGHT TO PREPAY

I have the right to make payments of Principal at any time before they are due. A payment of Principal only is known as a "Prepayment." When I make a Prepayment, I will tell the Note Holder in writing that I am doing so. I may not designate a payment as a Prepayment if I have not made all the monthly payments due under this Note.

I may make a full Prepayment or partial Prepayments without paying a Prepayment charge. The Note Holder will use my Prepayments to reduce the amount of Principal that I owe under this Note. However, the Note Holder may apply my Prepayment to the accrued and unpaid interest on the Prepayment amount, before applying my Prepayment to reduce the Principal amount of the Note. If I make a partial Prepayment, there will be no changes in the due date or in the amount of my monthly payment unless the Note Holder agrees in writing to those changes.

## 5. LOAN CHARGES

If a law, which applies to this loan and which sets maximum loan charges, is finally interpreted so that the interest or other loan charges collected or to be collected in connection with this loan exceed the permitted limits, then: (a) any such loan charge shall be reduced by the amount necessary to reduce the charge to the permitted limit; and (b) any sums already collected from me which exceeded permitted limits will be refunded to me. The Note Holder may choose to make this refund by reducing the Principal I owe under this Note or by making a direct payment to me. If a refund reduces Principal, the reduction will be treated as a partial Prepayment.

## 6. BORROWER'S FAILURE TO PAY AS REQUIRED

### (A) Late Charge for Overdue Payments

If the Note Holder has not received the full amount of any monthly payment by the end of  FIFTEEN          calendar days after the date it is due, I will pay a late charge to the Note Holder. The amount of the charge will be    5.000 % of my overdue payment of principal and interest. I will pay this late charge promptly but only once on each late payment.

### (B) Default

If I do not pay the full amount of each monthly payment on the date it is due, I will be in default.

MULTISTATE FIXED RATE NOTE-Single Family-Fannie Mae/Freddie Mac UNIFORM INSTRUMENT          Initials: _____
Page 1 of 2

VMP -5N (0207).01     CHL (010/04)(d)     VMP Mortgage Solutions, Inc. (800)521-7291          Form 3200 1/01


*23991*


*09713537400000200 6N*

LOAN #: 97135374

**(C) Notice of Default**

If I am in default, the Note Holder may send me a written notice telling me that if I do not pay the overdue amount by a certain date, the Note Holder may require me to pay immediately the full amount of Principal which has not been paid and all the interest that I owe on that amount. That date must be at least 30 days after the date on which the notice is mailed to me or delivered by other means.

**(D) No Waiver By Note Holder**

Even if, at a time when I am in default, the Note Holder does not require me to pay immediately in full as described above, the Note Holder will still have the right to do so if I am in default at a later time.

**(E) Payment of Note Holder's Costs and Expenses**

If the Note Holder has required me to pay immediately in full as described above, the Note Holder will have the right to be paid back by me for all of its costs and expenses in enforcing this Note to the extent not prohibited by applicable law. Those expenses include, for example, reasonable attorneys' fees.

**7. GIVING OF NOTICES**

Unless applicable law requires a different method, any notice that must be given to me under this Note will be given by delivering it or by mailing it by first class mail to me at the Property Address above or at a different address if I give the Note Holder a notice of my different address.

Any notice that must be given to the Note Holder under this Note will be given by delivering it or by mailing it by first class mail to the Note Holder at the address stated in Section 3(A) above or at a different address if I am given a notice of that different address.

**8. OBLIGATIONS OF PERSONS UNDER THIS NOTE**

If more than one person signs this Note, each person is fully and personally obligated to keep all of the promises made in this Note, including the promise to pay the full amount owed. Any person who is a guarantor, surety or endorser of this Note is also obligated to do these things. Any person who takes over these obligations, including the obligations of a guarantor, surety or endorser of this Note, is also obligated to keep all of the promises made in this Note. The Note Holder may enforce its rights under this Note against each person individually or against all of us together. This means that any one of us may be required to pay all of the amounts owed under this Note.

**9. WAIVERS**

I and any other person who has obligations under this Note waive the rights of Presentment and Notice of Dishonor. "Presentment" means the right to require the Note Holder to demand payment of amounts due. "Notice of Dishonor" means the right to require the Note Holder to give notice to other persons that amounts due have not been paid.

