WILDE & ASSOCIATES
Gregory L. Wilde, Esq.
Nevada Bar No. 004417
208 South Jones Boulevard
Las Vegas, Nevada 89107
Telephone: 702 258-8200
Fax: 702 258-8787
bk@wildelaw.com.

MARK S. BOSCO, ESQ.
Arizona Bar No. 010167
TIFFANY & BOSCO, P.A.
2525 East Camelback Road, Suite 300
Phoenix, Arizona 85016
Telephone: (602) 255-6000

BAC Home Loans Servicing, L.P. fka Countrywide Home Loans Servicing, L.P.
09-77956

# UNITED STATES BANKRUPTCY COURT

## DISTRICT OF NEVADA

| | |
|---|---|
| In Re: | BK-S-09-29326-bam |
| Joseph R. Esquivel, Jr. and Lori Esquivel. | Chapter 7 |
| Debtors. | Date: October 26, 2010<br>Time: 1:30 p.m. |

## RESPONSE TO DEBTOR'S OBJETION TO PROOF OF CLAIM

COMES NOW secured creditor, BAC HOME LOAN SERVICING, L.P. ("secured creditor"), by and through its attorney, Gregory L. Wilde of the law firm Wilde & Associates and hereby Responds, as Ordered by this court, in the form of a Response Objection to Claim. alleging as follows:

I.

1

## RELEVANT FACTS

1. On or about October May 3, 2005, debtor purchased the property commonly known as 6940 Surrey Court, Las Vegas, NV 89145. ("subject property") and legally described as:

> LOT 6 IN BLOCK 12 OF CHARLESTON RAINBOW UNIT 7B. AS SHOWN BY MAP THEREOF ON FILE IN BOOK 13 OF PLATS, PAGE 51 IN THE OFFICE OF THE ASSESSOR'S PARCEL NO: 138-34-610-006. *See* exhibit "1" attached hereto.

2. To enable debtor to purchase the subject property. debtor signed both a Note and Deed of Trust. *See* exhibit "2" attached hereto.

3. On or about October 14, 2009. debtor filed the instant action under chapter 7 of the bankruptcy Code.

4. Debtor was discharged on September 27, 2010.

5. On or about July 9, 2010, debtor filed its Opposition to secured creditor's motion to lift the automatic stay. (Hereinafter referred to as debtor's "Objection.") At the hearing on the Motion for Relief from the Automatic Stay. the court Ordered secured creditor to respond to debtors allegations contained in the Opposition that secured creditor lacks standing to request relief from the stay.

## II.

## LEGAL ANALYSIS

### A. REGARDLESS OF STANDING THE SUBJECT PROPERTY IS ENCUMBERED

*Debtor Agrees Subject Property is Encumbered*

At the outset, secured creditor requests that this court take notice of debtor's schedules. First, debtor's **Schedule A – Real Property** lists the subject property as debtor's residence. Additionally, debtor lists the property as subject to a security claim in the amount of

2

$278,578.00. *See* exhibit "3" attached hereto. Additionally, debtor's **Schedule D – Creditors Holding Secured Claims** lists the subject property as secured by creditors Bank of America, as holder of a "Second Deed of Trust," and Countrywide Home Lending as the creditor holding the "First Deed of Trust." *See* exhibit "4" attached hereto. Moreover, debtor does not list secured creditor on **Schedule F – Creditors Holding Unsecured Nonpriority Claims.** *See* exhibit "5" attached hereto. Finally, debtor's **Chapter 7 Individual Debtor's Statement of Intention** claims an intent to reaffirm the debt on the subject property. *See* exhibit "6" attached hereto.

Debtor states, "[d]ebtors do not have any documentation that Secured Creditor has any legal standing to collect this alleged debt or a portion thereof *in the past;* therefore, we may have paid them in error." Opp. at 3. Thus, debtor claims to be unaware that secured creditor has any connection with the loan, yet in the same sentence declares to have paid secured creditor, even though unaware of any connection to the subject property. Secured creditor questions how debtor came to pay secured creditor, as they contend, if they were in fact unaware of any assignment. This statement exposes debtor's true intention in this matter, to merely stall the legal rights of secured creditor, who fully performed on a contract. However, secured creditor merely requests this court take notice of the fact that debtor recognizes a debt is, in fact, owed on the subject property.

### *Secured Creditor's In Rem Rights Not Affected by Standing*

Debtor's Objection culminates in the following request for relief:

"Therefore, it is respectfully requested that the Court not grant Secured Creditor's Motion to Lift Stay in its entirety and that the Court change the Secured Creditors Status for BAC to a Unsecured Creditor Status for BAC in its entirety and its claim discharged as such with the other unsecured claims with Prejudice.
(2) That Credit report be corrected to show account paid in full and satisfactorily;
(3) That property be reconveyed eliminating any unproven claim or lien;
(4) That Public Record in Clark County be corrected."

3

Opp. at 6. ¶ 1. In essence, debtor requests that this court not only determine creditor's *in personum* rights, but also to extend its equitable arm and determine that the stipulated secured creditor, Countrywide, its successors or assigns' (from Schedules A & D) *in rem* rights are also extinguished. Even if this court agreed with debtor that secured creditor lacked standing, debtor has not provided any statute. law, Code section. or qualified treatise that supports such a request.

As this court is well aware, bankruptcy is an *in personum* action, determining what and how much of certain debts attach to a debtor, if at all. Therefore. though it is entirely proper for debtor to claim secured creditor does not have standing, such averment does not support debtor's remaining prayer. Even if the Note were determined as unenforceable due to the bankruptcy filing, which secured creditor disputes. such finding would not provide support for the additionally requested relief.[1] However, as the evidence herein shows, the subject property is encumbered by a Deed of Trust. Thus. even if the Note were determined unenforceable against debtor, such determination does not support an order that the debtor owns the house. that credit bureau's are to report the Note paid in full. and that the property is to be conveyed to the debtor, free of the Deed of Trust.

This is especially true in this case, as debtor has stipulated in both the Schedules and the Objection that there is a debt owed on the subject property. merely claiming to not know not to whom to pay. Yet. as the aforementioned Deed of Trust shows, the property is encumbered under the laws of the State of Nevada. In essence, debtor stipulates to owing Countrywide or its successor. but claims ignorance regarding the identity of such successor. Yet. given the admissible evidence herein, sufficient evidence exists for this court to determine the existence of

---

[1] Secured creditor recognizes that the Code does provide that when a secured creditor's collateral, in limited circumstances, has declined in value, this court is authorized by the Code to reduce such secured creditor's *in rem* rights to the value of the collateral. *See, e.g.* 11 U.S.C. § 506.

4

a security interest on the subject property. Thus, even if the secured creditor before this court is determined to lack standing, such determination does not remove the *in rem* rights of Countrywide or its successor in interest.

Debtor seeks to have the secured creditor barred from making a claim, under title of an Objection to Claim, and also requests that this court strip the *in rem* rights of the true claimiant, not present, and additionally wishes to have this court state the creditor before it has an unsecured debt. Yet, what "debt" is unsecured the debtor has not defined. The debtor cannot have it both ways. Either the creditor is owed on a Note regarding the subject property or the secured creditor is not the property party holding the debt and thus, cannot be determined to be unsecured. To be unsecured in a non-existent debt requires no Order from this court.

Therefore, having stipulated to owing a debt and claiming BAC lacks standing as not the true party in interest, debtor must seek an alternative avenue to determine the security interest. The alternative avenue is found in Rule 7001 of the Fed. R. Bankr. P. wherein it states, Rule 7001 states, in part, "[a]n adversary proceeding . . . is a proceeding . . . (2) to determine the validity, priority, or extent of a lien or other interest in property. . .or . . . (6) determine the dischargeability of a debt." Fed. R. Bankr. P. § 7001.

Thus, debtor having stipulated to owing on a Note and Deed of Trust, but and now wishing to determine the dischargeability and the extent of the lien, must rely on an adversary proceeding to do so.

III.

## SUBSTANTIVE LAW DETERMINES STANDING

### *New Jersey and California Law not Relevant*

Citing New Jersey statutes. such as N.J.S. 12A:3-104 and the "New Jersey Practice Series." debtor claims "no part payments should be made on the bond or not unless the person to whom payment is made is able to produce the bond or note and the part payments are endorsed thereon." Opp. at 2. Further, debtor avers that "under California law, to perfect the transfer of mortgage paper as collateral the owner should physically deliver the note to the transferee." Moreover, debtor pin-points certan citations in the California Civil Code. California Commerce Code, and New Jersey Uniform Commercial Code as if applicable and binding yet fails to explain how such law is relevant and persuasive in this case. Opp. at 4.

### *Nevada Substantive Law Determines Rights*

Debtor attached, as exhibit "1" to its Objection an article from ABI. dated April 3. 2009. Therein. the article relies extensively on the holding of the California bankruptcy case *In re Hwang*. 2008 WL 4899273 (Bankr. C.D. Cal.. Sept. 24 & Oct 29, 2008). However, debtor failed to recognize that this case, used to support a majority of the findings in that article, was expressly overturned in *In re Hwang,* CV 08-7871-PSG. 2010 WL 3422718 (C.D. Cal. July 21, 2010). Therein, the federal court held that under Rule 17, the real party in interest "is the party with the right to enforce a claim under the applicable substantive law." *Hwang* at 2.

The holding of the federal district court is followed almost universally in bankruptcy courts as well. *U-Haul Int'l, Inc. v. Jartran, Inc.* 793 F.2d 1034, 1038 (9th Cir. 1986). (to determine whether the real party in interest the court must look to the substantive law that governs the case) (citing *McNeil Construction Co. v. Livingston State Bank*, 300 F.2d 88. 90 & n. 5 (9th Cir.1962): 3A Moore's Federal Practice ¶ 17.02, at 17-65: 6 Wright & Miller § 1541. at

6

635). *See , e.g. In re Wilhelm*, 407 B.R. 392 (Bankr. D. Id., 2009) (movants must show they have an interest in the relevant note); *In re Jacobson*, 402 B.R. 359 (Bankr. W.D. Wash., 2009) (the real party in interest is a party entitled to enforce the right being asserted under applicable law); *In re Hill*, 08-bk-16161-EWH, 2009 WL 1956174 at 2 (Bankr. D. Ariz., July 6, 2009) (Therefore, for Chase Finance to be the "real party in interest", it must have the right to enforce the Note under Arizona law).

This accepted law is followed in this district as well, "a party in interest is any party to whom the relevant substantive law grants a cause of action." *In re Mitchell*, 2009, BK-S-07-16226-LBR, WL 1044368 at 9 (Bankr. D. Nev. Mar. 3, 2009). Therefore, in this case, the substantive law is that of Nevada, not New Jersey or California, though such law, if comparable may be persuasive. For instance, In *Hwang*, under California law, the holder of a note, "regardless of whether the holder is the owner of the note or is in wrongful possession of the note" has the right to enforce the note. *Hwang* at 3. The court based it's holding on California's version of UCC 3-301. Nevada's version of 3-301, though styled differently, is the same:

> **California Commercial Code § 3301.**
> "Person entitled to enforce" an instrument means (a) the holder of the instrument, (b) a nonholder in possession of the instrument who has the rights of a holder, or (c) a person not in possession of the instrument who is entitled to enforce the instrument pursuant to Section 3309 or subdivision (d) of Section 3418. A person may be a person entitled to enforce the instrument even though the person is not the owner of the instrument or is in wrongful possession of the instrument.
>
> **NRS 104.3301  Person entitled to enforce instrument.**
>     1. "Person entitled to enforce" an instrument means:
>     (a) The holder of the instrument;
>     (b) A nonholder in possession of the instrument who has the rights of a holder; or
>     (c) A person not in possession of the instrument who is entitled to enforce the instrument
>         pursuant to
>         NRS 104.3309 or subsection 4 of NRS 104.3418.
>     2. A person may be a person entitled to enforce the instrument even though the person is not the owner of the instrument or is in wrongful possession of the instrument.

Thus, the court in *Hwang* concluded the secured creditor, who physically held the note was the party with the right to enforce a claim on the note. Secured creditor, therefore, will provide for this court and debtor, a notarized copy of the original note at the hearing. Upon such a showing, secured creditor has standing.

