1  WILDE & ASSOCIATES
2  Gregory L. Wilde, Esq.
   Nevada Bar No. 004417
3  208 South Jones Boulevard
   Las Vegas, Nevada 89107
4  Telephone: 702 258-8200
   Fax: 702 258-8787
5  bk@wildelaw.com,

6  MARK S. BOSCO, ESQ.
   Arizona Bar No. 010167
7  TIFFANY & BOSCO, P.A.
   2525 East Camelback Road, Suite 300
8  Phoenix, Arizona 85016
9  Telephone: (602) 255-6000

10 BAC Home Loans Servicing, L.P. fka Countrywide Home Loans Servicing, L.P.
11 09-77956

   **UNITED STATES BANKRUPTCY COURT**
12 **DISTRICT OF NEVADA**

13
   | In Re: | BK-S-09-29326-bam |
14
   | Joseph R. Esquivel, Jr. and Lori Esquivel, | Chapter 7 |
15
16
   | Debtors. | Date: October 26, 2010 |
17 | | Time: 1:30 p.m. |
18
19

20 **OBJECTION TO MOTION FOR CHANGING SECURED CREDITOR STATUS TO**
21 **UNSECURED CREDITOR STATUS**
22
23 COMES NOW Secured Creditor, BAC HOME LOAN SERVICING, L.P., (hereinafter
24 "Secured Creditor"), by and through its attorney, Gregory L. Wilde of the law firm Wilde &
25 Associates and files this Objection to Motion for Changing Secured Creditor Status to Unsecured
26 Creditor Status stating as follows:

1

I. **INTRODUCTION**

The first two pages of the Debtors' Motion are filled with spurious, irrelevant, and/or unfounded allegations. Secured Creditor responds to only a few.

1. Secured Creditor was under no obligation to attend the Debtors' "Creditors' Meeting conducted at November 16, 2009 and provide Trustee with their proof of claim."

2. It only makes sense that the Debtors' UCC11 [sic] search did not produce any proof of this Secured Creditors' interest. The proper forum to perfect a security interest in real estate is to record a deed of trust with the Clark County Recorder's Office, not the Nevada Secretary of State.

3. Secured Creditor is not sure what is being alleged in paragraph 3. Secured Creditor has properly supplied this Court with certified copies of the Deed of Trust and relevant Assignments. It has also provided a Declaration proving actual possession of the original note.

4. Debtors' allegation in paragraph 4 is completely without merit and undersigned counsel wonders where they received such "information".

5. The R.E.S.P.A. and T.I.L.A. claims are beyond the scope of this claim objection and are also without merit in that Debtors' provide no legal citation or admissible proof of their allegations.

6. The remainder of the allegations on page 2 are of no effect or consequence.

I. **RELEVANT FACTS**

7. On or about October May 3, 2005, debtor purchased the property commonly known as 6940 Surrey Court, Las Vegas, NV 89145, ("subject property") and legally described as:

LOT 6 IN BLOCK 12 OF CHARLESTON RAINBOW UNIT 7B, AS SHOWN BY MAP THEREOF ON FILE IN BOOK 13 OF PLATS, PAGE 51 IN THE OFFICE OF THE ASSESSOR'S PARCEL NO: 138-34-610-006. *See* exhibit "1" attached hereto.

8.  To enable the purchase of the subject property, Debtor Lori Esquivel signed both a Note and Deed of Trust. Attached hereto as exhibit "2" are certified copies of the Deed of Trust and relevant Assignments showing that Secured Creditor is the proper party in interest and has standing. Attached as exhibit "3" is a declaration stating that Secured Creditor's agent, as trustee for foreclosure purposes, is in possession of the original note and that it is held as "bearer paper".

9.  On or about October 14, 2009, Debtors filed the instant action under chapter 7 of the bankruptcy Code.

10. Debtors were discharged on September 27, 2010.

11. Prior to the Debtors' discharge, Secured Creditor had filed two motions for relief but they both were denied because Secured Creditor struggled to satisfactorily show standing to the Court.

12. On May 28, 2010, Debtors filed their Motion for Changing Secured Creditor Status to Unsecured Creditor Status and at a hearing on September 28, 2010, the Court graciously allowed Secured Creditor to file an objection and continued the matter to October 26, 2010. Secured Creditor had not responded to the motion because it was not one regularly recognized and did not cite any procedural basis or contain a notice. The Court is treating the matter as an objection to claim.

II. **LEGAL ANALYSIS**

### 1. Secured Creditor has Standing and Debtors have admitted so

Secured Creditor has met its burden before this Court demonstrating that it is the proper party in interest and has standing. It has perfected its security interest in the subject property by

properly recording the deed of trust and the relevant assignments.  It is also possesses the original note further perfecting its security interest.  See exhibits "2" and "3".

Secured Creditor points out to the Court that the copy of the note attached has the open endorsement on page 2 and is held as "bearer paper" which is a legally recognized interest.

Pursuant to NRS 104.3201 and NRS 104.1201(2)(e) & (u), a note under Nevada law is enforceable by the bearer, when endorsed in blank.

Furthermore, NRS 104.3301 provides in part:

> **Person entitled to enforce instrument.**
> 1. "Person entitled to enforce" an instrument means:
>    (a) The holder of the instrument;

*See also, In re Hill*, 08-bk-16161-EWH, 2009 WL 1956174 at 2 (Bankr. D. Ariz.,July 6, 2009) (because the endorsement does not identify whom the Note is payable, it is endorsed in blank and when transferred, the transferee becomes the holder simply by possession.).    The subject note is endorsed in blank and as such, is bearer paper and enforceable by the Secured Creditor.

In addition, the Debtors have admitted by their conduct and in their pleadings that Secured Creditor is the proper party in interest and has standing.   The Court should take notice of Debtors' schedules.  First, Debtors' **Schedule A – Real Property** lists the subject property as Debtors' residence.  Additionally, Debtors list the property as subject to a security claim in the amount of $278,578.00.   Additionally, Debtors' **Schedule D – Creditors Holding Secured Claims** lists the subject property as secured by creditors Bank of America, as holder of a "Second Deed of Trust," and Countrywide Home Lending  ("Secured Creditor's predecessor") as the creditor holding the "First Deed of Trust." *See* exhibit "4" attached hereto.  Moreover, Debtors do not list Secured Creditor on **Schedule F – Creditors Holding Unsecured Nonpriority Claims.** *See* exhibit "5" attached hereto.  Finally, Debtors' **Chapter 7 Individual**

4

**Debtor's Statement of Intention** claims an intent to reaffirm the debt on the subject property. *See* exhibit "6" attached hereto.

2. **New Jersey and California Law are not Relevant**

Citing New Jersey State law and California State law are not binding on this Court and should not be relied upon for any guidance. The cites are misleading, inappropriate and should be stricken.

Debtors cite one ninth (9th) circuit case and Secured Creditor agrees with the citation and has complied with the same by actually possessing the original note as previously demonstrated.

**III. CONCLUSION**

This Court commented to the Debtors many months ago that their small victory "would be short lived". While it took some time for Secured Creditor to meet the Court's request for proper proof of standing, it has done so. On the other hand, Debtors have failed to provide any admissible evidence that there is no debt owed, that a lien does not exist, or that they are otherwise entitled to a free house. They have not come before this Court with clean hands and the Court should end this controversy at the upcoming hearing by denying their claims with prejudice. They have essentially lived in the home free of charge for a number of months.

WHEREFORE, Secured Creditor asks that this Court deny Debtors' requests in their entirety, award attorneys fees and costs incurred by the Secured Creditor, and order any further relief the Court deems equitable and reasonable.

DATED this 19th day of October, 2010.

WILDE & ASSOCIATES

By:_____

GREGORY L. WILDE, ESQ.
Attorney for Secured Creditor

5

# Exhibit "1"

RECORDING REQUESTED BY:
Fidelity National Title Agency of Nevada
Escrow No. 05-181703-LD
Title Order No. 00181703

When Recorded Mail Document
and Tax Statement To:
Ms. Lori Herda
6940 SurreyCGourt
Las Vegas, NV 89145

RPTT: ~~1,555.50~~ /537.65
APN: 138-34-610-006

20050525-0003790

Fee: $17.00    RPTT: $1,537.65
N/C Fee:   $0.00

05/25/2005          14:16:26
T20050097576

Requestor:
    FIDELITY NATIONAL TITLE

Frances Deane                  5U0
Clark County Recorder      Pgs: 4

(4)

## GRANT, BARGAIN, SALE DEED

THIS INDENTURE WITNESSETH: That **Joseph L. Mistretta and Laura Mistretta, husband and wife as Joint Tenants**

FOR A VALUABLE CONSIDERATION, receipt of which is hereby acknowledged, do(es) hereby Grant, Bargain, Sell and

Convey to **Lori Herda, A Single Woman** a married woman as her sole and separate property,
all that real property situated in the Clark County, State of Nevada, bounded and described as follows:

SEE EXHIBIT ONE ATTACHED HERETO AND MADE A PART HEREOF

SUBJECT TO:  1.    Taxes for the fiscal year 2005-2006
             2.    Covenants, Conditions, Reservations, Rights, Rights of Way and Easements
                   now of record.

Together with all and singular tenements, hereditaments and appurtenances thereunto belonging or in anywise appertaining.

DATED:  May 3, 2005

STATE OF NEVADA
COUNTY OF ____CLARK____

This instrument was acknowledged before me
on ____5-12-05____
by ____JOSEPH  L  MISTRETTA____
   ____& LAURA  MISTRETTA____
Signature ____Mary Lynn Wheat____
MARY LYNN WHEAT
My Commission Expires: ____9-16-08____    Notary Public

____Joseph L. Mistretta____
Joseph L. Mistretta

____Laura Mistretta____
Laura Mistretta

## EXHIBIT "ONE"

Lot 6 in Block 12 of Charleston Rainbow Unit 7B, as shown by map thereof on file in Book 13 of Plats, Page 51 in the Office of the County Recorder of Clark County, Nevada.

Assessor's Parcel No: 138-34-610-006

# STATE OF NEVADA
# DECLARATION OF VALUE

1. **Assessor Parcel Number(s)**
   a) 138-34-610-006
   b) _____
   c) _____
   d) _____

2. **Type of Property:**
   a) ☐ Vacant Land   b) ☒ Single Fam. Res.
   c) ☐ Condo/Twnhse   d) ☐ 2 - 4 Plex
   e) ☐ Apt. Bldg.   f) ☐ Comm'l/Ind'l
   g) ☐ Agricultural   h) ☐ Mobile Home
      ☐ Other _____

| FOR RECORDER'S OPTIONAL USE ONLY |
| --- |
| Document/Instrument #: _____ |
| Book: _____ Page: _____ |
| Date of Recording: _____ |
| Notes: _____ |

3. **Total Value/Sales Price of the Property**          $ ~~305,000.00~~ 301, 500. 00
   Deed in Lieu of Foreclosure Only (Value of Property) ( _____ )
   **Transfer Tax Value:**                              $ ~~305,000.00~~ 301, 500. 00
   **Real Property Transfer Tax Due**                   $ ~~1,555.50~~ 1537. 65

4. **If Exemption Claimed:**
   a. Transfer Tax Exemption per NRS 375.090. Section  0
   b. Explain Reason for Exemption: _____

5. **Partial Interest: Percentage being transferred:** 100%

   The undersigned declares and acknowledges, under penalty of perjury, pursuant to NRS 375.060 and NRS 375.110, that the information provided is correct to the best of their information and belief, and can be supported by documentation if called upon to substantiate the information provided herein. Furthermore, the parties agree that disallowance of any claimed exemption, or other determination of additional tax due, may result in a penalty of 10% of the tax due plus interest at 1% per month. Pursuant to NRS 375.030, the Buyer and Seller shall be jointly and severally liable for any additional amount owed.