**10. UNIFORM SECURED NOTE**

This Note is a uniform instrument with limited variations in some jurisdictions. In addition to the protections given to the Note Holder under this Note, a Mortgage, Deed of Trust, or Security Deed (the "Security Instrument"), dated the same date as this Note, protects the Note Holder from possible losses which might result if I do not keep the promises which I make in this Note. That Security Instrument describes how and under what conditions I may be required to make immediate payment in full of all amounts I owe under this Note. Some of those conditions are described as follows:

If all or any part of the Property or any Interest in the Property is sold or transferred (or if Borrower is not a natural person and a beneficial interest in Borrower is sold or transferred) without Lender's prior written consent, Lender may require immediate payment in full of all sums secured by this Security Instrument. However, this option shall not be exercised by Lender if such exercise is prohibited by Applicable Law.

If Lender exercises this option, Lender shall give Borrower notice of acceleration. The notice shall provide a period of not less than 30 days from the date the notice is given in accordance with Section 15 within which Borrower must pay all sums secured by this Security Instrument. If Borrower fails to pay these sums prior to the expiration of this period, Lender may invoke any remedies permitted by this Security Instrument without further notice or demand on Borrower.

WITNESS THE HAND(S) AND SEAL(S) OF THE UNDERSIGNED.

_____ _Lori Herda_ _____ (Seal)       _____ (Seal)
LORI HERDA                        -Borrower                                         -Borrower

_____ (Seal)       _____ (Seal)
                                  -Borrower                                         -Borrower

*[Sign Original Only]*

-5N (0207).01    CHL (10/04)                    Page 2 of 2                    Form 3200 1/01

Prepared by: JANELL HAAS

# TRUTH IN LENDING DISCLOSURE STATEMENT
### (THIS IS NEITHER A CONTRACT NOR A COMMITMENT TO LEND)

LENDER: COUNTRYWIDE HOME LOANS, INC.

4500 Park Granada
Calabasas, CA 91302-1613

☐ Preliminary   ☒ Final
DATE 05/03/2005

BORROWERS: LORI HERDA

LOAN 97135374
CASE NO.
Type of Loan CONV UNINSURED
Conf Fixed 30 Fast &
Easy Loan

ADDRESS        102 PARKER RANCH DRIVE
CITY STATE / ZIP HENDERSON, NV 89012
PROPERTY       6940 SURREY COURT
               LAS VEGAS, NV 89145

| ANNUAL PERCENTAGE RATE The cost of your credit as a yearly rate. | FINANCE CHARGE The dollar amount the credit will cost you. | Amount Financed The amount of credit provided to you or on your behalf. | Total of Payments The amount you will have paid after you have made all payments as scheduled. |
|---|---|---|---|
| 6.628 % | $ 260,737.73 | $ 199,680.80 | $ 460,418.53 |

PAYMENT SCHEDULE:

| NUMBER OF PAYMENTS | AMOUNT OF PAYMENTS | WHEN PAYMENTS ARE DUE |
|---|---|---|
| 359 | 1,278.93 | MONTHLY BEGINNING 07/01/2005 |
| 1 | 1,282.66 | LAST PAYMENT DUE   06/01/2035 |
| | | |
| | | |
| | | |
| | | |
| | | |
| | | |
| | | |
| | | |

DEMAND FEATURE:   ☒   This loan does not have a Demand Feature.   ☐   This loan has a Demand Feature as follows:

VARIABLE RATE FEATURE:
☐ This loan has a Variable Rate Feature. Variable Rate Disclosures have been provided to you earlier.

SECURITY: You are giving a security interest in the property located at:
6940 SURREY COURT, LAS VEGAS, NV 89145

ASSUMPTION: Someone buying this property   ☒ cannot assume the remaining balance due under original mortgage terms
☐ may assume, subject to lender's conditions, the remaining balance due under original mortgage terms.

PROPERTY INSURANCE: Hazard Insurance, including flood insurance if the property is in a Special Flood Hazard Area, is required as a condition of this loan. You may obtain the insurance coverage from any insurance company acceptable to the lender. Complete details concerning insurance requirements will be provided prior to loan closing.