**_Bearer Paper_**

Furthermore, under NRS 104.3201 and NRS 104.1201(2)(e) & (u), a Note under Nevada law is enforceable by the bearer, when endorsed in blank. *See In re Hill*, 08-bk-16161-EWH. 2009 WL 1956174 at 2 (Bankr. D. Ariz.,July 6, 2009) (because the endorsement does not identify whom the Note is payable, it is endorsed in blank and when transferred, the transferee becomes the holder simply by possession.). Thus, the holder of a Note, in blank, or the party endorsed to of a Note hold enforceable rights under state law. Here, the Note in question is endorsed in blank and as such, is bearer paper and enforceable by the holder. BAC.

**_Debtor Has Not Shown Bundled Securitized Debt_**

Though secured creditor will produce a notarized copy of the original note with a Declaration, debtor has not made a sufficient case showing that this note has been "securitized" or "bundled," merely claiming such. Opp. at 5. Debtor has made an argument similar to that argument in *Hwang,* states that "the note has been bundled with other notes and sold as mortgage-backed securities or otherwise assigned and split from the Trust Deed" and therefore becoming unsecured. Oppo. at 5. This contention was expressly addressed in *Hwang* and the case was in part overturned because the bankruptcy court agreed with debtor's determination of such securitization, yet without debtor providing any proof, rather speculating such was the case due to its prevalence in the industry. There, the court expressly stated that since the Note was bearer paper, the argument had no merit. *Hwang* at 3.

8

Therefore, debtor's contention that the Note is securitized is conclusory, unsupported by evidentiary material, and fails regardless when faced with a secured creditor bearing a Note.

# III.

# ALTERNATIVE RULE 17 STANDING

## *Ratification*

Alternatively, FRCP 17 provides that even if the moving party is not the real party in interest, such party may still validly proceed when the real party in interest "ratifies" the action. The purpose of Rule 17 was to ensure that the rights of a party would not be twice put in jeopardy. As stated by the committee:

> The provision that no action shall be dismissed on the ground that it is not prosecuted in the name of the real party in interest until a reasonable time has been allowed, after the objection has been raised, for ratification, substitution, etc., is added simply in the interests of justice. In its origin the rule concerning the real party in interest was permissive in purpose: it was designed to allow an assignee to sue in his own name. That having been accomplished, the modern function of the rule in its negative aspect is simply to protect the defendant against a subsequent action by the party actually entitled to recover, and to insure generally that the judgment will have its proper effect as res judicata.

Notes of Advisory Committee on Rules, Fed. R. Civ. P. 17, 1966. That is, in this context, Rule 17 operates to ensure that debtors are not held to owe on the same Note by two separate parties. Therefore, if the real party in interest is known and thereafter ratifies the action, the proceeding may continue.

In *Rockwell,* the court stated, [r]atification, though rare, is an entirely proper method of resolving controversies over real parties in interest." *Rockwell Intn'l Corp. v. Clarkson Co. Ltd.,* 441 F.Supp. 792, 797 (N.D. Ca., Dec. 6 1977). In that case, the court sought and received letters from each bank permitting the action to proceed as if it had been commenced in their names, and consenting to be bound by the outcome and open to all discovery requests. *Id.* Such ratification

9

was determined proper and would provide the *res judicata* effect sought by the passage of Rule 17.

Thus, if this court determines that secured creditor lacks standing, it requests a limited amount of time, under Fed. R. Civ. P. 17(a)(3) to provide such letters of ratification.

## *Agency*

Under Fed. R. Civ. P. 17, there are two ways in which a secured creditor can be determined the real party in interest as an agent. First, as an actual express agent for the principal. This was recognized in *In re Mitchell*. *See In re Mitchell* at 9. Therein, this court determined that if the principal can show that it could enforce the Note, than the agent likely meets the threshold for standing under Rule 17. Second, as recognized in *Lubbock*, an agency relationship is strong enough for the movant to be the real party in interest when the agency relationship creates a right for reimbursement for advances regarding the subject services, such agent becomes the beneficial owner of the chose in action due to that right for payment based upon the services provided. *Lubbock Feed Lots, Inc. v. Iowa Beef Processors, Inc.,* 630 F.2d 250, 258-59 (5th Cir. 1980). Here, BAC as servicer of the Note in question has acquired such an assignment in the chose of action.

Therefore, BAC has gained "real party in interest" status as the beneficial owner of the chose in action to foreclose, under the substantive law of Nevada. Therefore, as owner of the chose in action in Nevada, BAC has standing in this court.

# IV.

## CONCLUSION

This court has determined to treat debtors Opposition as an Objection to proof of claim as a contested matter. However, debtor has failed to provide any admissible evidence that there is no debt owed. In truth, debtor has expressly stated that a debt is owed on the subject property and only contends that the secured creditor here, is not the proper party to pay, and as such, should be given a free home. Having made no attempt to provide adequate protection payments, while declaring throughout this proceeding that debtor intends to reaffirm the debt, waiting until after discharge to raise a standing issue, debtor has acted inequitably.

Recently, some bankruptcy courts, due to the number of claim regarding standing that are now being raised, are forced to determine a means for fretting out those who, with clean hands, raise colorable issues regarding the secured status of a Note or Deed from the smoke-screens that bad-faith debtors raise. Therein the *Aniel* court stated "if Debtors wish to maintain the status quo pending resolution of matters that require more plenary proceedings than relief from stay motions, the conventional way to do so is to make adequate protection payments in the meantime. *In re Aniel*, 427 B.R. 811, 816 (Bankr. N.D. Ca. 2010). The point is made solely to remind this court that for a movant to invoke the equitable powers of this court, they must arrive with clean hands. Equity requires equity. As stated above, debtor has failed to make any efforts to make adequate protection payments. Even if such party was unknown, debtor should have offered to the Trustee the payments to be held until this matter could be concluded. Instead, debtor admits to owing on the house and then requests this court to strip such rights as against all claimants, including Countrywide and its successor in interest; not just this secured creditor. Such request is not equitable, and therefore, debtors should not afforded access to the equitable powers of this court.

WHEREFORE, secured creditor requests that this court:

1. Deny each and every claim for relief request by debtor;

2. Declare secured creditor as the secured interest-holder in the subject property; and

3. Any and all other remedies this court determines just and equitable.

DATED this 19th19th day of October, 2010.

WILDE & ASSOCIATES

By: /s/Gregory L. Wilde, Esq  12040
GREGORY L. WILDE. ESQ.
Attorney for Secured Creditor
212 South Jones Boulevard
Las Vegas, Nevada 89107

12

# Exhibit "1"

```
20050525-0003790
```

RECORDING REQUESTED BY:
Fidelity National Title Agency of Nevada
Escrow No. 05-181703-LD
Title Order No. 00181703

When Recorded Mail Document
and Tax Statement To:
Ms. Lori Herda
6940 Surrey Court
Las Vegas, NV 89145

RPTT: ~~1,555.50~~ /537.65
APN: 138-34-610-006

Fee: $17.00    RPTT $1,537.65
N/C Fee:  $0.00

05/25/2005          14:16:26
T20050097576
Requestor:
  FIDELITY NATIONAL TITLE

Frances Deane              SUO
Clark County Recorder    Pgs. 4

(4)

## GRANT, BARGAIN, SALE DEED

THIS INDENTURE WITNESSETH:  That **Joseph L. Mistretta and Laura Mistretta, husband and wife as Joint Tenants**

FOR A VALUABLE CONSIDERATION, receipt of which is hereby acknowledged, do(es) hereby Grant, Bargain, Sell and

Convey to **Lori Herda, A Single Woman** a married woman as her sole and separate property,

all that real property situated in the Clark County, State of Nevada, bounded and described as follows:

SEE EXHIBIT ONE ATTACHED HERETO AND MADE A PART HEREOF

SUBJECT TO: 1.    Taxes for the fiscal year 2005-2006
            2.    Covenants, Conditions, Reservations, Rights, Rights of Way and Easements
                  now of record.

Together with all and singular tenements, hereditaments and appurtenances thereunto belonging or in anywise appertaining.

DATED:  May 3, 2005

STATE OF NEVADA
COUNTY OF ___CLARK___

This instrument was acknowledged before me
on ___5-12-05___
by ___JOSEPH L. MISTRETTA___
___& LAURA MISTRETTA___
Signature _____
MARY LYNN WHEAT        Notary Public
My Commission Expires: ___9-16-08___

_____
Joseph L. Mistretta

_____
Laura Mistretta

MARY LYNN WHEAT
Notary Public State of Nevada
No. 04-94668-1
My appt. exp. September 6, 2008

## EXHIBIT "ONE"

Lot 6 in Block 12 of Charleston Rainbow Unit 7B, as shown by map thereof on file in Book 13 of Plats, Page 51 in the Office of the County Recorder of Clark County, Nevada.

Assessor's Parcel No: 138-34-610-006

# STATE OF NEVADA
# DECLARATION OF VALUE

1. Assessor Parcel Number(s)
   a) 138-34-610-006
   b) _____
   c) _____
   d) _____

2. Type of Property:
   a) ☐ Vacant Land      b) ☒ Single Fam. Res.
   c) ☐ Condo/Twnhse     d) ☐ 2 - 4 Plex
   e) ☐ Apt. Bldg.       f) ☐ Comm'l/Ind'l
   g) ☐ Agricultural     h) ☐ Mobile Home
      ☐ Other _____

   | FOR RECORDER'S OPTIONAL USE ONLY |
   | --- |
   | Document/Instrument #: _____ |
   | Book:_____ Page:_____ |
   | Date of Recording:_____ |
   | Notes:_____ |

3. Total Value/Sales Price of the Property                    $ ~~305,000.00~~  301,500.00
   Deed in Lieu of Foreclosure Only (Value of Property) (                            )
   Transfer Tax Value:                                        $ ~~305,000.00~~  301,500.00
   Real Property Transfer Tax Due                             $ ~~1,555.60~~  1537.65

4. **If Exemption Claimed:**
   a.  Transfer Tax Exemption per NRS 375.090. Section _0_
   b.  Explain Reason for Exemption: _____

5. Partial Interest: Percentage being transferred: 100%

   The undersigned declares and acknowledges, under penalty of perjury, pursuant to NRS 375.060 and NRS 375.110, that the information provided is correct to the best of their information and belief, and can be supported by documentation if called upon to substantiate the information provided herein.  Furthermore, the parties agree that disallowance of any claimed exemption, or other determination of additional tax due, may result in a penalty of 10% of the tax due plus interest at 1% per month. Pursuant to NRS 375.030, the Buyer and Seller shall be jointly and severally liable for any additional amount owed.

Signature _Joseph L. Mistretta_            Capacity  SELLER

Signature _____            Capacity _____

| **SELLER (GRANTOR) INFORMATION** (REQUIRED) | **BUYER (GRANTEE) INFORMATION** (REQUIRED) |
| --- | --- |
| Print Name:  Joseph L. Mistretta and Laura Mistretta | Print Name:  Lori Herda |
| Address:  6940 Surrey Court  City, State, Zip: Las Vegas, NV 89145 | Address:  102 Parker Ranch Dr.  City, State, Zip: Henderson, NV 89012 |

**COMPANY/PERSON REQUESTING RECORDING (required if not seller or buyer)**
Print Name: Fidelity National Title Agency of Nevada     Escrow #: 05-181703-LD
Address: 2850 Horizon Ridge Pkwy., Suite 120
City, State and Zip: Henderson, NV  89052
        (AS A PUBLIC RECORD THIS FORM MAY BE RECORDED/MICROFILMED)



STATE OF NEVADA
DECLARATION OF VALUE FORM

1. Assessor Parcel Number(s)
   a) __138-34-610-006__
   b) _____
   c) _____
   d) _____

2. Type of Property:
   a) ☐ Vacant Land       b) ☒ Single Fam. Res.
   c) ☐ Condo/Twnhse      d) ☐ 2-4 Plex
   e) ☐ Apt. Bldg         f) ☐ Comm'l/Ind'l
   g) ☐ Agricultural      h) ☐ Mobile Home
      ☐ Other _____

   FOR RECORDER'S OPTIONAL USE ONLY
   Book:_____ Page:_____
   Date of Recording:_____
   Notes:

3. Total Value/Sales Price of Property              $ _301,500.00_
   Deed in Lieu of Foreclosure Only (value of property)  (_____)
   Transfer Tax Value:                             $ _301,500.00_
   Real Property Transfer Tax Due                  $ _1537.65_

4. If Exemption Claimed:
   a. Transfer Tax Exemption per NRS 375.090, Section _____
   b. Explain Reason for Exemption:_____

5. Partial Interest: Percentage being transferred: __100_%
       The undersigned declares and acknowledges, under penalty of perjury, pursuant to
   NRS 375.060 and NRS 375.110, that the information provided is correct to the best of their
   information and belief, and can be supported by documentation if called upon to substantiate the
   information provided herein. Furthermore, the parties agree that disallowance of any claimed
   exemption, or other determination of additional tax due, may result in a penalty of 10% of the tax
   due plus interest at 1% per month. Pursuant to NRS 375.030, the Buyer and Seller shall be
   jointly and severally liable for any additional amount owed.