Signature _Joseph L. Mistretta_          Capacity  SELLER

Signature _____          Capacity _____

| **SELLER (GRANTOR) INFORMATION**<br>(REQUIRED) | **BUYER (GRANTEE) INFORMATION**<br>(REQUIRED) |
| --- | --- |
| Print Name:  Joseph L. Mistretta and<br>Laura Mistretta | Print Name:  Lori Herda |
| Address:  6940 Surrey Court<br>City, State, Zip: Las Vegas, NV 89145 | Address:  102 Parker Ranch Dr.<br>City, State, Zip: Henderson, NV 89012 |

**COMPANY/PERSON REQUESTING RECORDING (required if not seller or buyer)**
Print Name: Fidelity National Title Agency of Nevada          Escrow #: 05-181703-LD
Address: 2850 Horizon Ridge Pkwy., Suite 120
City, State and Zip: Henderson, NV  89052
          (AS A PUBLIC RECORD THIS FORM MAY BE RECORDED/MICROFILMED)



STATE OF NEVADA
DECLARATION OF VALUE FORM

1. Assessor Parcel Number(s)
   a) _138-34-610-006_
   b) _____
   c) _____
   d) _____

2. Type of Property:
   a) ☐ Vacant Land        b) ☒ Single Fam. Res.
   c) ☐ Condo/Twnhse       d) ☐ 2-4 Plex
   e) ☐ Apt. Bldg          f) ☐ Comm'l/Ind'l
   g) ☐ Agricultural       h) ☐ Mobile Home
      ☐ Other _____

   | FOR RECORDER'S OPTIONAL USE ONLY |
   | Book:_____ Page:_____ |
   | Date of Recording:_____ |
   | Notes: |

3. Total Value/Sales Price of Property                          $ _301,500.00_
   Deed in Foreclosure Only (value of property)               ( _____ )
   Transfer Tax Value:                                          $ _301,500.00_
   Real Property Transfer Tax Due                               $ _1537.65_

4. **If Exemption Claimed:**
   a. Transfer Tax Exemption per NRS 375.090, Section _____
   b. Explain Reason for Exemption: _____

5. Partial Interest: Percentage being transferred: _100_ %

   The undersigned declares and acknowledges, under penalty of perjury, pursuant to
   NRS 375.060 and NRS 375.110, that the information provided is correct to the best of their
   information and belief, and can be supported by documentation if called upon to substantiate the
   information provided herein. Furthermore, the parties agree that disallowance of any claimed
   exemption, or other determination of additional tax due, may result in a penalty of 10% of the tax
   due plus interest at 1% per month. Pursuant to NRS 375.030, the Buyer and Seller shall be
   jointly and severally liable for any additional amount owed.

   Signature _____    Capacity _____
   Signature _Lori Herda_                    Capacity _GRANTEE_

   | **SELLER (GRANTOR) INFORMATION** | **BUYER (GRANTEE) INFORMATION** |
   | **(REQUIRED)** | **(REQUIRED)** |
   | Print Name: _Joseph L. Mistretta_ | Print Name: _Lori Herda_ |
   | Address: _6940 Surrey Court_ | Address: _102 Parker Ranch Dr._ |
   | City: _Las Vegas_ | City: _Henderson_ |
   | State: _NV_  Zip: _89145_ | State: _NV_  Zip: _89012_ |

   **COMPANY/PERSON REQUESTING RECORDING (required if not seller or buyer)**
   Print Name: _Fidelity National Title_     Escrow #: _05-181703-LD_
   Address: _2810 W. Horizon Ridge Pkwy #120_
   City: _Henderson_            State: _NV_   Zip: _89052_

   **AN ADDITIONAL RECORDING FEE OF $1.00 WILL APPLY FOR EACH DECLARATION
   OF VALUE FORM PRESENTED TO CLARK COUNTY, EFFECTIVE JUNE 1, 2004.**

# Exhibit "2"

20050525-0003792

Assessor's Parcel Number:
13834610006
After Recording Return To:
COUNTRYWIDE HOME LOANS, INC.

MS SV-79 DOCUMENT PROCESSING
P.O.Box 10423
Van Nuys, CA 91410-0423
Prepared By:
JANELL HAAS
~~Recording Requested By:~~
K. POCHY

COUNTRYWIDE HOME LOANS, INC.

650 WHITE DRIVE, STE 280
LAS VEGAS
NV 89119

Fee: $29.00
N/C Fee: $0.00

05/25/2005            14:16:26
T20050097576
Requestor:
FIDELITY NATIONAL TITLE

Frances Deane                SUO
Clark County Recorder    Pgs: 16

*181703-LD*

——————————[Space Above This Line For Recording Data]——————————

0518181703                    0009713537405005
[Escrow/Closing #]            [Doc ID #]

# DEED OF TRUST
MIN 1000157-0005020090-2

**DEFINITIONS**

Words used in multiple sections of this document are defined below and other words are defined in Sections 3, 11, 13, 18, 20 and 21. Certain rules regarding the usage of words used in this document are also provided in Section 16.

(A) "Security Instrument" means this document, which is dated  MAY 03, 2005                    ,
together with all Riders to this document.

NEVADA-Single Family- Fannie Mae/Freddie Mac UNIFORM INSTRUMENT WITH MERS

                         Page 1 of 16

VMP®-6A(NV) (0307) CHL (07/03)(d)                    Initials: _____
                    VMP Mortgage Solutions - (800)521-7291            Form 3029  1/01





* 2 3 9 9 1 *            * 0 9 7 1 3 5 3 7 4 0 0 0 0 0 1 0 0 6 A *

DOC ID #: 0009713537405005

**(B) "Borrower" is**
LORI HERDA, A MARRIED WOMAN AS HER SOLE AND SEPARATE PROPERTY

Borrower is the trustor under this Security Instrument.
**(C) "Lender" is**
COUNTRYWIDE HOME LOANS, INC.

Lender is a
CORPORATION

organized and existing under the laws of  NEW YORK                                   . Lender's address is
P.O. Box 10219
Van Nuys, CA 91410-0219
**(D) "Trustee" is**
CTC REAL ESTATE SERVICES

400 COUNTRYWIDE WAY, MSN SV-88, SIMI VALLEY, CA 93065 , ,

**(E) "MERS"** is Mortgage Electronic Registration Systems, Inc. MERS is a separate corporation that is acting
solely as a nominee for Lender and Lender's successors and assigns. **MERS is the beneficiary under this
Security Instrument.** MERS is organized and existing under the laws of Delaware, and has an address and
telephone number of P.O. Box 2026, Flint, MI 48501-2026, tel. (888) 679-MERS.
**(F) "Note"** means the promissory note signed by Borrower and dated  MAY 03, 2005
The Note states that Borrower owes Lender
TWO HUNDRED FIVE THOUSAND and 00/100

Dollars (U.S. $ 205,000.00          ) plus interest. Borrower has promised to pay this debt in regular
Periodic Payments and to pay the debt in full not later than    JUNE 01, 2035              .
**(G) "Property"** means the property that is described below under the heading "Transfer of Rights in the
Property."
**(H) "Loan"** means the debt evidenced by the Note, plus interest, any prepayment charges and late charges
due under the Note, and all sums due under this Security Instrument, plus interest.
**(I) "Riders"** means all Riders to this Security Instrument that are executed by Borrower. The following
Riders are to be executed by Borrower [check box as applicable]:

☐ Adjustable Rate Rider   ☐ Condominium Rider          ☐ Second Home Rider
☐ Balloon Rider           ☐ Planned Unit Development Rider  ☐ 1-4 Family Rider
☐ VA Rider                ☐ Biweekly Payment Rider     ☐ Other(s) [specify]

**(J) "Applicable Law"** means all controlling applicable federal, state and local statutes, regulations,
ordinances and administrative rules and orders (that have the effect of law) as well as all applicable final,
non-appealable judicial opinions.

Initials: _X·li_

VMP -6A(NV) (0307)  CHL (07/03)          Page 2 of 16                      Form 3029 1/01

DOC ID #: 0009713537405005

(K) "Community Association Dues, Fees, and Assessments" means all dues, fees, assessments and other charges that are imposed on Borrower or the Property by a condominium association, homeowners association or similar organization.

(L) "Electronic Funds Transfer" means any transfer of funds, other than a transaction originated by check, draft, or similar paper instrument, which is initiated through an electronic terminal, telephonic instrument, computer, or magnetic tape so as to order, instruct, or authorize a financial institution to debit or credit an account. Such term includes, but is not limited to, point-of-sale transfers, automated teller machine transactions, transfers initiated by telephone, wire transfers, and automated clearinghouse transfers.

(M) "Escrow Items" means those items that are described in Section 3.

(N) "Miscellaneous Proceeds" means any compensation, settlement, award of damages, or proceeds paid by any third party (other than insurance proceeds paid under the coverages described in Section 5) for: (i) damage to, or destruction of, the Property; (ii) condemnation or other taking of all or any part of the Property; (iii) conveyance in lieu of condemnation; or (iv) misrepresentations of, or omissions as to, the value and/or condition of the Property.

(O) "Mortgage Insurance" means insurance protecting Lender against the nonpayment of, or default on, the Loan.

(P) "Periodic Payment" means the regularly scheduled amount due for (i) principal and interest under the Note, plus (ii) any amounts under Section 3 of this Security Instrument.

(Q) "RESPA" means the Real Estate Settlement Procedures Act (12 U.S.C. Section 2601 et seq.) and its implementing regulation, Regulation X (24 C.F.R. Part 3500), as they might be amended from time to time, or any additional or successor legislation or regulation that governs the same subject matter. As used in this Security Instrument, "RESPA" refers to all requirements and restrictions that are imposed in regard to a "federally related mortgage loan" even if the Loan does not qualify as a "federally related mortgage loan" under RESPA.

(R) "Successor in Interest of Borrower" means any party that has taken title to the Property, whether or not that party has assumed Borrower's obligations under the Note and/or this Security Instrument.

TRANSFER OF RIGHTS IN THE PROPERTY

The beneficiary of this Security Instrument is MERS (solely as nominee for Lender and Lender's successors and assigns) and the successors and assigns of MERS. This Security Instrument secures to Lender: (i) the repayment of the Loan, and all renewals, extensions and modifications of the Note; and (ii) the performance of Borrower's covenants and agreements under this Security Instrument and the Note. For this purpose, Borrower

DOC ID #: 0009713537405005

irrevocably grants and conveys to Trustee, in trust, with power of sale, the following described property
located in the  COUNTY                                                      of

[Type of Recording Jurisdiction]

CLARK                                                      :

[Name of Recording Jurisdiction]

LOT 6 IN BLOCK 12 OF CHARLESTON RAINBOW UNIT 7B, AS SHOWN BY
MAP THEREOF ON FILE IN BOOK 13 OF PLATS, PAGE 51 IN THE
OFFICE OF THE COUNTY RECORDER OF CLARK COUNTY, NEVADA.
ASSESSOR'S PARCEL NO: 138-34-610-006

which currently has the address of
6940 SURREY COURT, LAS VEGAS

[Street/City]

Nevada        89145        ("Property Address"):
[Zip Code]

TOGETHER WITH all the improvements now or hereafter erected on the property, and all easements,
appurtenances, and fixtures now or hereafter a part of the property. All replacements and additions shall also
be covered by this Security Instrument. All of the foregoing is referred to in this Security Instrument as the
"Property." Borrower understands and agrees that MERS holds only legal title to the interests granted by
Borrower in this Security Instrument, but, if necessary to comply with law or custom, MERS (as nominee for
Lender and Lender's successors and assigns) has the right: to exercise any or all of those interests, including,
but not limited to, the right to foreclose and sell the Property; and to take any action required of Lender
including, but not limited to, releasing and canceling this Security Instrument.