LATE CHARGES: If your payment is more than 15    days late, you will be charged a late charge of        5.000 % of the
overdue payment

PREPAYMENT: If you pay off your loan early, you
☐ may    ☒ will not    have to pay a penalty.
☐ may    ☒ will not    be entitled to a refund of part of the finance charge.
See your contract documents for any additional information regarding non-payment, default, required repayment in full before scheduled date, and prepayment refunds and penalties.
e means estimate

I/We hereby acknowledge reading and receiving a complete copy of this disclosure.

Lori Herda                    5/13/05
BORROWER/DATE                              BORROWER/DATE
LORI HERDA

_____                _____
BORROWER/DATE                              BORROWER/DATE

FHA/VA/CONV
● Truth In Lending Disclosure
2C298-US (08/04)(d)

Page 1 of 2





Prepared by: JANELL HAAS

**COUNTRYWIDE HOME LOANS, INC.**

DATE:          05/03/2005
BORROWER:  LORI HERDA
CASE #:
LOAN #:       97135374
PROPERTY ADDRESS: 6940 SURREY COURT
                              LAS VEGAS, NV 89145

Branch #: 0000922
650 WHITE DRIVE, STE 280
LAS VEGAS, NV 89119
Phone: (702)386-7700
Br Fax No.: (877)510-2822

## ITEMIZATION OF AMOUNT FINANCED

| | | |
|---|---|---:|
| 1. | Loan Amount | 205,000.00 |
| 2. | Prepaid Finance Charges: | |
| | Origination Fee | 0.00 |
| | Discount Points | 0.00 |
| | Tax Service Fee | 60.00 |
| | Processing (Underwriting) | 0.00 |
| | Prepaid Interest ( 29 days) | |
| | of % per annum | 1,038.20 |
| | Mortgage Insurance Premium | 0.00 |
| | Mortgage Insurance Impounds | 0.00 |
| | Warehouse Fee | 0.00 |
| | VA Funding Fee | 0.00 |
| | FHA UFMIP | 0.00 |
| | Buydown | 0.00 |
| | Underwriting Fee | 625.00 |
| | Broker Origination Fee | 1,025.00 |
| | Broker Loan Fee | 650.00 |
| | Closing/Escrow | 1,500.00 |
| | Flood Check Fee | 26.00 |
| | Processing Fee | 395.00 |

| | | |
|---|---|---:|
| | **TOTAL** | 5,319.20 |
| 3. | Amount Financed (1 minus 2) | 199,680.80 |

I/We hereby acknowledge reading and receiving a completed copy of this disclosure.

*Lori Herda*                    05/13/05

Borrower                                              Date
LORI HERDA

_____        _____
Borrower                                              Date            Borrower                                              Date

_____        _____
Borrower                                              Date            Borrower                                              Date

FHA/VA/CONV
Itemization of Amount Financed - Reg Z
2C120-US (03/04)(d)





Prepared by: TARA CULLEN

# TRUTH IN LENDING DISCLOSURE STATEMENT
### (THIS IS NEITHER A CONTRACT NOR A COMMITMENT TO LEND)

LENDER: Countrywide Home Loans, Inc., itself or as agent for
Countrywide Bank, a Division of Treasury Bank, N.A.
4500 Park Granada
Calabasas, CA 91302-1613

BORROWERS: LORI HERDA

[X] Preliminary   [ ] Final
DATE 03/24/2005

LOAN   97135374
CASE NO.
Type of Loan CONV UNINSURED
Conf Fixed 30 Fast &
Easy Loan

ADDRESS        102 PARKER RANCH DR
CITY STATE / ZIP HENDERSON, NV 89012
PROPERTY       6940 SURREY CT
               LAS VEGAS, NV 89145

| ANNUAL PERCENTAGE RATE The cost of your credit as a yearly rate. | FINANCE CHARGE The dollar amount the credit will cost you. | Amount Financed The amount of credit provided to you or on your behalf. | Total of Payments The amount you will have paid after you have made all payments as scheduled. |
|---|---|---|---|
| e 6.728 % | $ e 266,246.98 | $ e 200,218.70 | $ e 466,465.68 |