Signature_____    Capacity _____

Signature _Lori Uerda_____      Capacity _GRANTEE_

| SELLER (GRANTOR) INFORMATION (REQUIRED) | BUYER (GRANTEE) INFORMATION (REQUIRED) |
|---|---|
| Print Name: JOSEPH L. MISTRETTA | Print Name: LORI UERDA |
| Address: 6940 SURREY COURT | Address: 102 PARKER RANCH DR. |
| City: LAS VEGAS | City: HENDERSON |
| State: NV  Zip: 89145 | State: NV  Zip: 89012 |

COMPANY/PERSON REQUESTING RECORDING (required if not seller or buyer)
Print Name: FIDELITY NATIONAL TITLE   Escrow #: 05-181703-LD
Address: 2810 W. HORIZON RIDGE PKWY #120
City: HENDERSON                State: NV   Zip: 89052
       AN ADDITIONAL RECORDING FEE OF $1.00 WILL APPLY FOR EACH DECLARATION
       OF VALUE FORM PRESENTED TO CLARK COUNTY, EFFECTIVE JUNE 1, 2004.

# Exhibit "2"

20050525-0003792

Assessor's Parcel Number:
13834610006
After Recording Return To:
COUNTRYWIDE HOME LOANS, INC.

MS SV-79 DOCUMENT PROCESSING
P.O.Box 10423
Van Nuys, CA 91410-0423
Prepared By:
JANELL HAAS
~~Recording Requested By~~:
K. POCHY

COUNTRYWIDE HOME LOANS, INC.

650 WHITE DRIVE, STE 280
LAS VEGAS
NV 89119

Fee: $29.00
N/C Fee: $0.00

05/25/2005                14:16:26
T20050097576
Requestor:
FIDELITY NATIONAL TITLE

Frances Deane                SUO
Clark County Recorder        Pgs: 16

─────[Space Above This Line For Recording Data]─────  '81703-LD

0518181703                0009713537405005
[Escrow/Closing #]            [Doc ID #]

## DEED OF TRUST
MIN 1000157-0005020090-2

DEFINITIONS
Words used in multiple sections of this document are defined below and other words are defined in Sections 3,
11, 13, 18, 20 and 21. Certain rules regarding the usage of words used in this document are also provided in
Section 16.
(A) "Security Instrument" means this document, which is dated   MAY 03, 2005
together with all Riders to this document.

NEVADA-Single Family- Fannie Mae/Freddie Mac UNIFORM INSTRUMENT WITH MERS

                              Page 1 of 16                    Initials: ____
-6A(NV) (0307) CHL (07/03)(d)
                    VMP Mortgage Solutions - (800)521-7291      Form 3029 1/01





DOC ID #: 0009713537405005

**(B)** "Borrower" is
LORI HERDA, A MARRIED WOMAN AS HER SOLE AND SEPARATE PROPERTY

Borrower is the trustor under this Security Instrument.
**(C)** "Lender" is
COUNTRYWIDE HOME LOANS, INC.

Lender is a
CORPORATION

organized and existing under the laws of  NEW  YORK                        . Lender's address is
P.O. Box 10219
Van Nuys, CA 91410-0219
**(D)** "Trustee" is
CTC REAL ESTATE SERVICES

400 COUNTRYWIDE WAY, MSN SV-88, SIMI VALLEY, CA 93065 , ,

**(E)** "MERS" is Mortgage Electronic Registration Systems, Inc. MERS is a separate corporation that is acting
solely as a nominee for Lender and Lender's successors and assigns. **MERS is the beneficiary under this
Security Instrument.** MERS is organized and existing under the laws of Delaware, and has an address and
telephone number of P.O. Box 2026, Flint, MI 48501-2026, tel. (888) 679-MERS.
**(F)** "Note" means the promissory note signed by Borrower and dated   MAY 03, 2005                  .
The Note states that Borrower owes Lender
TWO HUNDRED FIVE THOUSAND and 00/100

Dollars (U.S. $ 205,000.00        ) plus interest. Borrower has promised to pay this debt in regular
Periodic Payments and to pay the debt in full not later than    JUNE 01, 2035                .
**(G)** "Property" means the property that is described below under the heading "Transfer of Rights in the
Property."
**(H)** "Loan" means the debt evidenced by the Note, plus interest, any prepayment charges and late charges
due under the Note, and all sums due under this Security Instrument, plus interest.
**(I)** "Riders" means all Riders to this Security Instrument that are executed by Borrower. The following
Riders are to be executed by Borrower [check box as applicable]:

☐ Adjustable Rate Rider ☐ Condominium Rider ☐ Second Home Rider
☐ Balloon Rider ☐ Planned Unit Development Rider ☐ 1-4 Family Rider
☐ VA Rider ☐ Biweekly Payment Rider ☐ Other(s) [specify]

**(J)** "Applicable Law" means all controlling applicable federal, state and local statutes, regulations,
ordinances and administrative rules and orders (that have the effect of law) as well as all applicable final,
non-appealable judicial opinions.

Initials: _X·li_

**-6A(NV)** (0307)  CHL (07/03)          Page 2 of 16                    **Form 3029 1/01**

DOC ID #: 0009713537405005

(K) "Community Association Dues, Fees, and Assessments" means all dues, fees, assessments and other charges that are imposed on Borrower or the Property by a condominium association, homeowners association or similar organization.

(L) "Electronic Funds Transfer" means any transfer of funds, other than a transaction originated by check, draft, or similar paper instrument, which is initiated through an electronic terminal, telephonic instrument, computer, or magnetic tape so as to order, instruct, or authorize a financial institution to debit or credit an account. Such term includes, but is not limited to, point-of-sale transfers, automated teller machine transactions, transfers initiated by telephone, wire transfers, and automated clearinghouse transfers.

(M) "Escrow Items" means those items that are described in Section 3.

(N) "Miscellaneous Proceeds" means any compensation, settlement, award of damages, or proceeds paid by any third party (other than insurance proceeds paid under the coverages described in Section 5) for: (i) damage to, or destruction of, the Property; (ii) condemnation or other taking of all or any part of the Property; (iii) conveyance in lieu of condemnation; or (iv) misrepresentations of, or omissions as to, the value and/or condition of the Property.

(O) "Mortgage Insurance" means insurance protecting Lender against the nonpayment of, or default on, the Loan.

(P) "Periodic Payment" means the regularly scheduled amount due for (i) principal and interest under the Note, plus (ii) any amounts under Section 3 of this Security Instrument.

(Q) "RESPA" means the Real Estate Settlement Procedures Act (12 U.S.C. Section 2601 et seq.) and its implementing regulation, Regulation X (24 C.F.R. Part 3500), as they might be amended from time to time, or any additional or successor legislation or regulation that governs the same subject matter. As used in this Security Instrument, "RESPA" refers to all requirements and restrictions that are imposed in regard to a "federally related mortgage loan" even if the Loan does not qualify as a "federally related mortgage loan" under RESPA.

(R) "Successor in Interest of Borrower" means any party that has taken title to the Property, whether or not that party has assumed Borrower's obligations under the Note and/or this Security Instrument.

TRANSFER OF RIGHTS IN THE PROPERTY

The beneficiary of this Security Instrument is MERS (solely as nominee for Lender and Lender's successors and assigns) and the successors and assigns of MERS. This Security Instrument secures to Lender: (i) the repayment of the Loan, and all renewals, extensions and modifications of the Note; and (ii) the performance of Borrower's covenants and agreements under this Security Instrument and the Note. For this purpose, Borrower

Initials: _____
Form 3029  1/01

DOC ID #: 0009713537405005

irrevocably grants and conveys to Trustee, in trust, with power of sale, the following described property
located in the COUNTY                                                    of
[Type of Recording Jurisdiction]

CLARK                                                   :
[Name of Recording Jurisdiction]
LOT 6 IN BLOCK 12 OF CHARLESTON RAINBOW UNIT 7B, AS SHOWN BY
MAP THEREOF ON FILE IN BOOK 13 OF PLATS, PAGE 51 IN THE
OFFICE OF THE COUNTY RECORDER OF CLARK COUNTY, NEVADA.
ASSESSOR'S PARCEL NO: 138-34-610-006

which currently has the address of
6940 SURREY COURT, LAS VEGAS

[Street/City]
Nevada    89145    ("Property Address"):
[Zip Code]

TOGETHER WITH all the improvements now or hereafter erected on the property, and all easements,
appurtenances, and fixtures now or hereafter a part of the property. All replacements and additions shall also
be covered by this Security Instrument. All of the foregoing is referred to in this Security Instrument as the
"Property." Borrower understands and agrees that MERS holds only legal title to the interests granted by
Borrower in this Security Instrument, but, if necessary to comply with law or custom, MERS (as nominee for
Lender and Lender's successors and assigns) has the right: to exercise any or all of those interests, including,
but not limited to, the right to foreclose and sell the Property; and to take any action required of Lender
including, but not limited to, releasing and canceling this Security Instrument.

BORROWER COVENANTS that Borrower is lawfully seised of the estate hereby conveyed and has the
right to grant and convey the Property and that the Property is unencumbered, except for encumbrances of
record. Borrower warrants and will defend generally the title to the Property against all claims and demands,
subject to any encumbrances of record.

Initials: ＿＿＿

VMP -6A(NV) (0307)  CHL (07/03)          Page 4 of 16          Form 3029 1/01

DOC ID #: 0009713537405005

THIS SECURITY INSTRUMENT combines uniform covenants for national use and non-uniform covenants with limited variations by jurisdiction to constitute a uniform security instrument covering real property.

UNIFORM COVENANTS. Borrower and Lender covenant and agree as follows:

**1. Payment of Principal, Interest, Escrow Items, Prepayment Charges, and Late Charges.** Borrower shall pay when due the principal of, and interest on, the debt evidenced by the Note and any prepayment charges and late charges due under the Note. Borrower shall also pay funds for Escrow Items pursuant to Section 3. Payments due under the Note and this Security Instrument shall be made in U.S. currency. However, if any check or other instrument received by Lender as payment under the Note or this Security Instrument is returned to Lender unpaid, Lender may require that any or all subsequent payments due under the Note and this Security Instrument be made in one or more of the following forms, as selected by Lender: (a) cash; (b) money order; (c) certified check, bank check, treasurer's check or cashier's check, provided any such check is drawn upon an institution whose deposits are insured by a federal agency, instrumentality, or entity; or (d) Electronic Funds Transfer.

Payments are deemed received by Lender when received at the location designated in the Note or at such other location as may be designated by Lender in accordance with the notice provisions in Section 15. Lender may return any payment or partial payment if the payment or partial payments are insufficient to bring the Loan current. Lender may accept any payment or partial payment insufficient to bring the Loan current, without waiver of any rights hereunder or prejudice to its rights to refuse such payment or partial payments in the future, but Lender is not obligated to apply such payments at the time such payments are accepted. If each Periodic Payment is applied as of its scheduled due date, then Lender need not pay interest on unapplied funds. Lender may hold such unapplied funds until Borrower makes payment to bring the Loan current. If Borrower does not do so within a reasonable period of time, Lender shall either apply such funds or return them to Borrower. If not applied earlier, such funds will be applied to the outstanding principal balance under the Note immediately prior to foreclosure. No offset or claim which Borrower might have now or in the future against Lender shall relieve Borrower from making payments due under the Note and this Security Instrument or performing the covenants and agreements secured by this Security Instrument.