BORROWER COVENANTS that Borrower is lawfully seised of the estate hereby conveyed and has the
right to grant and convey the Property and that the Property is unencumbered, except for encumbrances of
record. Borrower warrants and will defend generally the title to the Property against all claims and demands,
subject to any encumbrances of record.

Initials: _____

-6A(NV) (0307)  CHL (07/03)        Page 4 of 16                    Form 3029  1/01

DOC ID #: 0009713537405005

THIS SECURITY INSTRUMENT combines uniform covenants for national use and non-uniform covenants with limited variations by jurisdiction to constitute a uniform security instrument covering real property.

UNIFORM COVENANTS. Borrower and Lender covenant and agree as follows:

**1. Payment of Principal, Interest, Escrow Items, Prepayment Charges, and Late Charges.** Borrower shall pay when due the principal of, and interest on, the debt evidenced by the Note and any prepayment charges and late charges due under the Note. Borrower shall also pay funds for Escrow Items pursuant to Section 3. Payments due under the Note and this Security Instrument shall be made in U.S. currency. However, if any check or other instrument received by Lender as payment under the Note or this Security Instrument is returned to Lender unpaid, Lender may require that any or all subsequent payments due under the Note and this Security Instrument be made in one or more of the following forms, as selected by Lender: (a) cash; (b) money order; (c) certified check, bank check, treasurer's check or cashier's check, provided any such check is drawn upon an institution whose deposits are insured by a federal agency, instrumentality, or entity; or (d) Electronic Funds Transfer.

Payments are deemed received by Lender when received at the location designated in the Note or at such other location as may be designated by Lender in accordance with the notice provisions in Section 15. Lender may return any payment or partial payment if the payment or partial payments are insufficient to bring the Loan current. Lender may accept any payment or partial payment insufficient to bring the Loan current, without waiver of any rights hereunder or prejudice to its rights to refuse such payment or partial payments in the future, but Lender is not obligated to apply such payments at the time such payments are accepted. If each Periodic Payment is applied as of its scheduled due date, then Lender need not pay interest on unapplied funds. Lender may hold such unapplied funds until Borrower makes payment to bring the Loan current. If Borrower does not do so within a reasonable period of time, Lender shall either apply such funds or return them to Borrower. If not applied earlier, such funds will be applied to the outstanding principal balance under the Note immediately prior to foreclosure. No offset or claim which Borrower might have now or in the future against Lender shall relieve Borrower from making payments due under the Note and this Security Instrument or performing the covenants and agreements secured by this Security Instrument.

**2. Application of Payments or Proceeds.** Except as otherwise described in this Section 2, all payments accepted and applied by Lender shall be applied in the following order of priority: (a) interest due under the Note; (b) principal due under the Note; (c) amounts due under Section 3. Such payments shall be applied to each Periodic Payment in the order in which it became due. Any remaining amounts shall be applied first to late charges, second to any other amounts due under this Security Instrument, and then to reduce the principal balance of the Note.

If Lender receives a payment from Borrower for a delinquent Periodic Payment which includes a sufficient amount to pay any late charge due, the payment may be applied to the delinquent payment and the late charge. If more than one Periodic Payment is outstanding, Lender may apply any payment received from Borrower to the repayment of the Periodic Payments if, and to the extent that, each payment can be paid in full. To the extent that any excess exists after the payment is applied to the full payment of one or more Periodic Payments, such excess may be applied to any late charges due. Voluntary prepayments shall be applied first to any prepayment charges and then as described in the Note.

Any application of payments, insurance proceeds, or Miscellaneous Proceeds to principal due under the Note shall not extend or postpone the due date, or change the amount, of the Periodic Payments.

**3. Funds for Escrow Items.** Borrower shall pay to Lender on the day Periodic Payments are due under the Note, until the Note is paid in full, a sum (the "Funds") to provide for payment of amounts due for: (a) taxes and assessments and other items which can attain priority over this Security Instrument as a lien or encumbrance on the Property; (b) leasehold payments or ground rents on the Property, if any; (c) premiums

Initials: _____

-6A(NV) (0307)   CHL (07/03)          Page 5 of 16                    Form 3029 1/01

DOC ID #: 0009713537405005

any and all insurance required by Lender under Section 5; and (d) Mortgage Insurance premiums, if any, or any sums payable by Borrower to Lender in lieu of the payment of Mortgage Insurance premiums in accordance with the provisions of Section 10. These items are called "Escrow Items." At origination or at any time during the term of the Loan, Lender may require that Community Association Dues, Fees, and Assessments, if any, be escrowed by Borrower, and such dues, fees and assessments shall be an Escrow Item. Borrower shall promptly furnish to Lender all notices of amounts to be paid under this Section. Borrower shall pay Lender the Funds for Escrow Items unless Lender waives Borrower's obligation to pay the Funds for any or all Escrow Items. Lender may waive Borrower's obligation to pay to Lender Funds for any or all Escrow Items at any time. Any such waiver may only be in writing. In the event of such waiver, Borrower shall pay directly, when and where payable, the amounts due for any Escrow Items for which payment of Funds has been waived by Lender and, if Lender requires, shall furnish to Lender receipts evidencing such payment within such time period as Lender may require. Borrower's obligation to make such payments and to provide receipts shall for all purposes be deemed to be a covenant and agreement contained in this Security Instrument, as the phrase "covenant and agreement" is used in Section 9. If Borrower is obligated to pay Escrow Items directly, pursuant to a waiver, and Borrower fails to pay the amount due for an Escrow Item, Lender may exercise its rights under Section 9 and pay such amount and Borrower shall then be obligated under Section 9 to repay to Lender any such amount. Lender may revoke the waiver as to any or all Escrow Items at any time by a notice given in accordance with Section 15 and, upon such revocation, Borrower shall pay to Lender all Funds, and in such amounts, that are then required under this Section 3.

Lender may, at any time, collect and hold Funds in an amount (a) sufficient to permit Lender to apply the Funds at the time specified under RESPA, and (b) not to exceed the maximum amount a lender can require under RESPA. Lender shall estimate the amount of Funds due on the basis of current data and reasonable estimates of expenditures of future Escrow Items or otherwise in accordance with Applicable Law.

The Funds shall be held in an institution whose deposits are insured by a federal agency, instrumentality, or entity (including Lender, if Lender is an institution whose deposits are so insured) or in any Federal Home Loan Bank. Lender shall apply the Funds to pay the Escrow Items no later than the time specified under RESPA. Lender shall not charge Borrower for holding and applying the Funds, annually analyzing the escrow account, or verifying the Escrow Items, unless Lender pays Borrower interest on the Funds and Applicable Law permits Lender to make such a charge. Unless an agreement is made in writing or Applicable Law requires interest to be paid on the Funds, Lender shall not be required to pay Borrower any interest or earnings on the Funds. Borrower and Lender can agree in writing, however, that interest shall be paid on the Funds. Lender shall give to Borrower, without charge, an annual accounting of the Funds as required by RESPA.

If there is a surplus of Funds held in escrow, as defined under RESPA, Lender shall account to Borrower for the excess funds in accordance with RESPA. If there is a shortage of Funds held in escrow, as defined under RESPA, Lender shall notify Borrower as required by RESPA, and Borrower shall pay to Lender the amount necessary to make up the shortage in accordance with RESPA, but in no more than 12 monthly payments. If there is a deficiency of Funds held in escrow, as defined under RESPA, Lender shall notify Borrower as required by RESPA, and Borrower shall pay to Lender the amount necessary to make up the deficiency in accordance with RESPA, but in no more than 12 monthly payments.

Upon payment in full of all sums secured by this Security Instrument, Lender shall promptly refund to Borrower any Funds held by Lender.

4. Charges; Liens. Borrower shall pay all taxes, assessments, charges, fines, and impositions attributable to the Property which can attain priority over this Security Instrument, leasehold payments or ground rents on the Property, if any, and Community Association Dues, Fees, and Assessments, if any. To the extent that these items are Escrow Items, Borrower shall pay them in the manner provided in Section 3.

Borrower shall promptly discharge any lien which has priority over this Security Instrument unless Borrower: (a) agrees in writing to the payment of the obligation secured by the lien in a manner acceptable to Lender, but only so long as Borrower is performing such agreement; (b) contests the lien in good faith by, or

DOC ID #: 0009713537405005

defends against enforcement of the lien in, legal proceedings which in Lender's opinion operate to prevent the enforcement of the lien while those proceedings are pending, but only until such proceedings are concluded; or (c) secures from the holder of the lien an agreement satisfactory to Lender subordinating the lien to this Security Instrument. If Lender determines that any part of the Property is subject to a lien which can attain priority over this Security Instrument, Lender may give Borrower a notice identifying the lien. Within 10 days of the date on which that notice is given, Borrower shall satisfy the lien or take one or more of the actions set forth above in this Section 4.

Lender may require Borrower to pay a one-time charge for a real estate tax verification and/or reporting service used by Lender in connection with this Loan.

**5. Property Insurance.** Borrower shall keep the improvements now existing or hereafter erected on the Property insured against loss by fire, hazards included within the term "extended coverage," and any other hazards including, but not limited to, earthquakes and floods, for which Lender requires insurance. This insurance shall be maintained in the amounts (including deductible levels) and for the periods that Lender requires. What Lender requires pursuant to the preceding sentences can change during the term of the Loan. The insurance carrier providing the insurance shall be chosen by Borrower subject to Lender's right to disapprove Borrower's choice, which right shall not be exercised unreasonably. Lender may require Borrower to pay, in connection with this Loan, either: (a) a one-time charge for flood zone determination, certification and tracking services; or (b) a one-time charge for flood zone determination and certification services and subsequent charges each time remappings or similar changes occur which reasonably might affect such determination or certification. Borrower shall also be responsible for the payment of any fees imposed by the Federal Emergency Management Agency in connection with the review of any flood zone determination resulting from an objection by Borrower.

If Borrower fails to maintain any of the coverages described above, Lender may obtain insurance coverage, at Lender's option and Borrower's expense. Lender is under no obligation to purchase any particular type or amount of coverage. Therefore, such coverage shall cover Lender, but might or might not protect Borrower, Borrower's equity in the Property, or the contents of the Property, against any risk, hazard or liability and might provide greater or lesser coverage than was previously in effect. Borrower acknowledges that the cost of the insurance coverage so obtained might significantly exceed the cost of insurance that Borrower could have obtained. Any amounts disbursed by Lender under this Section 5 shall become additional debt of Borrower secured by this Security Instrument. These amounts shall bear interest at the Note rate from the date of disbursement and shall be payable, with such interest, upon notice from Lender to Borrower requesting payment.

All insurance policies required by Lender and renewals of such policies shall be subject to Lender's right to disapprove such policies, shall include a standard mortgage clause, and shall name Lender as mortgagee and/or as an additional loss payee. Lender shall have the right to hold the policies and renewal certificates. If Lender requires, Borrower shall promptly give to Lender all receipts of paid premiums and renewal notices. If Borrower obtains any form of insurance coverage, not otherwise required by Lender, for damage to, or destruction of, the Property, such policy shall include a standard mortgage clause and shall name Lender as mortgagee and/or as an additional loss payee.