PAYMENT SCHEDULE:

| NUMBER OF PAYMENTS | AMOUNT OF PAYMENTS | WHEN PAYMENTS ARE DUE |
|---|---|---|
| e 359 | e 1,295.74 | MONTHLY BEGINNING 05/01/2005 |
| e   1 | e 1,295.02 | LAST PAYMENT DUE   04/01/2035 |
|  |  |  |
|  |  |  |
|  |  |  |
|  |  |  |
|  |  |  |
|  |  |  |
|  |  |  |

DEMAND FEATURE:   [X]   This loan does not have a Demand Feature.   [ ]   This loan has a Demand Feature as follows:

VARIABLE RATE FEATURE:
[ ] This loan has a Variable Rate Feature. Variable Rate Disclosures have been provided to you earlier.

SECURITY: You are giving a security interest in the property located at:
6940 SURREY CT, LAS VEGAS, NV 89145

ASSUMPTION: Someone buying this property   [X] cannot assume the remaining balance due under original mortgage terms
[ ] may assume, subject to lender's conditions, the remaining balance due under original mortgage terms.

PROPERTY INSURANCE: Hazard Insurance, including flood insurance if the property is in a Special Flood Hazard Area, is required as a condition of this loan. You may obtain the insurance coverage from any insurance company acceptable to the lender. Complete details concerning insurance requirements will be provided prior to loan closing.

LATE CHARGES: If your payment is more than 15    days late, you will be charged a late charge of
overdue payment                                                                5.000 % of the

PREPAYMENT: If you pay off your loan early, you
[ ] may   [X] will not   have to pay a penalty.
[ ] may   [X] will not   be entitled to a refund of part of the finance charge.
See your contract documents for any additional information regarding non-payment, default, required repayment in full before scheduled date, and prepayment refunds and penalties.
e means estimate

I/We hereby acknowledge reading and receiving a complete copy of this disclosure.

_____   BORROWER/DATE   _____   BORROWER/DATE
LORI HERDA

_____   BORROWER/DATE   _____   BORROWER/DATE

FHA/VA/CONV
● Truth in Lending Disclosure
2C298-US (08/04)(d)                        Page 1 of 2





Prepared by: TARA CULLEN

**Countrywide Home Loans, Inc., itself or as agent for Countrywide Bank, a Division of Treasury Bank, N.A.**

DATE:          03/24/2005
BORROWER:  LORI HERDA
CASE #:
LOAN #:        97135374
PROPERTY ADDRESS: 6940 SURREY CT
                  LAS VEGAS, NV 89145

Branch #: 0000922
650 WHITE DRIVE, STE 280
LAS VEGAS, NV 89119
Phone: (702) 386-7700
Br Fax No.: (877) 510-2822

## ITEMIZATION OF AMOUNT FINANCED

| | | |
|---|---|---:|
| 1. | Loan Amount | 205,000.00 |
| 2. | Prepaid Finance Charges: | |
| | Origination Fee | 0.00 |
| | Discount Points | 0.00 |
| | Tax Service Fee | 60.00 |
| | Processing (Underwriting) | 0.00 |
| | Prepaid Interest ( __30__ days) | |
| | of % per annum | 1,095.30 |
| | Mortgage Insurance Premium | 0.00 |
| | Mortgage Insurance Impounds | 0.00 |
| | Warehouse Fee | 0.00 |
| | VA Funding Fee | 0.00 |
| | FHA UFMIP | 0.00 |
| | Buydown | 0.00 |
| | Underwriting Fee | 625.00 |
| | Broker Origination Fee | 2,050.00 |
| | Courier/Express Mail-Clsng | 30.00 |
| | Closing/Escrow | 500.00 |
| | Flood Check Fee | 26.00 |
| | Processing Fee | 395.00 |
| | **TOTAL** | 4,781.30 |
| 3. | Amount Financed (1 minus 2) | 200,218.70 |

I/We hereby acknowledge reading and receiving a completed copy of this disclosure.