**2. Application of Payments or Proceeds.** Except as otherwise described in this Section 2, all payments accepted and applied by Lender shall be applied in the following order of priority: (a) interest due under the Note; (b) principal due under the Note; (c) amounts due under Section 3. Such payments shall be applied to each Periodic Payment in the order in which it became due. Any remaining amounts shall be applied first to late charges, second to any other amounts due under this Security Instrument, and then to reduce the principal balance of the Note.

If Lender receives a payment from Borrower for a delinquent Periodic Payment which includes a sufficient amount to pay any late charge due, the payment may be applied to the delinquent payment and the late charge. If more than one Periodic Payment is outstanding, Lender may apply any payment received from Borrower to the repayment of the Periodic Payments if, and to the extent that, each payment can be paid in full. To the extent that any excess exists after the payment is applied to the full payment of one or more Periodic Payments, such excess may be applied to any late charges due. Voluntary prepayments shall be applied first to any prepayment charges and then as described in the Note.

Any application of payments, insurance proceeds, or Miscellaneous Proceeds to principal due under the Note shall not extend or postpone the due date, or change the amount, of the Periodic Payments.

**3. Funds for Escrow Items.** Borrower shall pay to Lender on the day Periodic Payments are due under the Note, until the Note is paid in full, a sum (the "Funds") to provide for payment of amounts due for: (a) taxes and assessments and other items which can attain priority over this Security Instrument as a lien or encumbrance on the Property; (b) leasehold payments or ground rents on the Property, if any; (c) premiums

DOC ID #: 0009713537405005

any and all insurance required by Lender under Section 5; and (d) Mortgage Insurance premiums, if any, or any sums payable by Borrower to Lender in lieu of the payment of Mortgage Insurance premiums in accordance with the provisions of Section 10. These items are called "Escrow Items." At origination or at any time during the term of the Loan, Lender may require that Community Association Dues, Fees, and Assessments, if any, be escrowed by Borrower, and such dues, fees and assessments shall be an Escrow Item. Borrower shall promptly furnish to Lender all notices of amounts to be paid under this Section. Borrower shall pay Lender the Funds for Escrow Items unless Lender waives Borrower's obligation to pay the Funds for any or all Escrow Items. Lender may waive Borrower's obligation to pay to Lender Funds for any or all Escrow Items at any time. Any such waiver may only be in writing. In the event of such waiver, Borrower shall pay directly, when and where payable, the amounts due for any Escrow Items for which payment of Funds has been waived by Lender and, if Lender requires, shall furnish to Lender receipts evidencing such payment within such time period as Lender may require. Borrower's obligation to make such payments and to provide receipts shall for all purposes be deemed to be a covenant and agreement contained in this Security Instrument, as the phrase "covenant and agreement" is used in Section 9. If Borrower is obligated to pay Escrow Items directly, pursuant to a waiver, and Borrower fails to pay the amount due for an Escrow Item, Lender may exercise its rights under Section 9 and pay such amount and Borrower shall then be obligated under Section 9 to repay to Lender any such amount. Lender may revoke the waiver as to any or all Escrow Items at any time by a notice given in accordance with Section 15 and, upon such revocation, Borrower shall pay to Lender all Funds, and in such amounts, that are then required under this Section 3.

Lender may, at any time, collect and hold Funds in an amount (a) sufficient to permit Lender to apply the Funds at the time specified under RESPA, and (b) not to exceed the maximum amount a lender can require under RESPA. Lender shall estimate the amount of Funds due on the basis of current data and reasonable estimates of expenditures of future Escrow Items or otherwise in accordance with Applicable Law.

The Funds shall be held in an institution whose deposits are insured by a federal agency, instrumentality, or entity (including Lender, if Lender is an institution whose deposits are so insured) or in any Federal Home Loan Bank. Lender shall apply the Funds to pay the Escrow Items no later than the time specified under RESPA. Lender shall not charge Borrower for holding and applying the Funds, annually analyzing the escrow account, or verifying the Escrow Items, unless Lender pays Borrower interest on the Funds and Applicable Law permits Lender to make such a charge. Unless an agreement is made in writing or Applicable Law requires interest to be paid on the Funds, Lender shall not be required to pay Borrower any interest or earnings on the Funds. Borrower and Lender can agree in writing, however, that interest shall be paid on the Funds. Lender shall give to Borrower, without charge, an annual accounting of the Funds as required by RESPA.

If there is a surplus of Funds held in escrow, as defined under RESPA, Lender shall account to Borrower for the excess funds in accordance with RESPA. If there is a shortage of Funds held in escrow, as defined under RESPA, Lender shall notify Borrower as required by RESPA, and Borrower shall pay to Lender the amount necessary to make up the shortage in accordance with RESPA, but in no more than 12 monthly payments. If there is a deficiency of Funds held in escrow, as defined under RESPA, Lender shall notify Borrower as required by RESPA, and Borrower shall pay to Lender the amount necessary to make up the deficiency in accordance with RESPA, but in no more than 12 monthly payments.

Upon payment in full of all sums secured by this Security Instrument, Lender shall promptly refund to Borrower any Funds held by Lender.

4. Charges; Liens. Borrower shall pay all taxes, assessments, charges, fines, and impositions attributable to the Property which can attain priority over this Security Instrument, leasehold payments or ground rents on the Property, if any, and Community Association Dues, Fees, and Assessments, if any. To the extent that these items are Escrow Items, Borrower shall pay them in the manner provided in Section 3.

Borrower shall promptly discharge any lien which has priority over this Security Instrument unless Borrower: (a) agrees in writing to the payment of the obligation secured by the lien in a manner acceptable to Lender, but only so long as Borrower is performing such agreement; (b) contests the lien in good faith by, or

Initials: _____

DOC ID #: 0009713537405005

defends against enforcement of the lien in, legal proceedings which in Lender's opinion operate to prevent the enforcement of the lien while those proceedings are pending, but only until such proceedings are concluded; or (c) secures from the holder of the lien an agreement satisfactory to Lender subordinating the lien to this Security Instrument. If Lender determines that any part of the Property is subject to a lien which can attain priority over this Security Instrument, Lender may give Borrower a notice identifying the lien. Within 10 days of the date on which that notice is given, Borrower shall satisfy the lien or take one or more of the actions set forth above in this Section 4.

Lender may require Borrower to pay a one-time charge for a real estate tax verification and/or reporting service used by Lender in connection with this Loan.

**5. Property Insurance.** Borrower shall keep the improvements now existing or hereafter erected on the Property insured against loss by fire, hazards included within the term "extended coverage," and any other hazards including, but not limited to, earthquakes and floods, for which Lender requires insurance. This insurance shall be maintained in the amounts (including deductible levels) and for the periods that Lender requires. What Lender requires pursuant to the preceding sentences can change during the term of the Loan. The insurance carrier providing the insurance shall be chosen by Borrower subject to Lender's right to disapprove Borrower's choice, which right shall not be exercised unreasonably. Lender may require Borrower to pay, in connection with this Loan, either: (a) a one-time charge for flood zone determination, certification and tracking services; or (b) a one-time charge for flood zone determination and certification services and subsequent charges each time remappings or similar changes occur which reasonably might affect such determination or certification. Borrower shall also be responsible for the payment of any fees imposed by the Federal Emergency Management Agency in connection with the review of any flood zone determination resulting from an objection by Borrower.

If Borrower fails to maintain any of the coverages described above, Lender may obtain insurance coverage, at Lender's option and Borrower's expense. Lender is under no obligation to purchase any particular type or amount of coverage. Therefore, such coverage shall cover Lender, but might or might not protect Borrower, Borrower's equity in the Property, or the contents of the Property, against any risk, hazard or liability and might provide greater or lesser coverage than was previously in effect. Borrower acknowledges that the cost of the insurance coverage so obtained might significantly exceed the cost of insurance that Borrower could have obtained. Any amounts disbursed by Lender under this Section 5 shall become additional debt of Borrower secured by this Security Instrument. These amounts shall bear interest at the Note rate from the date of disbursement and shall be payable, with such interest, upon notice from Lender to Borrower requesting payment.

All insurance policies required by Lender and renewals of such policies shall be subject to Lender's right to disapprove such policies, shall include a standard mortgage clause, and shall name Lender as mortgagee and/or as an additional loss payee. Lender shall have the right to hold the policies and renewal certificates. If Lender requires, Borrower shall promptly give to Lender all receipts of paid premiums and renewal notices. If Borrower obtains any form of insurance coverage, not otherwise required by Lender, for damage to, or destruction of, the Property, such policy shall include a standard mortgage clause and shall name Lender as mortgagee and/or as an additional loss payee.

In the event of loss, Borrower shall give prompt notice to the insurance carrier and Lender. Lender may make proof of loss if not made promptly by Borrower. Unless Lender and Borrower otherwise agree in writing, any insurance proceeds, whether or not the underlying insurance was required by Lender, shall be applied to restoration or repair of the Property, if the restoration or repair is economically feasible and Lender's security is not lessened. During such repair and restoration period, Lender shall have the right to hold such insurance proceeds until Lender has had an opportunity to inspect Property to ensure the work has been completed to Lender's satisfaction, provided that such inspection shall be undertaken promptly. Lender may disburse proceeds for the repairs and restoration in a single payment or in a series of progress payments as the work is completed. Unless an agreement is made in writing or Applicable Law requires interest to be

DOC ID #: 0009713537405005

paid on such insurance proceeds, Lender shall not be required to pay Borrower any interest or earnings on such proceeds. Fees for public adjusters, or other third parties, retained by Borrower shall not be paid out of the insurance proceeds and shall be the sole obligation of Borrower. If the restoration or repair is not economically feasible or Lender's security would be lessened, the insurance proceeds shall be applied to the sums secured by this Security Instrument, whether or not then due, with the excess, if any, paid to Borrower. Such insurance proceeds shall be applied in the order provided for in Section 2.

If Borrower abandons the Property, Lender may file, negotiate and settle any available insurance claim and related matters. If Borrower does not respond within 30 days to a notice from Lender that the insurance carrier has offered to settle a claim, then Lender may negotiate and settle the claim. The 30-day period will begin when the notice is given. In either event, or if Lender acquires the Property under Section 22 or otherwise, Borrower hereby assigns to Lender (a) Borrower's rights to any insurance proceeds in an amount not to exceed the amounts unpaid under the Note or this Security Instrument, and (b) any other of Borrower's rights (other than the right to any refund of unearned premiums paid by Borrower) under all insurance policies covering the Property, insofar as such rights are applicable to the coverage of the Property. Lender may use the insurance proceeds either to repair or restore the Property or to pay amounts unpaid under the Note or this Security Instrument, whether or not then due.

**6. Occupancy.** Borrower shall occupy, establish, and use the Property as Borrower's principal residence within 60 days after the execution of this Security Instrument and shall continue to occupy the Property as Borrower's principal residence for at least one year after the date of occupancy, unless Lender otherwise agrees in writing, which consent shall not be unreasonably withheld, or unless extenuating circumstances exist which are beyond Borrower's control.

**7. Preservation, Maintenance and Protection of the Property; Inspections.** Borrower shall not destroy, damage or impair the Property, allow the Property to deteriorate or commit waste on the Property. Whether or not Borrower is residing in the Property, Borrower shall maintain the Property in order to prevent the Property from deteriorating or decreasing in value due to its condition. Unless it is determined pursuant to Section 5 that repair or restoration is not economically feasible, Borrower shall promptly repair the Property if damaged to avoid further deterioration or damage. If insurance or condemnation proceeds are paid in connection with damage to, or the taking of, the Property, Borrower shall be responsible for repairing or restoring the Property only if Lender has released proceeds for such purposes. Lender may disburse proceeds for the repairs and restoration in a single payment or in a series of progress payments as the work is completed. If the insurance or condemnation proceeds are not sufficient to repair or restore the Property, Borrower is not relieved of Borrower's obligation for the completion of such repair or restoration.

Lender or its agent may make reasonable entries upon and inspections of the Property. If it has reasonable cause, Lender may inspect the interior of the improvements on the Property. Lender shall give Borrower notice at the time of or prior to such an interior inspection specifying such reasonable cause.