In the event of loss, Borrower shall give prompt notice to the insurance carrier and Lender. Lender may make proof of loss if not made promptly by Borrower. Unless Lender and Borrower otherwise agree in writing, any insurance proceeds, whether or not the underlying insurance was required by Lender, shall be applied to restoration or repair of the Property, if the restoration or repair is economically feasible and Lender's security is not lessened. During such repair and restoration period, Lender shall have the right to hold such insurance proceeds until Lender has had an opportunity to inspect such Property to ensure the work has been completed to Lender's satisfaction, provided that such inspection shall be undertaken promptly. Lender may disburse proceeds for the repairs and restoration in a single payment or in a series of progress payments as the work is completed. Unless an agreement is made in writing or Applicable Law requires interest to be

Initials: ___

DOC ID #: 0009713537405005

paid on such insurance proceeds, Lender shall not be required to pay Borrower any interest or earnings on such proceeds. Fees for public adjusters, or other third parties, retained by Borrower shall not be paid out of the insurance proceeds and shall be the sole obligation of Borrower. If the restoration or repair is not economically feasible or Lender's security would be lessened, the insurance proceeds shall be applied to the sums secured by this Security Instrument, whether or not then due, with the excess, if any, paid to Borrower. Such insurance proceeds shall be applied in the order provided for in Section 2.

If Borrower abandons the Property, Lender may file, negotiate and settle any available insurance claim and related matters. If Borrower does not respond within 30 days to a notice from Lender that the insurance carrier has offered to settle a claim, then Lender may negotiate and settle the claim. The 30-day period will begin when the notice is given. In either event, or if Lender acquires the Property under Section 22 or otherwise, Borrower hereby assigns to Lender (a) Borrower's rights to any insurance proceeds in an amount not to exceed the amounts unpaid under the Note or this Security Instrument, and (b) any other of Borrower's rights (other than the right to any refund of unearned premiums paid by Borrower) under all insurance policies covering the Property, insofar as such rights are applicable to the coverage of the Property. Lender may use the insurance proceeds either to repair or restore the Property or to pay amounts unpaid under the Note or this Security Instrument, whether or not then due.

6. Occupancy. Borrower shall occupy, establish, and use the Property as Borrower's principal residence within 60 days after the execution of this Security Instrument and shall continue to occupy the Property as Borrower's principal residence for at least one year after the date of occupancy, unless Lender otherwise agrees in writing, which consent shall not be unreasonably withheld, or unless extenuating circumstances exist which are beyond Borrower's control.

7. Preservation, Maintenance and Protection of the Property; Inspections. Borrower shall not destroy, damage or impair the Property, allow the Property to deteriorate or commit waste on the Property. Whether or not Borrower is residing in the Property, Borrower shall maintain the Property in order to prevent the Property from deteriorating or decreasing in value due to its condition. Unless it is determined pursuant to Section 5 that repair or restoration is not economically feasible, Borrower shall promptly repair the Property if damaged to avoid further deterioration or damage. If insurance or condemnation proceeds are paid in connection with damage to, or the taking of, the Property, Borrower shall be responsible for repairing or restoring the Property only if Lender has released proceeds for such purposes. Lender may disburse proceeds for the repairs and restoration in a single payment or in a series of progress payments as the work is completed. If the insurance or condemnation proceeds are not sufficient to repair or restore the Property, Borrower is not relieved of Borrower's obligation for the completion of such repair or restoration.

Lender or its agent may make reasonable entries upon and inspections of the Property. If it has reasonable cause, Lender may inspect the interior of the improvements on the Property. Lender shall give Borrower notice at the time of or prior to such an interior inspection specifying such reasonable cause.

8. Borrower's Loan Application. Borrower shall be in default if, during the loan application process, Borrower or any persons or entities acting at the direction of Borrower or with Borrower's knowledge or consent gave materially false, misleading, or inaccurate information or statements to Lender (or failed to provide Lender with material information) in connection with the Loan. Material representations include, but are not limited to, representations concerning Borrower's occupancy of the Property as Borrower's principal residence.

9. Protection of Lender's Interest in the Property and Rights Under this Security Instrument. If (a) Borrower fails to perform the covenants and agreements contained in this Security Instrument, (b) there is a legal proceeding that might significantly affect Lender's interest in the Property and/or rights under this Security Instrument (such as a proceeding in bankruptcy, probate, for condemnation or forfeiture, for enforcement of a lien which may attain priority over this Security Instrument or to enforce laws or regulations), or (c) Borrower has abandoned the Property, then Lender may do and pay for whatever is

Initials: _____

DOC ID #: 0009713537405005

reasonable or appropriate to protect Lender's interest in the Property and rights under this Security Instrument, including protecting and/or assessing the value of the Property, and securing and/or repairing the Property. Lender's actions can include, but are not limited to: (a) paying any sums secured by a lien which has priority over this Security Instrument; (b) appearing in court; and (c) paying reasonable attorneys' fees to protect its interest in the Property and/or rights under this Security Instrument, including its secured position in a bankruptcy proceeding. Securing the Property includes, but is not limited to, entering the Property to make repairs, change locks, replace or board up doors and windows, drain water from pipes, eliminate building or other code violations or dangerous conditions, and have utilities turned on or off. Although Lender may take action under this Section 9, Lender does not have to do so and is not under any duty or obligation to do so. It is agreed that Lender incurs no liability for not taking any or all actions authorized under this Section 9.

Any amounts disbursed by Lender under this Section 9 shall become additional debt of Borrower secured by this Security Instrument. These amounts shall bear interest at the Note rate from the date of disbursement and shall be payable, with such interest, upon notice from Lender to Borrower requesting payment.

If this Security Instrument is on a leasehold, Borrower shall comply with all the provisions of the lease. If Borrower acquires fee title to the Property, the leasehold and the fee title shall not merge unless Lender agrees to the merger in writing.

**10. Mortgage Insurance.** If Lender required Mortgage Insurance as a condition of making the Loan, Borrower shall pay the premiums required to maintain the Mortgage Insurance in effect. If, for any reason, the Mortgage Insurance coverage required by Lender ceases to be available from the mortgage insurer that previously provided such insurance and Borrower was required to make separately designated payments toward the premiums for Mortgage Insurance, Borrower shall pay the premiums required to obtain coverage substantially equivalent to the Mortgage Insurance previously in effect, at a cost substantially equivalent to the cost to Borrower of the Mortgage Insurance previously in effect, from an alternate mortgage insurer selected by Lender. If substantially equivalent Mortgage Insurance coverage is not available, Borrower shall continue to pay to Lender the amount of the separately designated payments that were due when the insurance coverage ceased to be in effect. Lender will accept, use and retain these payments as a non-refundable loss reserve in lieu of Mortgage Insurance. Such loss reserve shall be non-refundable, notwithstanding the fact that the Loan is ultimately paid in full, and Lender shall not be required to pay Borrower any interest or earnings on such loss reserve. Lender can no longer require loss reserve payments if Mortgage Insurance coverage (in the amount and for the period that Lender requires) provided by an insurer selected by Lender again becomes available, is obtained, and Lender requires separately designated payments toward the premiums for Mortgage Insurance. If Lender required Mortgage Insurance as a condition of making the Loan and Borrower was required to make separately designated payments toward the premiums for Mortgage Insurance, Borrower shall pay the premiums required to maintain Mortgage Insurance in effect, or to provide a non-refundable loss reserve, until Lender's requirement for Mortgage Insurance ends in accordance with any written agreement between Borrower and Lender providing for such termination or until termination is required by Applicable Law. Nothing in this Section 10 affects Borrower's obligation to pay interest at the rate provided in the Note.

Mortgage Insurance reimburses Lender (or any entity that purchases the Note) for certain losses it may incur if Borrower does not repay the Loan as agreed. Borrower is not a party to the Mortgage Insurance.

Mortgage insurers evaluate their total risk on all such insurance in force from time to time, and may enter into agreements with other parties that share or modify their risk, or reduce losses. These agreements are on terms and conditions that are satisfactory to the mortgage insurer and the other party (or parties) to these agreements. These agreements may require the mortgage insurer to make payments using any source of funds that the mortgage insurer may have available (which may include funds obtained from Mortgage Insurance premiums).

As a result of these agreements, Lender, any purchaser of the Note, another insurer, any reinsurer, any other entity, or any affiliate of any of the foregoing, may receive (directly or indirectly) amounts that derive

Initials: _____

DOC ID #: 0009713537405005

from (or might be characterized as) a portion of Borrower's payments for Mortgage Insurance, in exchange for sharing or modifying the mortgage insurer's risk, or reducing losses. If such agreement provides that an affiliate of Lender takes a share of the insurer's risk in exchange for a share of the premiums paid to the insurer, the arrangement is often termed "captive reinsurance." Further:

(a) Any such agreements will not affect the amounts that Borrower has agreed to pay for Mortgage Insurance, or any other terms of the Loan. Such agreements will not increase the amount Borrower will owe for Mortgage Insurance, and they will not entitle Borrower to any refund.

(b) Any such agreements will not affect the rights Borrower has - if any - with respect to the Mortgage Insurance under the Homeowners Protection Act of 1998 or any other law. These rights may include the right to receive certain disclosures, to request and obtain cancellation of the Mortgage Insurance, to have the Mortgage Insurance terminated automatically, and/or to receive a refund of any Mortgage Insurance premiums that were unearned at the time of such cancellation or termination.

11. Assignment of Miscellaneous Proceeds; Forfeiture. All Miscellaneous Proceeds are hereby assigned to and shall be paid to Lender.

If the Property is damaged, such Miscellaneous Proceeds shall be applied to restoration or repair of the Property, if the restoration or repair is economically feasible and Lender's security is not lessened. During such repair and restoration period, Lender shall have the right to hold such Miscellaneous Proceeds until Lender has had an opportunity to inspect such Property to ensure the work has been completed to Lender's satisfaction, provided that such inspection shall be undertaken promptly. Lender may pay for the repairs and restoration in a single disbursement or in a series of progress payments as the work is completed. Unless an agreement is made in writing or Applicable Law requires interest to be paid on such Miscellaneous Proceeds, Lender shall not be required to pay Borrower any interest or earnings on such Miscellaneous Proceeds. If the restoration or repair is not economically feasible or Lender's security would be lessened, the Miscellaneous Proceeds shall be applied to the sums secured by this Security Instrument, whether or not then due, with the excess, if any, paid to Borrower. Such Miscellaneous Proceeds shall be applied in the order provided for in Section 2.

In the event of a total taking, destruction, or loss in value of the Property, the Miscellaneous Proceeds shall be applied to the sums secured by this Security Instrument, whether or not then due, with the excess, if any, paid to Borrower.

In the event of a partial taking, destruction, or loss in value of the Property in which the fair market value of the Property immediately before the partial taking, destruction, or loss in value is equal to or greater than the amount of the sums secured by this Security Instrument immediately before the partial taking, destruction, or loss in value, unless Borrower and Lender otherwise agree in writing, the sums secured by this Security Instrument shall be reduced by the amount of the Miscellaneous Proceeds multiplied by the following fraction: (a) the total amount of the sums secured immediately before the partial taking, destruction, or loss in value divided by (b) the fair market value of the Property immediately before the partial taking, destruction, or loss in value. Any balance shall be paid to Borrower.

In the event of a partial taking, destruction, or loss in value of the Property in which the fair market value of the Property immediately before the partial taking, destruction, or loss in value is less than the amount of the sums secured immediately before the partial taking, destruction, or loss in value, unless Borrower and Lender otherwise agree in writing, the Miscellaneous Proceeds shall be applied to the sums secured by this Security Instrument whether or not the sums are then due.

If the Property is abandoned by Borrower, or if, after notice by Lender to Borrower that the Opposing Party (as defined in the next sentence) offers to make an award to settle a claim for damages, Borrower fails to respond to Lender within 30 days after the date the notice is given, Lender is authorized to collect and apply the Miscellaneous Proceeds either to restoration or repair of the Property or to the sums secured by this Security Instrument, whether or not then due. "Opposing Party" means the third party that owes Borrower Miscellaneous Proceeds or the party against whom Borrower has a right of action in regard to Miscellaneous Proceeds.