| Borrower | Date | Borrower | Date |
|---|---|---|---|
| LORI HERDA | | | |

| Borrower | Date | Borrower | Date |
|---|---|---|---|

FHA/VA/CONV
Itemization of Amount Financed - Reg Z
2C120-US (03/04)(d)





| A. U.S. DEPARTMENT OF HOUSING AND URBAN DEVELOPMENT SETTLEMENT STATEMENT | B. TYPE OF LOAN | | | OMB No. 2502-0265 |
|---|---|---|---|---|
| | 1. [ ] FHA   2. [ ] FmHA   3. [X] Conv. Unins | | | |
| **Fidelity National Title Agency of Nevada** | 4. [ ] VA   5. [ ] Conv. Ins | | | |
| FINAL | 6. ESCROW NUMBER: 05-181703-LD | | | 7. LOAN NUMBER: 97135374 |
| | 8. MORTGAGE INSURANCE NUMBER: | | | |

NOTE:  THIS FORM IS FURNISHED TO GIVE YOU A STATEMENT OF THE ACTUAL SETTLEMENT COSTS. AMOUNTS PAID TO AND BY THE SETTLEMENT AGENT ARE SHOWN. ITEMS MARKED "(P.O.C.)" WERE PAID OUTSIDE OF THE CLOSING; THEY ARE SHOWN HERE FOR INFORMATIONAL PURPOSES AND ARE NOT INCLUDED IN THE TOTALS.

| D. NAME OF BORROWER: Lori Herda 8940 Surrey Court Las Vegas, NV 89145 | E. NAME OF SELLER: Joseph L. Mistretta and Laura Mistretta 1903 Holcomb Springs Rd Gold Hill, OR 97525 | F. NAME OF LENDER: Countrywide Home Loans, Inc. 650 White Dr., Ste 260 Las Vegas, NV 89119 |
|---|---|---|
| G. PROPERTY LOCATION: 8940 Surrey Court Las Vegas, NV 89145 | H. SETTLEMENT AGENT: Fidelity National Title Agency of Nevada PLACE OF SETTLEMENT: 2850 Horizon Ridge Pkwy., Suite 120 Henderson, NV 89052 | I. SETTLEMENT DATE: 05/25/2005 |

| J. SUMMARY OF BORROWER'S TRANSACTIONS | | K. SUMMARY OF SELLER'S TRANSACTIONS | |
|---|---|---|---|
| **100. GROSS AMOUNT DUE FROM BORROWER** | | **400. GROSS AMOUNT DUE TO SELLER** | |
| 101. Total Consideration | 301,500.00 | 401. Total Consideration | 301,500.00 |
| 102. Personal Property | | 402. Personal Property | |
| 103. Settlement charges to borrower (line 1400) | 5,193.66 | 403. | |
| 104. | | 404. Credit Seller @ Close | 1,000.00 |
| 105. | | 405. | |
| Adjustments: Items Paid by Seller in Advance | | Adjustments: Items Paid by Seller in Advance | |
| 106. City/Town Taxes | | 406. City/Town Taxes | |
| 107. PPD County Taxes fr 05/25/05 to 07/01/05 | 119.39 | 407. PPD County Taxes fr 05/25/05 to 07/01/05 | 119.39 |
| 108. Assessments | | 408. Assessments | |
| 109. Sewer District 05/25/05 to 12/01/05 | 99.39 | 409. Sewer District 05/25/05 to 12/01/05 | 99.39 |
| 110. | | 410. | |
| 111. | | 411. | |
| 112. | | 412. | |
| 113. | | 413. | |
| 114. | | 414. | |
| 115. | | 415. | |
| 116. | | 416. | |
| 117. | | 417. | |
| 118. | | 418. | |
| 120. GROSS AMOUNT DUE FROM BORROWER | 306,912.44 | 420. GROSS AMOUNT DUE TO SELLER | 302,718.78 |
| **200. AMOUNTS PAID BY OR IN BEHALF OF BORROWER** | | **500. REDUCTIONS IN AMOUNT DUE TO SELLER** | |
| 201. Deposit or earnest money | 102,317.99 | 501. Excess deposit (see inst.) | |
| 202. Principal Amount of New Loan(s) | 205,000.00 | 502. Settlement charges to seller (line 1400) | 18,925.94 |
| 203. Existing loan(s) taken subject to | | 503. Existing loan(s) taken subject to | |
| 204. | | 504. Payoff To CitiMortgage, Inc. | 56,216.51 |
| 205. | | 505. | |
| 206. | | 506. | |
| 207. | | 507. | |
| 208. | | 508. | |
| 209. | | 509. | |
| | | | |
| | | | |
| | | | |
| | | | |
| Adjustments: Items Unpaid by Seller | | Adjustments: Items Unpaid by Seller | |
| 210. City/Town taxes | | 510. City/Town Taxes | |
| 211. County Taxes | | 511. County Taxes | |
| 212. | | 512. Assessments | |
| 213. | | 513. | |
| 214. | | 514. | |
| 215. | | 515. | |
| 216. | | 516. | |
| 217. | | 517. | |
| 218. | | 518. | |
| 219. | | 519. | |
| 220. TOTAL PAID BY/FOR BORROWER | 307,317.99 | 520. TOTAL REDUCTIONS IN AMOUNT DUE SELLER | 75,142.45 |
| **300. CASH AT SETTLEMENT FROM/TO BORROWER** | | **600. CASH AT SETTLEMENT TO/FROM SELLER** | |
| 301. Gross amount due from borrower (line 120) | 306,912.44 | 601. Gross amount due to seller (line 420) | 302,718.78 |
| 302. Less amounts paid by/for borrower (line 220) | 307,317.99 | 602. Less reduction in amount due seller (ln 520) | 75,142.45 |
| 303. CASH ( FROM) (XX TO) BORROWER | 405.55 | 603. CASH ( FROM) (XX TO) SELLER | 227,576.33 |