**8. Borrower's Loan Application.** Borrower shall be in default if, during the Loan application process, Borrower or any persons or entities acting at the direction of Borrower or with Borrower's knowledge or consent gave materially false, misleading, or inaccurate information or statements to Lender (or failed to provide Lender with material information) in connection with the Loan. Material representations include, but are not limited to, representations concerning Borrower's occupancy of the Property as Borrower's principal residence.

**9. Protection of Lender's Interest in the Property and Rights Under this Security Instrument.** If (a) Borrower fails to perform the covenants and agreements contained in this Security Instrument, (b) there is a legal proceeding that might significantly affect Lender's interest in the Property and/or rights under this Security Instrument (such as a proceeding in bankruptcy, probate, for condemnation or forfeiture, for enforcement of a lien which may attain priority over this Security Instrument or to enforce laws or regulations), or (c) Borrower has abandoned the Property, then Lender may do and pay for whatever is

DOC ID #: 0009713537405005

reasonable or appropriate to protect Lender's interest in the Property and rights under this Security Instrument, including protecting and/or assessing the value of the Property, and securing and/or repairing the Property. Lender's actions can include, but are not limited to: (a) paying any sums secured by a lien which has priority over this Security Instrument; (b) appearing in court; and (c) paying reasonable attorneys' fees to protect its interest in the Property and/or rights under this Security Instrument, including its secured position in a bankruptcy proceeding. Securing the Property includes, but is not limited to, entering the Property to make repairs, change locks, replace or board up doors and windows, drain water from pipes, eliminate building or other code violations or dangerous conditions, and have utilities turned on or off. Although Lender may take action under this Section 9, Lender does not have to do so and is not under any duty or obligation to do so. It is agreed that Lender incurs no liability for not taking any or all actions authorized under this Section 9.

Any amounts disbursed by Lender under this Section 9 shall become additional debt of Borrower secured by this Security Instrument. These amounts shall bear interest at the Note rate from the date of disbursement and shall be payable, with such interest, upon notice from Lender to Borrower requesting payment.

If this Security Instrument is on a leasehold, Borrower shall comply with all the provisions of the lease. If Borrower acquires fee title to the Property, the leasehold and the fee title shall not merge unless Lender agrees to the merger in writing.

10. Mortgage Insurance. If Lender required Mortgage Insurance as a condition of making the Loan, Borrower shall pay the premiums required to maintain the Mortgage Insurance in effect. If, for any reason, the Mortgage Insurance coverage required by Lender ceases to be available from the mortgage insurer that previously provided such insurance and Borrower was required to make separately designated payments toward the premiums for Mortgage Insurance, Borrower shall pay the premiums required to obtain coverage substantially equivalent to the Mortgage Insurance previously in effect, at a cost substantially equivalent to the cost to Borrower of the Mortgage Insurance previously in effect, from an alternate mortgage insurer selected by Lender. If substantially equivalent Mortgage Insurance coverage is not available, Borrower shall continue to pay to Lender the amount of the separately designated payments that were due when the insurance coverage ceased to be in effect. Lender will accept, use and retain these payments as a non-refundable loss reserve in lieu of Mortgage Insurance. Such loss reserve shall be non-refundable, notwithstanding the fact that the Loan is ultimately paid in full, and Lender shall not be required to pay Borrower any interest or earnings on such loss reserve. Lender can no longer require loss reserve payments if Mortgage Insurance coverage (in the amount and for the period that Lender requires) provided by an insurer selected by Lender again becomes available, is obtained, and Lender requires separately designated payments toward the premiums for Mortgage Insurance. If Lender required Mortgage Insurance as a condition of making the Loan and Borrower was required to make separately designated payments toward the premiums for Mortgage Insurance, Borrower shall pay the premiums required to maintain Mortgage Insurance in effect, or to provide a non-refundable loss reserve, until Lender's requirement for Mortgage Insurance ends in accordance with any written agreement between Borrower and Lender providing for such termination or until termination is required by Applicable Law. Nothing in this Section 10 affects Borrower's obligation to pay interest at the rate provided in the Note.

Mortgage Insurance reimburses Lender (or any entity that purchases the Note) for certain losses it may incur if Borrower does not repay the Loan as agreed. Borrower is not a party to the Mortgage Insurance.

Mortgage insurers evaluate their total risk on all such insurance in force from time to time, and may enter into agreements with other parties that share or modify their risk, or reduce losses. These agreements are on terms and conditions that are satisfactory to the mortgage insurer and the other party (or parties) to these agreements. These agreements may require the mortgage insurer to make payments using any source of funds that the mortgage insurer may have available (which may include funds obtained from Mortgage Insurance premiums).

As a result of these agreements, Lender, any purchaser of the Note, another insurer, any reinsurer, any other entity, or any affiliate of any of the foregoing, may receive (directly or indirectly) amounts that derive

DOC ID #: 0009713537405005

from (or might be characterized as) a portion of Borrower's payments for Mortgage Insurance, in exchange for sharing or modifying the mortgage insurer's risk, or reducing losses. If such agreement provides that an affiliate of Lender takes a share of the insurer's risk in exchange for a share of the premiums paid to the insurer, the arrangement is often termed "captive reinsurance." Further:

(a) Any such agreements will not affect the amounts that Borrower has agreed to pay for Mortgage Insurance, or any other terms of the Loan. Such agreements will not increase the amount Borrower will owe for Mortgage Insurance, and they will not entitle Borrower to any refund.

(b) Any such agreements will not affect the rights Borrower has - if any - with respect to the Mortgage Insurance under the Homeowners Protection Act of 1998 or any other law. These rights may include the right to receive certain disclosures, to request and obtain cancellation of the Mortgage Insurance, to have the Mortgage Insurance terminated automatically, and/or to receive a refund of any Mortgage Insurance premiums that were unearned at the time of such cancellation or termination.

11. Assignment of Miscellaneous Proceeds; Forfeiture. All Miscellaneous Proceeds are hereby assigned to and shall be paid to Lender.

If the Property is damaged, such Miscellaneous Proceeds shall be applied to restoration or repair of the Property, if the restoration or repair is economically feasible and Lender's security is not lessened. During such repair and restoration period, Lender shall have the right to hold such Miscellaneous Proceeds until Lender has had an opportunity to inspect such Property to ensure the work has been completed to Lender's satisfaction, provided that such inspection shall be undertaken promptly. Lender may pay for the repairs and restoration in a single disbursement or in a series of progress payments as the work is completed. Unless an agreement is made in writing or Applicable Law requires interest to be paid on such Miscellaneous Proceeds, Lender shall not be required to pay Borrower any interest or earnings on such Miscellaneous Proceeds. If the restoration or repair is not economically feasible or Lender's security would be lessened, the Miscellaneous Proceeds shall be applied to the sums secured by this Security Instrument, whether or not then due, with the excess, if any, paid to Borrower. Such Miscellaneous Proceeds shall be applied in the order provided for in Section 2.

In the event of a total taking, destruction, or loss in value of the Property, the Miscellaneous Proceeds shall be applied to the sums secured by this Security Instrument, whether or not then due, with the excess, if any, paid to Borrower.

In the event of a partial taking, destruction, or loss in value of the Property in which the fair market value of the Property immediately before the partial taking, destruction, or loss in value is equal to or greater than the amount of the sums secured by this Security Instrument immediately before the partial taking, destruction, or loss in value, unless Borrower and Lender otherwise agree in writing, the sums secured by this Security Instrument shall be reduced by the amount of the Miscellaneous Proceeds multiplied by the following fraction: (a) the total amount of the sums secured immediately before the partial taking, destruction, or loss in value divided by (b) the fair market value of the Property immediately before the partial taking, destruction, or loss in value. Any balance shall be paid to Borrower.

In the event of a partial taking, destruction, or loss in value of the Property in which the fair market value of the Property immediately before the partial taking, destruction, or loss in value is less than the amount of the sums secured immediately before the partial taking, destruction, or loss in value, unless Borrower and Lender otherwise agree in writing, the Miscellaneous Proceeds shall be applied to the sums secured by this Security Instrument whether or not the sums are then due.

If the Property is abandoned by Borrower, or if, after notice by Lender to Borrower that the Opposing Party (as defined in the next sentence) offers to make an award to settle a claim for damages, Borrower fails to respond to Lender within 30 days after the date the notice is given, Lender is authorized to collect and apply the Miscellaneous Proceeds either to restoration or repair of the Property or to the sums secured by this Security Instrument, whether or not then due. "Opposing Party" means the third party that owes Borrower Miscellaneous Proceeds or the party against whom Borrower has a right of action in regard to Miscellaneous Proceeds.

DOC ID #: 0000971353740505

Borrower shall be in default if any action or proceeding, whether civil or criminal, is begun that, in Lender's judgment, could result in forfeiture of the Property or other material impairment of Lender's interest in the Property or rights under this Security Instrument. Borrower can cure such a default and, if acceleration has occurred, reinstate as provided in Section 19, by causing the action or proceeding to be dismissed with a ruling that, in Lender's judgment, precludes forfeiture of the Property or other material impairment of Lender's interest in the Property or rights under this Security Instrument. The proceeds of any award or claim for damages that are attributable to the impairment of Lender's interest in the Property are hereby assigned and shall be paid to Lender.

All Miscellaneous Proceeds that are not applied to restoration or repair of the Property shall be applied in the order provided for in Section 2.

**12. Borrower Not Released; Forbearance By Lender Not a Waiver.** Extension of the time for payment or modification of amortization of the sums secured by this Security Instrument granted by Lender to Borrower or any Successor in Interest of Borrower shall not operate to release the liability of Borrower or any Successors in Interest of Borrower. Lender shall not be required to commence proceedings against any Successor in Interest of Borrower or to refuse to extend time for payment or otherwise modify amortization of the sums secured by this Security Instrument by reason of any demand made by the original Borrower or any Successors in Interest of Borrower. Any forbearance by Lender in exercising any right or remedy including, without limitation, Lender's acceptance of payments from third persons, entities or Successors in Interest of Borrower or in amounts less than the amount then due, shall not be a waiver of or preclude the exercise of any right or remedy.

**13. Joint and Several Liability; Co-signers; Successors and Assigns Bound.** Borrower covenants and agrees that Borrower's obligations and liability shall be joint and several. However, any Borrower who co-signs this Security Instrument but does not execute the Note (a "co-signer"): (a) is co-signing this Security Instrument only to mortgage, grant and convey the co-signer's interest in the Property under the terms of this Security Instrument; (b) is not personally obligated to pay the sums secured by this Security Instrument; and (c) agrees that Lender and any other Borrower can agree to extend, modify, forbear or make any accommodations with regard to the terms of this Security Instrument or the Note without the co-signer's consent.

Subject to the provisions of Section 18, any Successor in Interest of Borrower who assumes Borrower's obligations under this Security Instrument in writing, and is approved by Lender, shall obtain all of Borrower's rights and benefits under this Security Instrument. Borrower shall not be released from Borrower's obligations and liability under this Security Instrument unless Lender agrees to such release in writing. The covenants and agreements of this Security Instrument shall bind (except as provided in Section 20) and benefit the successors and assigns of Lender.

**14. Loan Charges.** Lender may charge Borrower fees for services performed in connection with Borrower's default, for the purpose of protecting Lender's interest in the Property and rights under this Security Instrument, including, but not limited to, attorneys' fees, property inspection and valuation fees. In regard to any other fees, the absence of express authority in this Security Instrument to charge a specific fee to Borrower shall not be construed as a prohibition on the charging of such fee. Lender may not charge fees that are expressly prohibited by this Security Instrument or by Applicable Law.

If the Loan is subject to a law which sets maximum loan charges, and that law is finally interpreted so that the interest or other loan charges collected or to be collected in connection with the Loan exceed the permitted limits, then: (a) any such loan charge shall be reduced by the amount necessary to reduce the charge to the permitted limit; and (b) any sums already collected from Borrower which exceeded permitted limits will be refunded to Borrower. Lender may choose to make this refund by reducing the principal owed under the Note or by making a direct payment to Borrower. If a refund reduces principal, the reduction will be treated as a partial prepayment without any prepayment charge (whether or not a prepayment charge is provided for under the Note). Borrower's acceptance of any such refund made by direct payment to Borrower will constitute a waiver of any right of action Borrower might have arising out of such overcharge.