Initials: _KH_

-6A(NV) (0307)    CHL (07/03)         Page 10 of 16                    Form 3029  1/01

DOC ID #: 0009713537405005

Borrower shall be in default if any action or proceeding, whether civil or criminal, is begun that, in Lender's judgment, could result in forfeiture of the Property or other material impairment of Lender's interest in the Property or rights under this Security Instrument. Borrower can cure such a default and, if acceleration has occurred, reinstate as provided in Section 19, by causing the action or proceeding to be dismissed with a ruling that, in Lender's judgment, precludes forfeiture of the Property or other material impairment of Lender's interest in the Property or rights under this Security Instrument. The proceeds of any award or claim for damages that are attributable to the impairment of Lender's interest in the Property are hereby assigned and shall be paid to Lender.

All Miscellaneous Proceeds that are not applied to restoration or repair of the Property shall be applied in the order provided for in Section 2.

**12. Borrower Not Released; Forbearance By Lender Not a Waiver.** Extension of the time for payment or modification of amortization of the sums secured by this Security Instrument granted by Lender to Borrower or any Successor in Interest of Borrower shall not operate to release the liability of Borrower or any Successors in Interest of Borrower. Lender shall not be required to commence proceedings against any Successor in Interest of Borrower or to refuse to extend time for payment or otherwise modify amortization of the sums secured by this Security Instrument by reason of any demand made by the original Borrower or any Successors in Interest of Borrower. Any forbearance by Lender in exercising any right or remedy including, without limitation, Lender's acceptance of payments from third persons, entities or Successors in Interest of Borrower or in amounts less than the amount then due, shall not be a waiver of or preclude the exercise of any right or remedy.

**13. Joint and Several Liability; Co-signers; Successors and Assigns Bound.** Borrower covenants and agrees that Borrower's obligations and liability shall be joint and several. However, any Borrower who co-signs this Security Instrument but does not execute the Note (a "co-signer"): (a) is co-signing this Security Instrument only to mortgage, grant and convey the co-signer's interest in the Property under the terms of this Security Instrument; (b) is not personally obligated to pay the sums secured by this Security Instrument; and (c) agrees that Lender and any other Borrower can agree to extend, modify, forbear or make any accommodations with regard to the terms of this Security Instrument or the Note without the co-signer's consent.

Subject to the provisions of Section 18, any Successor in Interest of Borrower who assumes Borrower's obligations under this Security Instrument in writing, and is approved by Lender, shall obtain all of Borrower's rights and benefits under this Security Instrument. Borrower shall not be released from Borrower's obligations and liability under this Security Instrument unless Lender agrees to such release in writing. The covenants and agreements of this Security Instrument shall bind (except as provided in Section 20) and benefit the successors and assigns of Lender.

**14. Loan Charges.** Lender may charge Borrower fees for services performed in connection with Borrower's default, for the purpose of protecting Lender's interest in the Property and rights under this Security Instrument, including, but not limited to, attorneys' fees, property inspection and valuation fees. In regard to any other fees, the absence of express authority in this Security Instrument to charge a specific fee to Borrower shall not be construed as a prohibition on the charging of such fee. Lender may not charge fees that are expressly prohibited by this Security Instrument or by Applicable Law.

If the Loan is subject to a law which sets maximum loan charges, and that law is finally interpreted so that the interest or other loan charges collected or to be collected in connection with the Loan exceed the permitted limits, then: (a) any such loan charge shall be reduced by the amount necessary to reduce the charge to the permitted limit; and (b) any sums already collected from Borrower which exceeded permitted limits will be refunded to Borrower. Lender may choose to make this refund by reducing the principal owed under the Note or by making a direct payment to Borrower. If a refund reduces principal, the reduction will be treated as a partial prepayment without any prepayment charge (whether or not a prepayment charge is provided for under the Note). Borrower's acceptance of any such refund made by direct payment to Borrower will constitute a waiver of any right of action Borrower might have arising out of such overcharge.

Initials: _____

-6A(NV) (0307)   CHL (07/03)          Page 11 of 16                    Form 3029 1/01

DOC ID #: 0009713537405005

**15. Notices.** All notices given by Borrower or Lender in connection with this Security Instrument must be in writing. Any notice to Borrower in connection with this Security Instrument shall be deemed to have been given to Borrower when mailed by first class mail or when actually delivered to Borrower's notice address if sent by other means. Notice to any one Borrower shall constitute notice to all Borrowers unless Applicable Law expressly requires otherwise. The notice address shall be the Property Address unless Borrower has designated a substitute notice address by notice to Lender. Borrower shall promptly notify Lender of Borrower's change of address. If Lender specifies a procedure for reporting Borrower's change of address, then Borrower shall only report a change of address through that specified procedure. There may be only one designated notice address under this Security Instrument at any one time. Any notice to Lender shall be given by delivering it or by mailing it by first class mail to Lender's address stated herein unless Lender has designated another address by notice to Borrower. Any notice in connection with this Security Instrument shall not be deemed to have been given to Lender until actually received by Lender. If any notice required by this Security Instrument is also required under Applicable Law, the Applicable Law requirement will satisfy the corresponding requirement under this Security Instrument.

**16. Governing Law; Severability; Rules of Construction.** This Security Instrument shall be governed by federal law and the law of the jurisdiction in which the Property is located. All rights and obligations contained in this Security Instrument are subject to any requirements and limitations of Applicable Law. Applicable Law might explicitly or implicitly allow the parties to agree by contract or it might be silent, but such silence shall not be construed as a prohibition against agreement by contract. In the event that any provision or clause of this Security Instrument or the Note conflicts with Applicable Law, such conflict shall not affect other provisions of this Security Instrument or the Note which can be given effect without the conflicting provision.

As used in this Security Instrument: (a) words of the masculine gender shall mean and include corresponding neuter words or words of the feminine gender; (b) words in the singular shall mean and include the plural and vice versa; and (c) the word "may" gives sole discretion without any obligation to take any action.

**17. Borrower's Copy.** Borrower shall be given one copy of the Note and of this Security Instrument.

**18. Transfer of the Property or a Beneficial Interest in Borrower.** As used in this Section 18, "Interest in the Property" means any legal or beneficial interest in the Property, including, but not limited to, those beneficial interests transferred in a bond for deed, contract for deed, installment sales contract or escrow agreement, the intent of which is the transfer of title by Borrower at a future date to a purchaser.

If all or any part of the Property or any Interest in the Property is sold or transferred (or if Borrower is not a natural person and a beneficial interest in Borrower is sold or transferred) without Lender's prior written consent, Lender may require immediate payment in full of all sums secured by this Security Instrument. However, this option shall not be exercised by Lender if such exercise is prohibited by Applicable Law.

If Lender exercises this option, Lender shall give Borrower notice of acceleration. The notice shall provide a period of not less than 30 days from the date the notice is given in accordance with Section 15 within which Borrower must pay all sums secured by this Security Instrument. If Borrower fails to pay these sums prior to the expiration of this period, Lender may invoke any remedies permitted by this Security Instrument without further notice or demand on Borrower.

**19. Borrower's Right to Reinstate After Acceleration.** If Borrower meets certain conditions, Borrower shall have the right to have enforcement of this Security Instrument discontinued at any time prior to the earliest of: (a) five days before sale of the Property pursuant to any power of sale contained in this Security Instrument; (b) such other period as Applicable Law might specify for the termination of Borrower's right to reinstate; or (c) entry of a judgment enforcing this Security Instrument. Those conditions are that Borrower: (a) pays Lender all sums which then would be due under this Security Instrument and the Note as if no acceleration had occurred; (b) cures any default of any other covenants or agreements; (c) pays all expenses incurred in enforcing this Security Instrument, including, but not limited to, reasonable attorneys' fees,

DOC ID #: 0009713537405005

property inspection and valuation fees, and other fees incurred for the purpose of protecting Lender's interest in the Property and rights under this Security Instrument; and (d) takes such action as Lender may reasonably require to assure that Lender's interest in the Property and rights under this Security Instrument, and Borrower's obligation to pay the sums secured by this Security Instrument, shall continue unchanged. Lender may require that Borrower pay such reinstatement sums and expenses in one or more of the following forms, as selected by Lender: (a) cash; (b) money order; (c) certified check, bank check, treasurer's check or cashier's check, provided any such check is drawn upon an institution whose deposits are insured by a federal agency, instrumentality or entity; or (d) Electronic Funds Transfer. Upon reinstatement by Borrower, this Security Instrument and obligations secured hereby shall remain fully effective as if no acceleration had occurred. However, this right to reinstate shall not apply in the case of acceleration under Section 18.

20. Sale of Note; Change of Loan Servicer; Notice of Grievance. The Note or a partial interest in the Note (together with this Security Instrument) can be sold one or more times without prior notice to Borrower. A sale might result in a change in the entity (known as the "Loan Servicer") that collects Periodic Payments due under the Note and this Security Instrument and performs other mortgage loan servicing obligations under the Note, this Security Instrument, and Applicable Law. There also might be one or more changes of the Loan Servicer unrelated to a sale of the Note. If there is a change of the Loan Servicer, Borrower will be given written notice of the change which will state the name and address of the new Loan Servicer, the address to which payments should be made and any other information RESPA requires in connection with a notice of transfer of servicing. If the Note is sold and thereafter the Loan is serviced by a Loan Servicer other than the purchaser of the Note, the mortgage loan servicing obligations to Borrower will remain with the Loan Servicer or be transferred to a successor Loan Servicer and are not assumed by the Note purchaser unless otherwise provided by the Note purchaser.

Neither Borrower nor Lender may commence, join, or be joined to any judicial action (as either an individual litigant or the member of a class) that arises from the other party's actions pursuant to this Security Instrument or that alleges that the other party has breached any provision of, or any duty owed by reason of, this Security Instrument, until such Borrower or Lender has notified the other party (with such notice given in compliance with the requirements of Section 15) of such alleged breach and afforded the other party hereto a reasonable period after the giving of such notice to take corrective action. If Applicable Law provides a time period which must elapse before certain action can be taken, that time period will be deemed to be reasonable for purposes of this paragraph. The notice of acceleration and opportunity to cure given to Borrower pursuant to Section 22 and the notice of acceleration given to Borrower pursuant to Section 18 shall be deemed to satisfy the notice and opportunity to take corrective action provisions of this Section 20.

21. Hazardous Substances. As used in this Section 21: (a) "Hazardous Substances" are those substances defined as toxic or hazardous substances, pollutants, or wastes by Environmental Law and the following substances: gasoline, kerosene, other flammable or toxic petroleum products, toxic pesticides and herbicides, volatile solvents, materials containing asbestos or formaldehyde, and radioactive materials; (b) "Environmental Law" means federal laws and laws of the jurisdiction where the Property is located that relate to health, safety or environmental protection; (c) "Environmental Cleanup" includes any response action, remedial action, or removal action, as defined in Environmental Law; and (d) an "Environmental Condition" means a condition that can cause, contribute to, or otherwise trigger an Environmental Cleanup.

Borrower shall not cause or permit the presence, use, disposal, storage, or release of any Hazardous Substances, or threaten to release any Hazardous Substances, on or in the Property. Borrower shall not do, nor allow anyone else to do, anything affecting the Property (a) that is in violation of any Environmental Law, (b) which creates an Environmental Condition, or (c) which, due to the presence, use, or release of a Hazardous Substance, creates a condition that adversely affects the value of the Property. The preceding two sentences shall not apply to the presence, use, or storage on the Property of small quantities of Hazardous Substances that are generally recognized to be appropriate to normal residential uses and to maintenance of the Property (including, but not limited to, hazardous substances in consumer products).