RECEIVED

MAY 2 6 2005

Br 922
AMERICA'S WHOLESALE LENDER

610  097135374  D7  001   001

Initials _____    Initials _____

**L. SETTLEMENT STATEMENT**

Escrow: 05-181703-LD

| | PAID FROM BORROWER'S FUNDS AT SETTLEMENT | PAID FROM SELLER'S FUNDS AT SETTLEMENT |
|---|---|---|
| **700. TOTAL SALES/BROKER'S COMMISSION based on price $ @ % =** | | |
| Division of Commission (line 700) as follows: | | |
| 701. 6,030.00 - Prudential Americana | | |
| 702. 9,045.00 - Century 21 Aadvantage Gold | | |
| 703. Commission paid at settlement | | |
| 704. | | 15,075.00 |
| **800. ITEMS PAYABLE IN CONNECTION WITH LOAN** | | |
| 801. Loan Origination Fee Broker | | |
| 802. Loan Discount | 1,025.00 | |
| 803. Appraisal Fee | | |
| 804. Credit Report Alliance Mortgage | 18.00 | |
| 805. Lender's Inspection Fee | | |
| 806. Mortgage Insurance Application Fee | | |
| 807. Tax Service Fee Countrywide Tax Service | 60.00 | |
| 808. Loan Processing Fee Alliance Mortgage | 395.00 | |
| 809. Underwriting Fee Countrywide Home Loans, Inc. | 625.00 | |
| 810. Broker Loan Fee Alliance Mortgage | 650.00 | |
| 811. Yield Spread Premium Pd Broker by Lender 3.%-POC-$6150.00 | | |
| 812. Flood Certification Fee Landsafe | 26.00 | |
| 813. | | |
| 814. | | |
| **900. ITEMS REQUIRED BY LENDER TO BE PAID IN ADVANCE** | | |
| 901. Int @$35.80 /day 05/24/05 to 06/01/05 to Countrywide Home Loans, Inc. | 286.40 | |
| 902. Mortgage Insurance Premium | | |
| 903. Hazard Insurance Premium to State Farm Insurance | 748.00 | |
| 904. | | |
| 905. | | |
| **1000. RESERVES DEPOSITED WITH LENDER** | | |
| 1001. Insurance Impounds for 3 months @ $62.33 per month to Countrywide Home Loans, Inc. | 186.99 | |
| 1002. Mortgage Insurance   months @ $   per month | | |
| 1003. City Property Taxes   months @ $   per month | | |
| 1004. Tax Impounds for 3 months @ $100.64 per month to Countrywide Home Loans, Inc. | 301.92 | |
| 1005. Annual Assessments   months @ $   per month | | |
| 1006. | | |
| 1007. | | |
| 1008. Aggregate Adjustment | (162.95) | |
| **1100. TITLE CHARGES** | | |
| 1101. Settlement or closing fee to      Fidelity National Title Agency of Nevada | 345.00 | 345.00 |
| 1102. Abstract or Title Search | | |
| 1103. Title Examination | | |
| 1104. Title Insurance Binder | | |
| 1105. Document Preparation | | |
| 1106. Notary Fees | | |
| 1107. Sub Escrow Fee | | |
| 1108. Title Insurance      Fidelity National Title Agency of Nevada | 374.30 | 1,009.60 |
| 1109. Lender's coverage - ALTA Form Policy (10-17-92) with Form 1 Cov. $205,000.00 @ $374.30 | | |
| 1110. Owner's coverage SR.Disc.CLTA Standard Policy 1990 Form $301,500.00 @ $1,009.60 | | |