Initials: _____

DOC ID #: 0009713537405005

**15. Notices.** All notices given by Borrower or Lender in connection with this Security Instrument must be in writing. Any notice to Borrower in connection with this Security Instrument shall be deemed to have been given to Borrower when mailed by first class mail or when actually delivered to Borrower's notice address if sent by other means. Notice to any one Borrower shall constitute notice to all Borrowers unless Applicable Law expressly requires otherwise. The notice address shall be the Property Address unless Borrower has designated a substitute notice address by notice to Lender. Borrower shall promptly notify Lender of Borrower's change of address. If Lender specifies a procedure for reporting Borrower's change of address, then Borrower shall only report a change of address through that specified procedure. There may be only one designated notice address under this Security Instrument at any one time. Any notice to Lender shall be given by delivering it or by mailing it by first class mail to Lender's address stated herein unless Lender has designated another address by notice to Borrower. Any notice in connection with this Security Instrument shall not be deemed to have been given to Lender until actually received by Lender. If any notice required by this Security Instrument is also required under Applicable Law, the Applicable Law requirement will satisfy the corresponding requirement under this Security Instrument.

**16. Governing Law; Severability; Rules of Construction.** This Security Instrument shall be governed by federal law and the law of the jurisdiction in which the Property is located. All rights and obligations contained in this Security Instrument are subject to any requirements and limitations of Applicable Law. Applicable Law might explicitly or implicitly allow the parties to agree by contract or it might be silent, but such silence shall not be construed as a prohibition against agreement by contract. In the event that any provision or clause of this Security Instrument or the Note conflicts with Applicable Law, such conflict shall not affect other provisions of this Security Instrument or the Note which can be given effect without the conflicting provision.

As used in this Security Instrument: (a) words of the masculine gender shall mean and include corresponding neuter words or words of the feminine gender; (b) words in the singular shall mean and include the plural and vice versa; and (c) the word "may" gives sole discretion without any obligation to take any action.

**17. Borrower's Copy.** Borrower shall be given one copy of the Note and of this Security Instrument.

**18. Transfer of the Property or a Beneficial Interest in Borrower.** As used in this Section 18, "Interest in the Property" means any legal or beneficial interest in the Property, including, but not limited to, those beneficial interests transferred in a bond for deed, contract for deed, installment sales contract or escrow agreement, the intent of which is the transfer of title by Borrower at a future date to a purchaser.

If all or any part of the Property or any Interest in the Property is sold or transferred (or if Borrower is not a natural person and a beneficial interest in Borrower is sold or transferred) without Lender's prior written consent, Lender may require immediate payment in full of all sums secured by this Security Instrument. However, this option shall not be exercised by Lender if such exercise is prohibited by Applicable Law.

If Lender exercises this option, Lender shall give Borrower notice of acceleration. The notice shall provide a period of not less than 30 days from the date the notice is given in accordance with Section 15 within which Borrower must pay all sums secured by this Security Instrument. If Borrower fails to pay these sums prior to the expiration of this period, Lender may invoke any remedies permitted by this Security Instrument without further notice or demand on Borrower.

**19. Borrower's Right to Reinstate After Acceleration.** If Borrower meets certain conditions, Borrower shall have the right to have enforcement of this Security Instrument discontinued at any time prior to the earliest of: (a) five days before sale of the Property pursuant to any power of sale contained in this Security Instrument; (b) such other period as Applicable Law might specify for the termination of Borrower's right to reinstate; or (c) entry of a judgment enforcing this Security Instrument. Those conditions are that Borrower: (a) pays Lender all sums which then would be due under this Security Instrument and the Note as if no acceleration had occurred; (b) cures any default of any other covenants or agreements; (c) pays all expenses incurred in enforcing this Security Instrument, including, but not limited to, reasonable attorneys' fees,

Initials: _____

DOC ID #: 0009713537405005

property inspection and valuation fees, and other fees incurred for the purpose of protecting Lender's interest in the Property and rights under this Security Instrument; and (d) takes such action as Lender may reasonably require to assure that Lender's interest in the Property and rights under this Security Instrument, and Borrower's obligation to pay the sums secured by this Security Instrument, shall continue unchanged. Lender may require that Borrower pay such reinstatement sums and expenses in one or more of the following forms, as selected by Lender: (a) cash; (b) money order; (c) certified check, bank check, treasurer's check or cashier's check, provided any such check is drawn upon an institution whose deposits are insured by a federal agency, instrumentality or entity; or (d) Electronic Funds Transfer. Upon reinstatement by Borrower, this Security Instrument and obligations secured hereby shall remain fully effective as if no acceleration had occurred. However, this right to reinstate shall not apply in the case of acceleration under Section 18.

**20. Sale of Note; Change of Loan Servicer; Notice of Grievance.** The Note or a partial interest in the Note (together with this Security Instrument) can be sold one or more times without prior notice to Borrower. A sale might result in a change in the entity (known as the "Loan Servicer") that collects Periodic Payments due under the Note and this Security Instrument and performs other mortgage loan servicing obligations under the Note, this Security Instrument, and Applicable Law. There also might be one or more changes of the Loan Servicer unrelated to a sale of the Note. If there is a change of the Loan Servicer, Borrower will be given written notice of the change which will state the name and address of the new Loan Servicer, the address to which payments should be made and any other information RESPA requires in connection with a notice of transfer of servicing. If the Note is sold and thereafter the Loan is serviced by a Loan Servicer other than the purchaser of the Note, the mortgage loan servicing obligations to Borrower will remain with the Loan Servicer or be transferred to a successor Loan Servicer and are not assumed by the Note purchaser unless otherwise provided by the Note purchaser.

Neither Borrower nor Lender may commence, join, or be joined to any judicial action (as either an individual litigant or the member of a class) that arises from the other party's actions pursuant to this Security Instrument or that alleges that the other party has breached any provision of, or any duty owed by reason of, this Security Instrument, until such Borrower or Lender has notified the other party (with such notice given in compliance with the requirements of Section 15) of such alleged breach and afforded the other party hereto a reasonable period after the giving of such notice to take corrective action. If Applicable Law provides a time period which must elapse before certain action can be taken, that time period will be deemed to be reasonable for purposes of this paragraph. The notice of acceleration and opportunity to cure given to Borrower pursuant to Section 22 and the notice of acceleration given to Borrower pursuant to Section 18 shall be deemed to satisfy the notice and opportunity to take corrective action provisions of this Section 20.

**21. Hazardous Substances.** As used in this Section 21: (a) "Hazardous Substances" are those substances defined as toxic or hazardous substances, pollutants, or wastes by Environmental Law and the following substances: gasoline, kerosene, other flammable or toxic petroleum products, toxic pesticides and herbicides, volatile solvents, materials containing asbestos or formaldehyde, and radioactive materials; (b) "Environmental Law" means federal laws and laws of the jurisdiction where the Property is located that relate to health, safety or environmental protection; (c) "Environmental Cleanup" includes any response action, remedial action, or removal action, as defined in Environmental Law; and (d) an "Environmental Condition" means a condition that can cause, contribute to, or otherwise trigger an Environmental Cleanup.

Borrower shall not cause or permit the presence, use, disposal, storage, or release of any Hazardous Substances, or threaten to release any Hazardous Substances, on or in the Property. Borrower shall not do, nor allow anyone else to do, anything affecting the Property (a) that is in violation of any Environmental Law, (b) which creates an Environmental Condition, or (c) which, due to the presence, use, or release of a Hazardous Substance, creates a condition that adversely affects the value of the Property. The preceding two sentences shall not apply to the presence, use, or storage on the Property of small quantities of Hazardous Substances that are generally recognized to be appropriate to normal residential uses and to maintenance of the Property (including, but not limited to, hazardous substances in consumer products).

Initials: _____

-6A(NV) (0307)  CHL (07/03)        Page 13 of 16        Form 3029  1/01

DOC ID #: 000971353740

Borrower shall promptly give Lender written notice of (a) any investigation, claim, demand, lawsuit or other action by any governmental or regulatory agency or private party involving the Property and any Hazardous Substance or Environmental Law of which Borrower has actual knowledge, (b) any Environmental Condition, including but not limited to, any spilling, leaking, discharge, release or threat of release of any Hazardous Substance, and (c) any condition caused by the presence, use or release of a Hazardous Substance which adversely affects the value of the Property. If Borrower learns, or is notified by any governmental or regulatory authority, or any private party, that any removal or other remediation of any Hazardous Substance affecting the Property is necessary, Borrower shall promptly take all necessary remedial actions in accordance with Environmental Law. Nothing herein shall create any obligation on Lender for an Environmental Cleanup.

NON-UNIFORM COVENANTS. Borrower and Lender further covenant and agree as follows:

**22. Acceleration; Remedies. Lender shall give notice to Borrower prior to acceleration following Borrower's breach of any covenant or agreement in this Security Instrument (but not prior to acceleration under Section 18 unless Applicable Law provides otherwise). The notice shall specify: (a) the default; (b) the action required to cure the default; (c) a date, not less than 30 days from the date the notice is given to Borrower, by which the default must be cured; and (d) that failure to cure the default on or before the date specified in the notice may result in acceleration of the sums secured by this Security Instrument and sale of the Property. The notice shall further inform Borrower of the right to reinstate after acceleration and the right to bring a court action to assert the non-existence of a default or any other defense of Borrower to acceleration and sale. If the default is not cured on or before the date specified in the notice, Lender at its option, and without further demand, may invoke the power of sale, including the right to accelerate full payment of the Note, and any other remedies permitted by Applicable Law. Lender shall be entitled to collect all expenses incurred in pursuing the remedies provided in this Section 22, including, but not limited to, reasonable attorneys' fees and costs of title evidence.**

**If Lender invokes the power of sale, Lender shall execute or cause Trustee to execute written notice of the occurrence of an event of default and of Lender's election to cause the Property to be sold, and shall cause such notice to be recorded in each county in which any part of the Property is located. Lender shall mail copies of the notice as prescribed by Applicable Law to Borrower and to the persons prescribed by Applicable Law. Trustee shall give public notice of sale to the persons and in the manner prescribed by Applicable Law. After the time required by Applicable Law, Trustee, without demand on Borrower, shall sell the Property at public auction to the highest bidder at the time and place and under the terms designated in the notice of sale in one or more parcels and in any order Trustee determines. Trustee may postpone sale of all or any parcel of the Property by public announcement at the time and place of any previously scheduled sale. Lender or its designee may purchase the Property at any sale.**

**Trustee shall deliver to the purchaser Trustee's deed conveying the Property without any covenant or warranty, expressed or implied. The recitals in the Trustee's deed shall be prima facie evidence of the truth of the statements made therein. Trustee shall apply the proceeds of the sale in the following order: (a) to all expenses of the sale, including, but not limited to, reasonable Trustee's and attorneys' fees; (b) to all sums secured by this Security Instrument; and (c) any excess to the person or persons legally entitled to it.**

**23. Reconveyance.** Upon payment of all sums secured by this Security Instrument, Lender shall request Trustee to reconvey the Property and shall surrender this Security Instrument and all notes evidencing debt secured by this Security Instrument to Trustee. Trustee shall reconvey the Property without warranty to the person or persons legally entitled to it. Such person or persons shall pay any recordation costs. Lender may charge such person or persons a fee for reconveying the Property, but only if the fee is paid to a third party (such as the Trustee) for services rendered and the charging of the fee is permitted under Applicable Law.

**24. Substitute Trustee.** Lender at its option, may from time to time remove Trustee and appoint a successor trustee to any Trustee appointed hereunder. Without conveyance of the Property, the successor trustee shall succeed to all the title, power and duties conferred upon Trustee herein and by Applicable Law.

**25. Assumption Fee.** If there is an assumption of this loan, Lender may charge an assumption fee of
U.S. $    300.00    .

Initials: ⟨handwritten⟩

DOC ID #: 0009713537405005

BY SIGNING BELOW, Borrower accepts and agrees to the terms and covenants contained in this Security Instrument and in any Rider executed by Borrower and recorded with it.