Initials: _____

-6A(NV) (0307)   CHL (07/03)          Page 13 of 16                          Form 3029  1/01

DOC ID #: 000971353740

Borrower shall promptly give Lender written notice of (a) any investigation, claim, demand, lawsuit or other action by any governmental or regulatory agency or private party involving the Property and any Hazardous Substance or Environmental Law of which Borrower has actual knowledge, (b) any Environmental Condition, including but not limited to, any spilling, leaking, discharge, release or threat of release of any Hazardous Substance, and (c) any condition caused by the presence, use or release of a Hazardous Substance which adversely affects the value of the Property. If Borrower learns, or is notified by any governmental or regulatory authority, or any private party, that any removal or other remediation of any Hazardous Substance affecting the Property is necessary, Borrower shall promptly take all necessary remedial actions in accordance with Environmental Law. Nothing herein shall create any obligation on Lender for an Environmental Cleanup.

NON-UNIFORM COVENANTS. Borrower and Lender further covenant and agree as follows:

**22. Acceleration; Remedies. Lender shall give notice to Borrower prior to acceleration following Borrower's breach of any covenant or agreement in this Security Instrument (but not prior to acceleration under Section 18 unless Applicable Law provides otherwise). The notice shall specify: (a) the default; (b) the action required to cure the default; (c) a date, not less than 30 days from the date the notice is given to Borrower, by which the default must be cured; and (d) that failure to cure the default on or before the date specified in the notice may result in acceleration of the sums secured by this Security Instrument and sale of the Property. The notice shall further inform Borrower of the right to reinstate after acceleration and the right to bring a court action to assert the non-existence of a default or any other defense of Borrower to acceleration and sale. If the default is not cured on or before the date specified in the notice, Lender at its option, and without further demand, may invoke the power of sale, including the right to accelerate full payment of the Note, and any other remedies permitted by Applicable Law. Lender shall be entitled to collect all expenses incurred in pursuing the remedies provided in this Section 22, including, but not limited to, reasonable attorneys' fees and costs of title evidence.**

**If Lender invokes the power of sale, Lender shall execute or cause Trustee to execute written notice of the occurrence of an event of default and of Lender's election to cause the Property to be sold, and shall cause such notice to be recorded in each county in which any part of the Property is located. Lender shall mail copies of the notice as prescribed by Applicable Law to Borrower and to the persons prescribed by Applicable Law. Trustee shall give public notice of sale to the persons and in the manner prescribed by Applicable Law. After the time required by Applicable Law, Trustee, without demand on Borrower, shall sell the Property at public auction to the highest bidder at the time and place and under the terms designated in the notice of sale in one or more parcels and in any order Trustee determines. Trustee may postpone sale of all or any parcel of the Property by public announcement at the time and place of any previously scheduled sale. Lender or its designee may purchase the Property at any sale.**

**Trustee shall deliver to the purchaser Trustee's deed conveying the Property without any covenant or warranty, expressed or implied. The recitals in the Trustee's deed shall be prima facie evidence of the truth of the statements made therein. Trustee shall apply the proceeds of the sale in the following order: (a) to all expenses of the sale, including, but not limited to, reasonable Trustee's and attorneys' fees; (b) to all sums secured by this Security Instrument; and (c) any excess to the person or persons legally entitled to it.**

**23. Reconveyance.** Upon payment of all sums secured by this Security Instrument, Lender shall request Trustee to reconvey the Property and shall surrender this Security Instrument and all notes evidencing debt secured by this Security Instrument to Trustee. Trustee shall reconvey the Property without warranty to the person or persons legally entitled to it. Such person or persons shall pay any recordation costs. Lender may charge such person or persons a fee for reconveying the Property, but only if the fee is paid to a third party (such as the Trustee) for services rendered and the charging of the fee is permitted under Applicable Law.

**24. Substitute Trustee.** Lender at its option, may from time to time remove Trustee and appoint a successor trustee to any Trustee appointed hereunder. Without conveyance of the Property, the successor trustee shall succeed to all the title, power and duties conferred upon Trustee herein and by Applicable Law.

**25. Assumption Fee.** If there is an assumption of this loan, Lender may charge an assumption fee of U.S. $    300.00           .

Initials: ⟨signature⟩

DOC ID #: 0009713537405005

BY SIGNING BELOW, Borrower accepts and agrees to the terms and covenants contained in this Security Instrument and in any Rider executed by Borrower and recorded with it.

Witnesses:

_____

_____

_____ *Lori Herda* _____(Seal)
LORI HERDA                                    -Borrower

_____(Seal)
                                             -Borrower

_____(Seal)
                                             -Borrower

_____(Seal)
                                             -Borrower

DOC ID #: 0009713537405005

**STATE OF NEVADA**
**COUNTY OF** Clouk

This instrument was acknowledged before me on _MAY 13, 2005_ by

Lori HERDA



_Morris w Rose_

**Mail Tax Statements To:**
TAX DEPARTMENT SV3-24

450 American Street
Simi Valley CA, 93065

Initials: ___

Form 3029 1/01

Inst #: 201010150001860
Fees: $15.00
N/C Fee: $25.00
10/15/2010 12:13:21 PM
Receipt #: 541797
Requestor:
GREGORY WILDE
Recorded By: ANI   Pgs: 2
DEBBIE CONWAY
CLARK COUNTY RECORDER

**APN#**   138-34-610-006
          11-digit parcel number may be obtained at:
          http://redrock.co.clark.nv.us/assrrealprop/ownr.aspx

Assignment of Deed of Trust

**Type of Document**
(Example:  Declaration of Homestead, Quit Claim Deed, etc.)

**Recording Requested by:**

Wilde & Associates

**Return To:**

**Name**  Gregory Wilde, Esq.

**Address**  212 S Jones Blvd

**City/State/Zip**  Las Vegas, NV 89107

This page added to provide additional information required by NRS 111.312 Section 1-2
(An additional recording fee of $1.00 will apply)

This cover page must be typed or printed clearly in black ink only.

CS 02/07

WHEN RECORDED MAIL TO:

**TIFFANY & BOSCO, P.A.**
**Michael A. Bosco, Jr.**
2525 East Camelback Road, Suite 300
Phoenix, AZ 85016

## ASSIGNMENT OF DEED OF TRUST

T & B No.: 09-77956                                          Parcel No. 138-34-610-006

For Value Received, the undersigned corporation hereby grants, assigns and transfers to **BAC Home Loans Servicing, L.P. fka Countrywide Home Loans Servicing, L.P.** at the address of 7105 Corporate Drive Mail Stop PTX-209, Plano TX 75024 all beneficial interest under that certain Deed of Trust dated **May 3, 2005** executed by **Lori Herda, a married woman as her sole and separate property** Trustor, **CTC Real Estate Services Trustee, Mortgage Electronic Registration Systems, Inc., as nominee for Countrywide Home Loans, Inc.,** as Beneficiary; and recorded on **05/25/05** as Recording No./Book-Page 200505250003792 of Official Records of **Clark** County, NV and legally describing the trust property as:

LOT 6 IN BLOCK 12 OF CHARLESTON RAINBOW UNIT 7B, AS SHOWN BY MAP THEREOF ON FILE IN BOOK 13 OF PLATS, PAGE 51 IN THE OFFICE OF THE COUNTY RECORDER OF CLARK COUNTY, NEVADA. ASSESSOR'S PARCEL NO: 138-34-610-006

Together with the Note or Notes therein described or referred to, the money due and to become due thereon with interest, and all rights accrued or to accrue under said Deed of Trust. Hereby made effective on:
Date :   **JUN 1 5 2010**

**Mortgage Electronic Registration Systems, Inc., as nominee for Countrywide Home Loans, Inc.**

By : _____

Its: _____
Nichole Clavadetscher
Certifying Officer

STATE OF _CALIFORNIA_ )
                                          )ss.
COUNTY OF _VENTURA_ )

On this _15th_ day of _JUNE_ , 20_10_, before me, the undersigned, a Notary Public for said State, personally appeared ___Nichole Clavadetscher___ known to me to be the _CERTIFYING OFFICER_ of the above corporation, and acknowledge execution of the above instrument on behalf of the corporation.

My Commission Expires: _7-24-2010_

Notary Public

JON SECRIST
Commission # 1683790
Notary Public - California
Ventura County
My Comm. Expires Jul 24, 2010

RECORDING REQUESTED BY:
RECONTRUST COMPANY, N.A.
**AND WHEN RECORDED MAIL DOCUMENT TO:**
BAC Home Loans Servicing, LP
400 COUNTRYWIDE WAY SV-35
SIMI VALLEY, CA  93065

138-34-610-006

TS No. 09-0131186
**TITLE ORDER#: 090626360NVGT1**

## CORPORATION ASSIGNMENT OF DEED OF TRUST NEVADA

FOR VALUE RECEIVED, THE UNDERSIGNED HEREBY GRANTS, ASSIGNS AND TRANSFER TO:
**BAC HOME LOANS SERVICING, LP FKA COUNTRYWIDE HOME LOANS SERVICING LP**

ALL BENEFICIAL INTEREST UNDER THAT CERTAIN DEED OF TRUST DATED 05/03/2005,
EXECUTED BY: LORI HERDA, A MARRIED WOMAN AS HER SOLE AND SEPARATE
PROPERTY,TRUSTOR: TO CTC REAL ESTATE SERVICES, TRUSTEE AND RECORDED AS
INSTRUMENT NO. 0003792 ON 05/25/2005, IN BOOK 20050525, OF OFFICIAL RECORDS IN THE
COUNTY RECORDER'S OFFICE OF CLARK  COUNTY, IN THE STATE OF NEVADA.

DESCRIBING THE LAND THEREIN:  AS MORE FULLY DESCRIBED IN SAID DEED OF TRUST.

TOGETHER WITH THE NOTE OR NOTES THEREIN DESCRIBED OR REFERRED TO, THE
MONEY DUE AND TO BECOME DUE THEREON WITH INTEREST, AND ALL RIGHTS
ACCRUED OR TO ACCRUE UNDER SAID DEED OF TRUST/MORTGAGE.

DATED:  September 02, 2009          MORTGAGE ELECTRONIC REGISTRATION SYSTEMS,
                                    INC.

State of:  **Texas**                )
County of:  **Dallas**              )
                                    )BY: _Angela Nava_____
                                         Angela Nava
                                                    , Assistant Secretary
                                         Angela Nava
                                         **Assistant Secretary**

On _9-8-09_ before me _ANGELA SERATO_____, personally appeared _____
_____, know to me (or proved to me on the oath of _____ or through
_____) to be the person whose name is subscribed to the foregoing instrument and
acknowledged to me that he/she executed the same for the purposes and consideration therein expressed.
Witness my hand and official seal.

_____
Notary Public's Signature

ANGELA SERATO
My Commission Expires
July 27, 2013

Inst#:200909140003883 Fees:$15.00 /c Fee:$0.00 09/14/2009 02:40:19 PM
Receipt#:55341 Requestor:FIDELITY NATIONAL DEFAULT SOLUTIONS Recorded By:ADF
Pgs:2 DEBBIE CONWAY CLARK COUNTY RECORDER

Case 09-30326-bam Doc 68 Entered 10/19/10 17:55:38 Page 31 of 43

RECORDING REQUESTED BY:
RECONTRUST COMPANY

**AND WHEN RECORDED MAIL DOCUMENT TO:**
RECONTRUST COMPANY
2380 Performance Dr, TX2-985-07-03
Richardson, TX 75082

**ATTN: Dominic Heme**
TS No. 09-0131186

138-34-610-006

TSG No. 090626360NVGTI

---

## SUBSTITUTION OF TRUSTEE NEVADA

WHEREAS, LORI HERDA, A MARRIED WOMAN AS HER SOLE AND SEPARATE PROPERTY was the original Trustor, CTC REAL ESTATE SERVICES was the original Trustee, and MORTGAGE ELECTRONIC REGISTRATION SYSTEMS, INC. was the original Beneficiary under that certain Deed of Trust dated 05/03/2005 recorded on 05/25/2005 as Instrument No. 0003792 in Book 20050525 Page of Official Records of Clark County, Nevada;

WHEREAS, the undersigned is the present Beneficiary under said Deed of Trust, and

WHEREAS, the undersigned desires to substitute a new Trustee under said Deed of Trust in place and instead of said original Trustee, or Successor Trustee, thereunder, in the manner in said Deed of Trust provided,

NOW THEREFORE, the undersigned hereby substitutes RECONTRUST COMPANY, N.A., WHOSE ADDRESS IS: 2380 Performance Dr, TX2-985-07-03, Richardson, TX 75082, as Trustee under said Deed of Trust.