| 1111. Real Property Transfer Tax | | 1,537.65 |
| 1112. Recon Tracking Fee | | 35.00 |
| 1113. Express Mail | | 7.50 |
| 1114. Wire Fee | | 30.00 |
| 1115. | | |
| 1116. | | |
| **1200. GOVERNMENT RECORDING AND TRANSFER CHARGES** | | |
| 1201. Recording Fees:  Deed $ 20.00   Mortgage $80.00   Reconveyance(s) $30.00 | 80.00 | 40.00 |
| 1202. City/County tax/stamps: Deed $   Mortgage $ | | |
| 1203. State Tax/stamps:  Deed $ 0.00   Mortgage $ | | |
| 1204. Quitclaim Deed | | |
| 1205. | 30.00 | |
| **1300. ADDITIONAL SETTLEMENT CHARGES** | | |
| 1301. Survey | | |
| 1302. Pest Inspection to | | |
| 1303. AON Home Warranty Services, Inc for Home Protection Policy | | 500.00 |
| 1304. Century 21 Aadvantage Gold Warehousing Fee-$195.00 | | |
| 1305. City of Las Vegas bal 05 sewer fee | 195.00 | |
| 1306. Prudential Americana compliance fee | | 96.19 |
| 1307. | | 250.00 |
| 1308. | | |
| 1309. | | |
| 1310. | | |
| 1311. | | |
| 1400. TOTAL SETTLEMENT CHARGES (enter on lines 103, Section J and 502, Section K) | 5,193.66 | 18,925.94 |

Initials _____

Initials _____

Wednesday, May 25, 2005, 12:31

Escrow: 05-18-05-181709-LD

## ATTACHMENT TO RESPA

| | BUYER | SELLER |
|---|---|---|

**DEPOSITS TO ESCROW**
Lori Herda
Lori Herda                                            3,000.00
                                                      99,317.99

**PAYOFF CHARGES FOR CitiMortgage, Inc.**
Interest Fr. 04/26/05 To 05/31/05

Payoff to 4/27/05                                                303.10

                                                                55,913.41

**CHARGES FROM 800 SECTION**
The Lender is paying a Yield Spread Premium in the
amount of $6,150.00 to Alliance Mortgage, through
this escrow.

**CHARGES FROM 800 SECTION**
The Lender is paying a Yield Spread Premium in the
amount of $6,150.00 to Alliance Mortgage, through
this escrow.

I have carefully reviewed this Settlement Statement and to the best of my knowledge and belief, it is true and accurate statement of all receipts and disbursements made on my account or by me in this transaction. I further certify that I have received a copy of this Settlement Statement.

I hereby authorize the Settlement agent to make expenditures and disbursements as shown above and approve same for payment.

BORROWER(S):

Date: _____          _____

SELLER(S):

Date: _____          _____

I have caused or will cause the funds to be disbursed in accordance with the HUD-1 Statement which I have prepared.

Fidelity National Title Agency of Nevada

By: _____
    Escrow Officer                              Date: _____