Witnesses:

_____

_____

_____ (Seal)
LORI HERDA                                          -Borrower

_____ (Seal)
                                                         -Borrower

_____ (Seal)
                                                         -Borrower

_____ (Seal)
                                                         -Borrower

DOC ID #: 0009713537405005

**STATE OF NEVADA**
**COUNTY OF** Clouc

This instrument was acknowledged before me on ___MAY 13, 2005___ by
Lori Heron



Morris W Rose

Mail Tax Statements To:
TAX DEPARTMENT SV3-24

450 American Street
Simi Valley CA, 93065

-6A(NV) (0307)    CHL (07/03)    Page 16 of 16    Initials: ___
Form 3029 1/01

Inst #: 201010150001860
Fees: $15.00
N/C Fee: $25.00
10/15/2010 12:13:21 PM
Receipt #: 541797
Requestor:
GREGORY WILDE
Recorded By: ANI   Pgs: 2
DEBBIE CONWAY
CLARK COUNTY RECORDER



**APN#**  138-34-610-006

11-digit parcel number may be obtained at:
http://redrock.co.clark.nv.us/assrrealprop/ownr.aspx

Assignment of Deed of Trust

**Type of Document**
(Example: Declaration of Homestead, Quit Claim Deed, etc.)

**Recording Requested by:**

Wilde & Associates

**Return To:**

**Name** Gregory Wilde, Esq.

**Address** 212 S Jones Blvd

**City/State/Zip** Las Vegas, NV 89107

This page added to provide additional information required by NRS 111.312 Section 1-2
(An additional recording fee of $1.00 will apply)

This cover page must be typed or printed clearly in black ink only.

CS 02/07

WHEN RECORDED MAIL TO:

**TIFFANY & BOSCO, P.A.**
**Michael A. Bosco, Jr.**
2525 East Camelback Road, Suite 300
Phoenix, AZ 85016

## ASSIGNMENT OF DEED OF TRUST

T & B No.: 09-77956                                    Parcel No. 138-34-610-006

For Value Received, the undersigned corporation hereby grants, assigns and transfers to **BAC Home Loans Servicing, L.P. fka Countrywide Home Loans Servicing, L.P.** at the address of 7105 Corporate Drive Mail Stop PTX-209, Plano TX 75024 all beneficial interest under that certain Deed of Trust dated **May 3, 2005** executed by **Lori Herda, a married woman as her sole and separate property** Trustor, **CTC Real Estate Services** Trustee, **Mortgage Electronic Registration Systems, Inc., as nominee for Countrywide Home Loans, Inc.,** as Beneficiary; and recorded on **05/25/05** as Recording No./Book-Page **200505250003792** of Official Records of **Clark** County, NV and legally describing the trust property as:

LOT 6 IN BLOCK 12 OF CHARLESTON RAINBOW UNIT 7B, AS SHOWN BY MAP THEREOF ON FILE IN BOOK 13 OF PLATS, PAGE 51 IN THE OFFICE OF THE COUNTY RECORDER OF CLARK COUNTY, NEVADA. ASSESSOR'S PARCEL NO: 138-34-610-006

Together with the Note or Notes therein described or referred to, the money due and to become due thereon with interest, and all rights accrued or to accrue under said Deed of Trust. Hereby made effective on:
Date :    **JUN 1 5 2010**

**Mortgage Electronic Registration Systems, Inc., as nominee for Countrywide Home Loans, Inc.**

By : _Nichole_
Its: _____
           Nichole Clavadetscher
           Certifying Officer

STATE OF _CALIFORNIA_    )
                                              )ss.
COUNTY OF _VENTURA_    )

On this _15th_ day of _JUNE_____, 20_10_, before me, the undersigned, a Notary Public for said State, personally appeared _____**Nichole Clavadetscher**_____ known to me to be the ___CERTIFYING  OFFICER_____ of the above corporation, and acknowledge execution of the above instrument on behalf of the corporation.

My Commission Expires: _7-24-2010_                    _Jon Secrist_
                                                                          Notary Public

*Notary seal:*
JON SECRIST
Commission # 1683790
Notary Public - California
Ventura County
My Comm. Expires Jul 24, 2010

Inst#:200909040003826 Fees:$18.00 N/C Fee:$0.00 RPTT:$0.00 Ex:#010 04/2009 14:42:09 Page 37 of 50
Receipt#:55341 Requestor:FIDELITY NATIONAL DEFAULT SOLUTIONS Recorded By:ADF
Pgs:1 DEBBIE CONWAY CLARK COUNTY RECORDER

RECORDING REQUESTED BY:
RECONTRUST COMPANY, N.A.
**AND WHEN RECORDED MAIL DOCUMENT TO:**
BAC Home Loans Servicing, LP
400 COUNTRYWIDE WAY SV-35
SIMI VALLEY, CA 93065

138-34-610-006

TS No. 09-0131186
**TITLE ORDER#: 090626360NVGTI**

_____

### CORPORATION ASSIGNMENT OF DEED OF TRUST NEVADA

FOR VALUE RECEIVED, THE UNDERSIGNED HEREBY GRANTS, ASSIGNS AND TRANSFER TO:
**BAC HOME LOANS SERVICING, LP FKA COUNTRYWIDE HOME LOANS SERVICING LP**

ALL BENEFICIAL INTEREST UNDER THAT CERTAIN DEED OF TRUST DATED 05/03/2005,
EXECUTED BY: LORI HERDA, A MARRIED WOMAN AS HER SOLE AND SEPARATE
PROPERTY,TRUSTOR: TO CTC REAL ESTATE SERVICES, TRUSTEE AND RECORDED AS
INSTRUMENT NO. 0003792 ON 05/25/2005, IN BOOK 20050525, OF OFFICIAL RECORDS IN THE
COUNTY RECORDER'S OFFICE OF CLARK COUNTY, IN THE STATE OF NEVADA.

DESCRIBING THE LAND THEREIN: AS MORE FULLY DESCRIBED IN SAID DEED OF TRUST.

TOGETHER WITH THE NOTE OR NOTES THEREIN DESCRIBED OR REFERRED TO, THE
MONEY DUE AND TO BECOME DUE THEREON WITH INTEREST, AND ALL RIGHTS
ACCRUED OR TO ACCRUE UNDER SAID DEED OF TRUST/MORTGAGE.

DATED:   September 02, 2009            MORTGAGE ELECTRONIC REGISTRATION SYSTEMS,
                                       INC.

State of:   **Texas**          )
County of:  **Dallas**         )BY: _____
                                       Angela Nava
                                       , Assistant Secretary
                                       Angela Nava
                                       Assistant Secretary

On 9-8-09  before me  ANGELA SERATO _____, personally appeared _____
_____, know to me (or proved to me on the oath of _____ or through
_____) to be the person whose name is subscribed to the foregoing instrument and
acknowledged to me that he/she executed the same for the purposes and consideration therein expressed.
Witness my hand and official seal.

_____
Notary Public's Signature

ANGELA SERATO
My Commission Expires
July 27, 2013

RECORDING REQUESTED BY:
RECONTRUST COMPANY

**AND WHEN RECORDED MAIL DOCUMENT TO:**
RECONTRUST COMPANY
2380 Performance Dr, TX2-985-07-03
Richardson, TX 75082

**ATTN: Dominic Heme**

TS No. 09-0131186
138-34-610-006
TSG No. 090626360NVGTI

_____

### SUBSTITUTION OF TRUSTEE NEVADA

WHEREAS, LORI HERDA, A MARRIED WOMAN AS HER SOLE AND SEPARATE PROPERTY
was the original Trustor, CTC REAL ESTATE SERVICES was the original Trustee, and
MORTGAGE ELECTRONIC REGISTRATION SYSTEMS, INC. was the original Beneficiary under
that certain Deed of Trust dated 05/03/2005 recorded on 05/25/2005 as Instrument No. 0003792 in
Book 20050525 Page of Official Records of Clark County, Nevada;

WHEREAS, the undersigned is the present Beneficiary under said Deed of Trust, and

WHEREAS, the undersigned desires to substitute a new Trustee under said Deed of Trust in place and
instead of said original Trustee, or Successor Trustee, thereunder, in the manner in said Deed of Trust
provided,

NOW THEREFORE, the undersigned hereby substitutes RECONTRUST COMPANY, N.A., WHOSE
ADDRESS IS: 2380 Performance Dr, TX2-985-07-03, Richardson, TX 75082, as Trustee under said
Deed of Trust.

Whenever the context hereof so requires, the masculine gender includes the feminine and/or neuter, and the singular number includes the plural.

BAC HOME LOANS SERVICING, LP FKA
COUNTRYWIDE HOME LOANS SERVICING LP

BY: _____Angela Nava_____
　　　　Angela Nava　　　, Assistant Secretary

State of: ___Texas___ }
County of: ___Dallas___ }
On 9-8-09 before me ANGELA SERATO , personally appeared
___Angela Nava___ **Assistant Secretary** , know to me (or proved to me on the
oath of _____ or through _____ ) to be the person whose name is
subscribed to the foregoing instrument and acknowledged to me that he/she executed the same
for the purposes and consideration therein expressed.
Witness my hand and official seal.

_____
Notary Public's Signature

ANGELA SERATO
My Commission Expires
July 27, 2013

# Exhibit "3"

B6A (Official Form 6A) (12/07)

In re    **Joseph R Esquivel, Jr.,**                                              Case No. _____
         **Lori Esquivel**
                                        _____,
                                                Debtors

# SCHEDULE A - REAL PROPERTY

    Except as directed below, list all real property in which the debtor has any legal, equitable, or future interest, including all property owned as a cotenant, community property, or in which the debtor has a life estate. Include any property in which the debtor holds rights and powers exercisable for the debtor's own benefit. If the debtor is married, state whether husband, wife, both, or the marital community own the property by placing an "H," "W," "J," or "C" in the column labeled "Husband, Wife, Joint, or Community." If the debtor holds no interest in real property, write "None" under "Description and Location of Property."

    **Do not include interests in executory contracts and unexpired leases on this schedule. List them in Schedule G - Executory Contracts and Unexpired Leases.**

    If an entity claims to have a lien or hold a secured interest in any property, state the amount of the secured claim. See Schedule D. If no entity claims to hold a secured interest in the property, write "None" in the column labeled "Amount of Secured Claim." If the debtor is an individual or if a joint petition is filed, state the amount of any exemption claimed in the property only in Schedule C - Property Claimed as Exempt.

| Description and Location of Property | Nature of Debtor's Interest in Property | Husband, Wife, Joint, or Community | Current Value of Debtor's Interest in Property, without Deducting any Secured Claim or Exemption | Amount of Secured Claim |
|---|---|:---:|---:|---:|
| **Debtors' residence located at 6940 Surrey Ct, Las Vegas NV** | **Joint tenant** | **C** | **157,000.00** | **278,578.00** |

|  |  |  |
|---|---:|---|
| Sub-Total > | **157,000.00** | (Total of this page) |
| Total > | **157,000.00** | |

  **0**   continuation sheets attached to the Schedule of Real Property

(Report also on Summary of Schedules)

Copyright (c) 1996-2009 - Best Case Solutions - Evanston, IL - (800) 492-80??                                                Best Case Bankruptcy

# Exhibit "4"

B6D (Official Form 6D) (12/07)

In re        Joseph R Esquivel, Jr.,                                                    Case No. _____
             Lori Esquivel
_____,
                            Debtors

## SCHEDULE D - CREDITORS HOLDING SECURED CLAIMS

State the name, mailing address, including zip code, and last four digits of any account number of all entities holding claims secured by property of the debtor as of the date of filing of the petition. The complete account number of any account the debtor has with the creditor is useful to the trustee and the creditor and may be provided if the debtor chooses to do so. List creditors holding all types of secured interests such as judgment liens, garnishments, statutory liens, mortgages, deeds of trust, and other security interests.

List creditors in alphabetical order to the extent practicable. If a minor child is a creditor, the child's initials and the name and address of the child's parent or guardian, such as "A.B., a minor child, by John Doe, guardian." Do not disclose the child's name. See, 11 U.S.C. §112 and Fed. R. Bankr. P. 1007(m). If all secured creditors will not fit on this page, use the continuation sheet provided.