Whenever the context hereof so requires, the masculine gender includes the feminine and/or neuter, and the singular number includes the plural.

BAC HOME LOANS SERVICING, LP FKA
COUNTRYWIDE HOME LOANS SERVICING LP

BY: _Angela Nava_____

Angela Nava , Assistant Secretary

State of: **Texas** )
County of: **Dallas** )
On 9-8-09 before me ANGELA SERATO , personally appeared
__Angela Nava__ **Assistant Secretary** , know to me (or proved to me on the oath of _____ or through _____ ) to be the person whose name is subscribed to the foregoing instrument and acknowledged to me that he/she executed the same for the purposes and consideration therein expressed.
Witness my hand and official seal.

_Angela Serato_____
Notary Public's Signature

ANGELA SERATO
My Commission Expires
July 27, 2013

# Exhibit "3"

**CERTIFICATION OF DOCUMENTS PURSUANT TO NV A. B. 149 AND AMENDED FORECLOSURE MEDIATION RULES, RULE 5, SECTION 7(D)**

I, Thomas Huynh, declare:

1. I am a[n] MLO-Servicing Team Manager(TITLE) employed by:

   ☑ ReconTrust Company, N.A.

   ☐ Bank of America

   ☐ _____

At 1800 Tapo Canyon Road, Simi Valley, CA and am authorized to execute this certification of documents on its behalf. I have personal knowledge of the facts contained in this declaration and, if called as a witness, could and would competently testify to them.

2. In my capacity as an employee of the above-referenced company, I am in actual possession of the

   ☑ original promissory note

   ☐ original deed of trust

   ☐ each assignment of the promissory note and/or deed of trust

at issue in this matter, designated in our records as Loan No. 97135374, regarding property address 6940 SURREY COURT, LAS VEGAS, NV, 89145 and borrower(s) LORI HERDA.

3. The attached copies of the above-referenced documents are true and correct copies of the original promissory note, deed of trust, and each assignment of the promissory note and/or deed of trust in my actual possession as an employee of ReconTrust Company, N.A.

I declare under penalty of perjury under the laws of the State of Texas that the foregoing is true and correct and that this declaration is executed on this 18th day of October, 2010, at Simi Valley, California.

_____
Thomas Huynh, DECLARANT

STATE OF CALIFORNIA

COUNTY OF VENTURA

On October 18, 2010 before me, Laurie Meder, Notary Public, personally appeared Thomas Huynh, Servicing Team manager, personally known to me (or proved to me on the basis of satisfactory evidence) to be the person(s) whose name(s) is/are subscribed to the within instrument and acknowledged to me that he/she/they executed the same in his/her/their authorized capacity(ies) and that by his/her/their signature(s) on the instrument the person(s), or the entity upon behalf of which the person(s) acted, executed the instrument.

WITNESS my hand and official seal.

LAURIE A. MEDER
Commission # 1808745
Notary Public - California
Los Angeles County
My Comm. Expires Aug 8, 2012

_____
Notary Public

Prepared by: JANELL HAAS

LOAN #: 97135374

# NOTE

MAY 03, 2005          LAS VEGAS          NEVADA
[Date]              [City]             [State]

6940 SURREY COURT, LAS VEGAS, NV 89145
[Property Address]

## 1. BORROWER'S PROMISE TO PAY

In return for a loan that I have received, I promise to pay U.S. $ 205,000.00          (this amount is called "Principal"), plus interest, to the order of the Lender. The Lender is
COUNTRYWIDE HOME LOANS, INC.
I will make all payments under this Note in the form of cash, check or money order.

I understand that the Lender may transfer this Note. The Lender or anyone who takes this Note by transfer and who is entitled to receive payments under this Note is called the "Note Holder."

## 2. INTEREST

Interest will be charged on unpaid principal until the full amount of Principal has been paid. I will pay interest at a yearly rate of    6.375 %.

The interest rate required by this Section 2 is the rate I will pay both before and after any default described in Section 6(B) of this Note.

## 3. PAYMENTS

### (A) Time and Place of Payments

I will pay principal and interest by making a payment every month.

I will make my monthly payment on the  FIRST          day of each month beginning on
JULY 01, 2005        . I will make these payments every month until I have paid all of the principal and interest and any other charges described below that I may owe under this Note. Each monthly payment will be applied as of its scheduled due date and will be applied to interest before Principal. If, on  JUNE 01, 2035        , I still owe amounts under this Note, I will pay those amounts in full on that date, which is called the "Maturity Date."

I will make my monthly payments at
P.O. Box 10219, Van Nuys, CA 91410-0219
or at a different place if required by the Note Holder.

### (B) Amount of Monthly Payments

My monthly payment will be in the amount of U.S. $ 1,278.93

## 4. BORROWER'S RIGHT TO PREPAY

I have the right to make payments of Principal at any time before they are due. A payment of Principal only is known as a "Prepayment." When I make a Prepayment, I will tell the Note Holder in writing that I am doing so. I may not designate a payment as a Prepayment if I have not made all the monthly payments due under the Note.

I may make a full Prepayment or partial Prepayments without paying a Prepayment charge. The Note Holder will use my Prepayments to reduce the amount of Principal that I owe under this Note. However, the Note Holder may apply my Prepayment to the accrued and unpaid interest on the Prepayment amount, before applying my Prepayment to reduce the Principal amount of the Note. If I make a partial Prepayment, there will be no changes in the due date or in the amount of my monthly payment unless the Note Holder agrees in writing to those changes.

## 5. LOAN CHARGES

If a law, which applies to this loan and which sets maximum loan charges, is finally interpreted so that the interest or other loan charges collected or to be collected in connection with this loan exceed the permitted limits, then: (a) any such loan charge shall be reduced by the amount necessary to reduce the charge to the permitted limit; and (b) any sums already collected from me which exceeded permitted limits will be refunded to me. The Note Holder may choose to make this refund by reducing the Principal I owe under this Note or by making a direct payment to me. If a refund reduces Principal, the reduction will be treated as a partial Prepayment.

## 6. BORROWER'S FAILURE TO PAY AS REQUIRED

### (A) Late Charge for Overdue Payments

If the Note Holder has not received the full amount of any monthly payment by the end of  FIFTEEN          calendar days after the date it is due, I will pay a late charge to the Note Holder. The amount of the charge will be    5.000 % of my overdue payment of principal and interest. I will pay this late charge promptly but only once on each late payment.

### (B) Default

If I do not pay the full amount of each monthly payment on the date it is due, I will be in default.

MULTISTATE FIXED RATE NOTE-Single Family-Fannie Mae/Freddie Mac UNIFORM INSTRUMENT          Initials: _____

Page 1 of 2

-5N (0207).01    CHL (010/04)(d)    VMP Mortgage Solutions, Inc. (800)521-7291          Form 3200 1/01





LOAN #: 97135374

**(C) Notice of Default**

If I am in default, the Note Holder may send me a written notice telling me that if I do not pay the overdue amount by a certain date, the Note Holder may require me to pay immediately the full amount of Principal which has not been paid and all the interest that I owe on that amount. That date must be at least 30 days after the date on which the notice is mailed to me or delivered by other means.

**(D) No Waiver By Note Holder**

Even if, at a time when I am in default, the Note Holder does not require me to pay immediately in full as described above, the Note Holder will still have the right to do so if I am in default at a later time.

**(E) Payment of Note Holder's Costs and Expenses**

If the Note Holder has required me to pay immediately in full as described above, the Note Holder will have the right to be paid back by me for all of its costs and expenses in enforcing this Note to the extent not prohibited by applicable law. Those expenses include, for example, reasonable attorneys' fees.

**7. GIVING OF NOTICES**

Unless applicable law requires a different method, any notice that must be given to me under this Note will be given by delivering it or by mailing it by first class mail to me at the Property Address above or at a different address if I give the Note Holder a notice of my different address.

Any notice that must be given to the Note Holder under this Note will be given by delivering it or by mailing it by first class mail to the Note Holder at the address stated in Section 3(A) above or at a different address if I am given a notice of that different address.

**8. OBLIGATIONS OF PERSONS UNDER THIS NOTE**

If more than one person signs this Note, each person is fully and personally obligated to keep all of the promises made in this Note, including the promise to pay the full amount owed. Any person who is a guarantor, surety or endorser of this Note is also obligated to do these things. Any person who takes over these obligations, including the obligations of a guarantor, surety or endorser of this Note, is also obligated to keep all of the promises made in this Note. The Note Holder may enforce its rights under this Note against each person individually or against all of us together. This means that any one of us may be required to pay all of the amounts owed under this Note.

**9. WAIVERS**

I and any other person who has obligations under this Note waive the rights of Presentment and Notice of Dishonor. "Presentment" means the right to require the Note Holder to demand payment of amounts due. "Notice of Dishonor" means the right to require the Note Holder to give notice to other persons that amounts due have not been paid.

**10. UNIFORM SECURED NOTE**

This Note is a uniform instrument with limited variations in some jurisdictions. In addition to the protections given to the Note Holder under this Note, a Mortgage, Deed of Trust, or Security Deed (the "Security Instrument"), dated the same date as this Note, protects the Note Holder from possible losses which might result if I do not keep the promises which I make in this Note. That Security Instrument describes how and under what conditions I may be required to make immediate payment in full of all amounts I owe under this Note. Some of those conditions are described as follows:

If all or any part of the Property or any Interest in the Property is sold or transferred (or if Borrower is not a natural person and a beneficial interest in Borrower is sold or transferred) without Lender's prior written consent, Lender may require immediate payment in full of all sums secured by this Security Instrument. However, this option shall not be exercised by Lender if such exercise is prohibited by Applicable Law.

If Lender exercises this option, Lender shall give Borrower notice of acceleration. The notice shall provide a period of not less than 30 days from the date the notice is given in accordance with Section 15 within which Borrower must pay all sums secured by this Security Instrument. If Borrower fails to pay these sums prior to the expiration of this period, Lender may invoke any remedies permitted by this Security Instrument without further notice or demand on Borrower.

PAY TO THE ORDER OF

_____

WITHOUT RECOURSE
COUNTRYWIDE HOME LOANS, INC.

BY _____

David A. Spector
Managing Director

WITNESS THE HAND(S) AND SEAL(S) OF THE UNDERSIGNED.

_____ (Seal)          _____ (Seal)
LORI HERDA                    -Borrower                                    -Borrower

_____ (Seal)          _____ (Seal)
                              -Borrower                                    -Borrower

*[Sign Original Only]*

# Exhibit "4"

B6A (Official Form 6A) (12/07)

In re    **Joseph R Esquivel, Jr.,**                                                    Case No. _____
         **Lori Esquivel**
_____.
                                   Debtors
                    **SCHEDULE A - REAL PROPERTY**

Except as directed below, list all real property in which the debtor has any legal, equitable, or future interest, including all property owned as a cotenant, community property, or in which the debtor has a life estate. Include any property in which the debtor holds rights and powers exercisable for the debtor's own benefit. If the debtor is married, state whether husband, wife, both, or the marital community own the property by placing an "H," "W," "J," or "C" in the column labeled "Husband, Wife, Joint, or Community." If the debtor holds no interest in real property, write "None" under "Description and Location of Property."