If any entity other than a spouse in a joint case may be jointly liable on a claim, place an "X" in the column labeled "Codebtor" ,include the entity on the appropriate schedule of creditors, and complete Schedule H - Codebtors. If a joint petition is filed, state whether the husband, wife, both of them, or the marital community may be liable on each claim by placing an "H", "W", "J", or "C" in the column labeled "Husband, Wife, Joint, or Community".

If the claim is contingent, place an "X" in the column labeled "Contingent". If the claim is unliquidated, place an "X" in the column labeled "Unliquidated". If the claim is disputed, place an "X" in the column labeled "Disputed". (You may need to place an "X" in more than one of these three columns.)

Total the columns labeled "Amount of Claim Without Deducting Value of Collateral" and "Unsecured Portion, if Any" in the boxes labeled "Total(s)" on the last sheet of the completed schedule. Report the total from the column labeled "Amount of Claim" also on the Summary of Schedules and, if the debtor is an individual with primarily consumer debts, report the total from the column labeled "Unsecured Portion" on the Statistical Summary of Certain Liabilities and Related Data.

☐   Check this box if debtor has no creditors holding secured claims to report on this Schedule D.

| CREDITOR'S NAME AND MAILING ADDRESS INCLUDING ZIP CODE, AND ACCOUNT NUMBER (See instructions above.) | CODEBTOR | Husband, Wife, Joint, or Community | DATE CLAIM WAS INCURRED, NATURE OF LIEN, AND DESCRIPTION AND VALUE OF PROPERTY SUBJECT TO LIEN | CONTINGENT | UNLIQUIDATED | DISPUTED | AMOUNT OF CLAIM WITHOUT DEDUCTING VALUE OF COLLATERAL | UNSECURED PORTION, IF ANY |
|---|---|---|---|---|---|---|---|---|
| Account No. 68181005120199 | | | Opened 8/01/05 Last Active 6/30/09 | | | | | |
| Creditor #: 1 **Bank Of America** 4161 Piedmont Parkway Greensboro, NC 27410 | | C | Second Deed of Trust  Debtors' residence located at 6940 Surrey Ct, Las Vegas NV | | | | | |
| | | | Value $        157,000.00 | | | | 83,685.00 | 83,685.00 |
| Account No. 97135374 | | | Opened 5/01/05 Last Active 5/29/09 | | | | | |
| Creditor #: 2 **Countrywide Home Lending** Attention: Bankruptcy  SV-314B Po Box 5170 Simi Valley, CA 93062 | | C | First Deed of Trust  Debtors' residence located at 6940 Surrey Ct, Las Vegas NV | | | | | |
| | | | Value $        157,000.00 | | | | 194,893.00 | 37,893.00 |
| Account No. 912371700001 | | | Opened 8/01/05 Last Active 8/10/09 | | | | | |
| Creditor #: 3 **Ibew Plus Credit Union** 4318 E Bonanza Rd Las Vegas, NV 89110 | | C | Vehicle financing  2002 Lincoln LS | | | | | |
| | | | Value $        6,200.00 | | | | 9,365.00 | 3,165.00 |
| Account No. 50237069250629001 | | | Opened 10/01/03 Last Active 7/09/09 | | | | | |
| Creditor #: 4 **Wells Fargo** Po Box 60510 Los Angeles, CA 90060 | | C | Vehicle financing  1999 Dodge RAM, 115K miles | | | | | |
| | | | Value $        2,500.00 | | | | 1,817.00 | 0.00 |

__0__   continuation sheets attached

|  | Subtotal (Total of this page) | 289,760.00 | 124,743.00 |
|---|---|---|---|
|  | Total (Report on Summary of Schedules) | 289,760.00 | 124,743.00 |

Copyright (c) 1996-2009 - Best Case Solutions - Evanston, IL - (800) 492-8037                                Best Case Bankruptcy

# Exhibit "5"

B6F (Official Form 6F) (12/07)

In re    **Joseph R Esquivel, Jr.,**
         **Lori Esquivel**                                              Case No. _____
_____
                                        Debtors

# SCHEDULE F - CREDITORS HOLDING UNSECURED NONPRIORITY CLAIMS

State the name, mailing address, including zip code, and last four digits of any account number, of all entities holding unsecured claims without priority against the debtor or the property of the debtor, as of the date of filing of the petition. The complete account number of any account the debtor has with the creditor is useful to the trustee and the creditor and may be provided if the debtor chooses to do so. If a minor child is a creditor, state the child's initials and the name and address of the child's parent or guardian, such as "A.B., a minor child, by John Doe, guardian." Do not disclose the child's name. See, 11 U.S.C. §112 and Fed. R. Bankr. P. 1007(m). Do not include claims listed in Schedules D and E. If all creditors will not fit on this page, use the continuation sheet provided.

If any entity other than a spouse in a joint case may be jointly liable on a claim, place an "X" in the column labeled "Codebtor," include the entity on the appropriate schedule of creditors, and complete Schedule H - Codebtors. If a joint petition is filed, state whether the husband, wife, both of them, or the marital community may be liable on each claim by placing an "H," "W," "J," or "C" in the column labeled "Husband, Wife, Joint, or Community."

If the claim is contingent, place an "X" in the column labeled "Contingent." If the claim is unliquidated, place an "X" in the column labeled "Unliquidated." If the claim is disputed, place an "X" in the column labeled "Disputed." (You may need to place an "X" in more than one of these three columns.)

Report the total of all claims listed on this schedule in the box labeled "Total" on the last sheet of the completed schedule. Report this total also on the Summary of Schedules and, if the debtor is an individual with primarily consumer debts, report this total also on the Statistical Summary of Certain Liabilities and Related Data.

☐   Check this box if debtor has no creditors holding unsecured claims to report on this Schedule F.

| CREDITOR'S NAME, MAILING ADDRESS INCLUDING ZIP CODE, AND ACCOUNT NUMBER (See instructions above.) | C O D E B T O R | Husband, Wife, Joint, or Community | | DATE CLAIM WAS INCURRED AND CONSIDERATION FOR CLAIM. IF CLAIM IS SUBJECT TO SETOFF, SO STATE. | C O N T I N G E N T | U N L I Q U I D A T E D | D I S P U T E D | AMOUNT OF CLAIM |
|---|---|---|---|---|---|---|---|---|
| | | H W J C | | | | | | |
| Account No. | | | | Services | | | | |
| Creditor #: 1 A-1 Lawn Maintenance 308 S Lorenzi St Las Vegas, NV 89107 | | C | | | | | | 2,320.00 |
| Account No. 1695 | | | | Credit card purchases | | | | |
| Creditor #: 2 Citi Po Box 6077 Sioux Falls, SD 57117 | | C | | | | | | 10,000.00 |
| Account No. 601100907026 | | | | Opened 12/01/02 Last Active 7/28/09 CreditCard | | | | |
| Creditor #: 3 Discover Fin Svcs Llc Po Box 15316 Wilmington, DE 19850 | | C | | | | | | 9,038.00 |
| Account No. 5276861 | | | | Opened 1/01/08 CollectionAttorney Morton Plant Hospital | | | | |
| Creditor #: 4 Financial Credit Svcs 611 Druid Rd E Ste 715 Clearwater, FL 33756 | | H | | | | | | 41.00 |

_1_ continuation sheets attached

Subtotal
(Total of this page)                                    21,399.00

# Exhibit "6"

B8 (Form 8) (12 08)

# United States Bankruptcy Court
## District of Nevada

In re    Joseph R Esquivel, Jr.
       Lori Esquivel _____    Case No. _____

                                                 Debtor(s)    Chapter    **7** _____

## CHAPTER 7 INDIVIDUAL DEBTOR'S STATEMENT OF INTENTION

**PART A** - Debts secured by property of the estate. (Part A must be fully completed for EACH debt which is secured by property of the estate. Attach additional pages if necessary.)

| Property No. 1 | |
|---|---|
| **Creditor's Name:**<br>**Bank Of America** | **Describe Property Securing Debt:**<br>**Debtors' residence located at 6940 Surrey Ct, Las Vegas NV** |

Property will be (check one):
     ☐ Surrendered                 ■ Retained

If retaining the property, I intend to (check at least one):
     ☐ Redeem the property
     ■ Reaffirm the debt
     ☐ Other. Explain _____ (for example, avoid lien using 11 U.S.C. § 522(f)).

Property is (check one):
     ■ Claimed as Exempt               ☐ Not claimed as exempt

| Property No. 2 | |
|---|---|
| **Creditor's Name:**<br>**Countrywide Home Lending** | **Describe Property Securing Debt:**<br>**Debtors' residence located at 6940 Surrey Ct, Las Vegas NV** |

Property will be (check one):
     ☐ Surrendered                 ■ Retained

If retaining the property, I intend to (check at least one):
     ☐ Redeem the property
     ■ Reaffirm the debt
     ☐ Other. Explain _____ (for example, avoid lien using 11 U.S.C. § 522(f)).

Property is (check one):
     ■ Claimed as Exempt               ☐ Not claimed as exempt

WILDE & ASSOCIATES
Gregory L. Wilde. Esq.
Nevada Bar No. 004417
208 South Jones Boulevard
Las Vegas, Nevada 89107
Telephone: 702 258-8200
Fax: 702 258-8787
bk@wildelaw.com.

MARK S. BOSCO. ESQ.
Arizona Bar No. 010167
TIFFANY & BOSCO. P.A.
2525 East Camelback Road. Suite 300
Phoenix, Arizona 85016
Telephone: (602) 255-6000

BAC Home Loans Servicing. L.P. fka Countrywide Home Loans Servicing, L.P.
09-77956

## UNITED STATES BANKRUPTCY COURT

## DISTRICT OF NEVADA

| | |
|---|---|
| In Re: | BK-S-09-29326-bam |
| Joseph R. Esquivel. Jr. and Lori Esquivel | Date: 10/26/2010<br>Time: 1:30 pm |
| Debtors. | Chapter 7 |

## CERTIFICATE OF SERVICE OF RESPONSE TO DEBTOR'S OBJECTION TO PROOF OF CLAIM

1. On ___10/19/2010___ I served the following documents(s):

## RESPONSE TO DEBTOR'S OBJECTION TO PROOF OF CLAIM

2. I served the above-named document(s) by the following means to the persons as listed below:

X  **a. ECF System**

      Dorothy G. Bunce
      bunce@hotpop.com
      Attorney for Debtors

Yvette Weinstein
yweinsteinhsd@earthlink.net
Trustee

**X  b. United States mail, postage fully prepaid:**

Dorothy G. Bunce
2037 Franklin Ave.
Las Vegas. NV 89104
Attorney for Debtors

Joseph R. Esquivel. Jr. and Lori Esquivel
6940 Surrey Ct
Las Vegas. NV  89145
Debtors

Bank Of America
Attn: Managing Agent
4161 Piedmont Parkway
Greensboro, NC 27410
"Via Certified Mail"

□  **c. Personal Service** (List persons and addresses. Attach additional paper if necessary)

I personally delivered the document(s) to the persons at these addresses:

□    1.    For a party represented by an attorney, delivery was made by handing the document(s) to the attorney's office with a clerk or other person in charge. or if no one is charge by leaving the document(s) in a conspicuous place in the office.

**N/A**

□    2.    For a party, delivery was made by handing the document(s) to the party or by leaving the document(s) at the person's dwelling house or usual place of abode with someone of suitable age and discretion residing there.
N/A

□  **d. By direct mail (as opposed to through the ECF System)**

*(List persons and email addresses. Attach additional paper if necessary)*

Based upon the written assignment of the parties to accept service by email or a court order. I caused the document(s) to be sent to the persons at the mail addresses listed below. I did not receive, within a reasonable time after the transmission, any electronic message or other indication that the transmission was unsuccessful.

☐ **e. By fax transmission** *(List persons and fax numbers. Attach additional paper if necessary)*

Based upon the written assignment of the parties to accept service by fax transmission or a court order. I faxed the document(s) to the persons at the fax numbers listed below. No error was reported by the fax machine that I used. A copy of the record of the fax transmission is attached.

☐ **f. By messenger** *(List persons and addresses. Attach additional paper if necessary)*

I served the document(s) by placing them in an envelope or package addressed to the persons at the addresses listed below and providing them to a messenger for service.

**I declare under penalty of perjury that the foregoing is true and correct.**

DATED this 19th day of October, 2010.

By: _____