**Do not include interests in executory contracts and unexpired leases on this schedule. List them in Schedule G - Executory Contracts and Unexpired Leases.**

If an entity claims to have a lien or hold a secured interest in any property, state the amount of the secured claim. See Schedule D. If no entity claims to hold a secured interest in the property, write "None" in the column labeled "Amount of Secured Claim." If the debtor is an individual or if a joint petition is filed, state the amount of any exemption claimed in the property only in Schedule C - Property Claimed as Exempt.

| Description and Location of Property | Nature of Debtor's Interest in Property | Husband, Wife, Joint, or Community | Current Value of Debtor's Interest in Property, without Deducting any Secured Claim or Exemption | Amount of Secured Claim |
|---|---|---|---|---|
| **Debtors' residence located at 6940 Surrey Ct, Las Vegas NV** | **Joint tenant** | **C** | **157,000.00** | **278,578.00** |

|  |  |  |
|---|---|---|
| Sub-Total > | **157,000.00** | (Total of this page) |
| Total > | **157,000.00** |  |

**0**   continuation sheets attached to the Schedule of Real Property

(Report also on Summary of Schedules)

Copyright (c) 1996-2009 - Best Case Solutions - Evanston, IL - (800) 492-8037                                    Best Case Bankruptcy

B6D (Official Form 6D) (12/07)

In re  **Joseph R Esquivel, Jr.,**                              Case No. _____
       **Lori Esquivel**
_____
                        Debtors

## SCHEDULE D - CREDITORS HOLDING SECURED CLAIMS

State the name, mailing address, including zip code, and last four digits of any account number of all entities holding claims secured by property of the debtor as of
the date of filing of the petition. The complete account number of any account the debtor has with the creditor is useful to the trustee and the creditor and may be provided
if the debtor chooses to do so. List creditors in alphabetical order to the extent practicable. If a minor child is a creditor, the child's initials and the name and address of the child's parent or
other security interests.
    List creditors in alphabetical order to the extent practicable. If a minor child is a creditor, the child's initials and the name and address of the child's parent or
guardian, such as "A.B., a minor child, by John Doe, guardian." Do not disclose the child's name. See, 11 U.S.C. §112 and Fed. R. Bankr. P. 1007(m). If all secured
creditors will not fit on this page, use the continuation sheet provided.
    If any entity other than a spouse in a joint case may be jointly liable on a claim, place an "X" in the column labeled "Codebtor" ,include the entity on the appropriate
schedule of creditors, and complete Schedule H - Codebtors. If a joint petition is filed, state whether the husband, wife, both of them, or the marital community may be
liable on each claim by placing an "H", "W", "J", or "C" in the column labeled "Husband, Wife, Joint, or Community".
    If the claim is contingent, place an "X" in the column labeled "Contingent". If the claim is unliquidated, place an "X" in the column labeled "Unliquidated". If the
claim is disputed, place an "X" in the column labeled "Disputed". (You may need to place an "X" in more than one of these three columns.)
    Total the columns labeled "Amount of Claim Without Deducting Value of Collateral" and "Unsecured Portion, if Any" in the boxes labeled "Total(s)" on the last
sheet of the completed schedule. Report the total from the column labeled "Amount of Claim" also on the Summary of Schedules and, if the debtor is an individual with
primarily consumer debts, report the total from the column labeled "Unsecured Portion" on the Statistical Summary of Certain Liabilities and Related Data.
☐  Check this box if debtor has no creditors holding secured claims to report on this Schedule D.

| CREDITOR'S NAME AND MAILING ADDRESS INCLUDING ZIP CODE, AND ACCOUNT NUMBER (See instructions above.) | C O D E B T O R | Husband, Wife, Joint, or Community | | | DATE CLAIM WAS INCURRED, NATURE OF LIEN, AND DESCRIPTION AND VALUE OF PROPERTY SUBJECT TO LIEN | C O N T I N G E N T | U N L I Q U I D A T E D | D I S P U T E D | AMOUNT OF CLAIM WITHOUT DEDUCTING VALUE OF COLLATERAL | UNSECURED PORTION, IF ANY |
|---|---|---|---|---|---|---|---|---|---|---|
| | | H W | J | C | | | | | | |
| Account No. 68181005120199 | | | | | Opened  8/01/05  Last Active  6/30/09 | | | | | |
| Creditor #: 1 **Bank Of America** **4161 Piedmont Parkway** **Greensboro, NC 27410** | | | | C | **Second Deed of Trust** **Debtors' residence located at 6940 Surrey Ct, Las Vegas NV** | | | | | |
| | | | | | Value $                157,000.00 | | | | 83,685.00 | 83,685.00 |
| Account No. 97135374 | | | | | Opened  5/01/05  Last Active  5/29/09 | | | | | |
| Creditor #: 2 **Countrywide Home Lending** **Attention: Bankruptcy  SV-314B** **Po Box 5170** **Simi Valley, CA 93062** | | | | C | **First Deed of Trust** **Debtors' residence located at 6940 Surrey Ct, Las Vegas NV** | | | | | |
| | | | | | Value $                157,000.00 | | | | 194,893.00 | 37,893.00 |
| Account No. 912371700001 | | | | | Opened  8/01/05  Last Active  8/10/09 | | | | | |
| Creditor #: 3 **Ibew Plus Credit Union** **4318 E Bonanza Rd** **Las Vegas, NV 89110** | | | | C | **Vehicle financing** **2002 Lincoln LS** | | | | | |
| | | | | | Value $                  6,200.00 | | | | 9,365.00 | 3,165.00 |
| Account No. 50237069250629001 | | | | | Opened  10/01/03  Last Active  7/09/09 | | | | | |
| Creditor #: 4 **Wells Fargo** **Po Box 60510** **Los Angeles, CA 90060** | | | | C | **Vehicle financing** **1999 Dodge RAM, 115K miles** | | | | | |
| | | | | | Value $                  2,500.00 | | | | 1,817.00 | 0.00 |

**0**   continuation sheets attached

| | Subtotal (Total of this page) | 289,760.00 | 124,743.00 |
|---|---|---|---|
| | Total (Report on Summary of Schedules) | 289,760.00 | 124,743.00 |

Copyright (c) 1996-2009 - Best Case Solutions - Evanston, IL - (800) 492-8037                                           Best Case Bankruptcy

# Exhibit "5"

B6F (Official Form 6F) (12/07)

In re   **Joseph R Esquivel, Jr.,**
      **Lori Esquivel**
                                   Debtors

Case No. _____

# SCHEDULE F - CREDITORS HOLDING UNSECURED NONPRIORITY CLAIMS

State the name, mailing address, including zip code, and last four digits of any account number, of all entities holding unsecured claims without priority against the debtor or the property of the debtor, as of the date of filing of the petition. The complete account number of any account the debtor has with the creditor is useful to the trustee and the creditor and may be provided if the debtor chooses to do so. If a minor child is a creditor, state the child's initials and the name and address of the child's parent or guardian, such as "A.B., a minor child, by John Doe, guardian." Do not disclose the child's name. See, 11 U.S.C. §112 and Fed. R. Bankr. P. 1007(m). Do not include claims listed in Schedules D and E. If all creditors will not fit on this page, use the continuation sheet provided.

If any entity other than a spouse in a joint case may be jointly liable on a claim, place an "X" in the column labeled "Codebtor," include the entity on the appropriate schedule of creditors, and complete Schedule H - Codebtors. If a joint petition is filed, state whether the husband, wife, both of them, or the marital community may be liable on each claim by placing an "H," "W," "J," or "C" in the column labeled "Husband, Wife, Joint, or Community."

If the claim is contingent, place an "X" in the column labeled "Contingent." If the claim is unliquidated, place an "X" in the column labeled "Unliquidated." If the claim is disputed, place an "X" in the column labeled "Disputed." (You may need to place an "X" in more than one of these three columns.)

Report the total of all claims listed on this schedule in the box labeled "Total" on the last sheet of the completed schedule. Report this total also on the Summary of Schedules and, if the debtor is an individual with primarily consumer debts, report this total also on the Statistical Summary of Certain Liabilities and Related Data.

☐   Check this box if debtor has no creditors holding unsecured claims to report on this Schedule F.

| CREDITOR'S NAME, MAILING ADDRESS INCLUDING ZIP CODE, AND ACCOUNT NUMBER (See instructions above.) | C O D E B T O R | Husband, Wife, Joint, or Community | | DATE CLAIM WAS INCURRED AND CONSIDERATION FOR CLAIM. IF CLAIM IS SUBJECT TO SETOFF, SO STATE. | C O N T I N G E N T | U N L I Q U I D A T E D | D I S P U T E D | AMOUNT OF CLAIM |
|---|---|---|---|---|---|---|---|---|
| | | H W J | C | | | | | |
| Account No. | | | | Services | | | | |
| Creditor #: 1 A-1 Lawn Maintenance 308 S Lorenzi St Las Vegas, NV 89107 | | | C | | | | | 2,320.00 |
| Account No. **1695** | | | | Credit card purchases | | | | |
| Creditor #: 2 Citi Po Box 6077 Sioux Falls, SD 57117 | | | C | | | | | 10,000.00 |
| Account No. **601100907026** | | | | Opened 12/01/02 Last Active 7/28/09 CreditCard | | | | |
| Creditor #: 3 Discover Fin Svcs Llc Po Box 15316 Wilmington, DE 19850 | | | C | | | | | 9,038.00 |
| Account No. **5276861** | | | | Opened 1/01/08 CollectionAttorney Morton Plant Hospital | | | | |
| Creditor #: 4 Financial Credit Svcs 611 Druid Rd E Ste 715 Clearwater, FL 33756 | | H | | | | | | 41.00 |

  __1__   continuation sheets attached

Subtotal
(Total of this page)      **21,399.00**

Copyright (c) 1996-2009 - Best Case Solutions - Evanston, IL - (800) 492-8037          S/N:27472-091001    Best Case Bankruptcy

# Exhibit "6"

B8 (Form 8) (12/08)

# United States Bankruptcy Court
## District of Nevada

In re  **Joseph R Esquivel, Jr.**
       **Lori Esquivel**                                                    Case No. _____
                                            Debtor(s)                        Chapter    **7**

## CHAPTER 7 INDIVIDUAL DEBTOR'S STATEMENT OF INTENTION

**PART A -** Debts secured by property of the estate. (Part A must be fully completed for **EACH** debt which is secured by property of the estate.  Attach additional pages if necessary.)

| Property No. 1 | |
|---|---|
| **Creditor's Name:**<br>**Bank Of America** | **Describe Property Securing Debt:**<br>**Debtors' residence located at 6940 Surrey Ct, Las Vegas NV** |

Property will be (check one):
- ☐ Surrendered        ■ Retained

If retaining the property, I intend to (check at least one):
- ☐ Redeem the property
- ■ Reaffirm the debt
- ☐ Other.  Explain _____ (for example, avoid lien using 11 U.S.C. § 522(f)).

Property is (check one):
- ■ Claimed as Exempt        ☐ Not claimed as exempt

| Property No. 2 | |
|---|---|
| **Creditor's Name:**<br>**Countrywide Home Lending** | **Describe Property Securing Debt:**<br>**Debtors' residence located at 6940 Surrey Ct, Las Vegas NV** |

Property will be (check one):
- ☐ Surrendered        ■ Retained

If retaining the property, I intend to (check at least one):
- ☐ Redeem the property
- ■ Reaffirm the debt
- ☐ Other.  Explain _____ (for example, avoid lien using 11 U.S.C. § 522(f)).

Property is (check one):
- ■ Claimed as Exempt        ☐ Not claimed as exempt