JOSEPH R. ESQUIVEL, JR.
LORI ESQUIVEL fka LORI HERDA
6940 Surrey Ct.
Las Vegas, Nevada  89145
(702) 856-0609

DEBTORS IN PROPER PERSON

RECEIVED & FILED

Nov 20  3 44 PM '12

U S BA............
MARY A SCHOTT, CLERK

UNITED STATES BANKRUPTCY COURT

DISTRICT OF NEVADA

In RE:

JOSEPH R.ESQUIVEL, JR. and
   LORI ESQUIVEL,

          Debtors

) CASE No.: BK-S-09BK-29326-BAM
)
) Date January 3, 2013
) Time: 10:00 a.m.
)
) Chapter 7
)

## MOTION TO REOPEN BK 7 CASE AND MOTION TO SANCTION BANK OF AMERICA N.A.

COMES NOW, JOSEPH R. ESQUIVEL, JR. and LORI ESQUIVEL fka LORI HERDA,Debtors in Proper Person, and submit the following Motion to Reopen BK 7 Case and Motion to Sanction Bank of America N.A. pursuant to 11 U.S.C. Sec 350(b)

### Introduction

**Bank of America N.A.has violated the discharge orders from the court.**

### Facts

1.     The debt obligation of the Tangible Herda Promissory Note of Lori Esquivel fka Lori Herda was ordered discharged by the United States Bankruptcy Court District of Nevada on September 27, 2010.

*Page 1 of 10   Motion to Reopen BK Case and Sanction Bank of America N.A.*

*Joseph R. Esquivel Jr. and Lori Esquivel fka Lori Herda*

RECEIPT #210814    $ 260.00

2. BAC Home Loans Servicing LP claiming to be a "secured creditor" filed with this Court an objection to the determination of the court of BAC Home Loans Servicing LP status as an unsecured creditor on October 19, 2010.

3. On November 12, 2010 this United States Bankruptcy Court denied that objection citing that as a debtor BAC Home Loans Servicing LP had been discharged on September 27, 2010 and was without standing to object.

4. This discharge order has been acknowledged by Bank of America N.A. Bank of America N.A. states that there has been a discharge of the debt pertaining to Account Number 097135374. (See Exhibit "A" attached within)

5. Repeatedly and for 11 months Bank of America N.A. continued to acknowledge this discharge of debt in monthly statements.

6. In a letter on Bank of America Home Loans letterhead, dated November 02, 2012 addressed to Joseph Esquivel and Lori Esquivel fka Lori Herda, Bank of America N.A. gave notice of Intent to Accelerate and Foreclose. (See Exhibit "B" attached within)

7. In this November 02, 2012 letter, Bank of America N.A., as servicer to the holder of the promissory note evidencing the discharged loan, claims to retain rights against property securing a loan acknowledged by Bank of America N.A. to be discharged.

8. In this November 02, 2012 letter Bank of America N.A., as servicer to the holder of the promissory note evidencing the discharged loan, demands under the power of the promissory note and the threat of foreclosure that the Esquivels reinstate the discharged loan.

9. In this letter Bank of America N.A further threatens that if the Esquivels do not reinstate the discharged loan by "curing" an alleged default, by paying $60,541.86, Bank of America N.A will initiate foreclosure proceedings against the Esquivel property.

10. In this letter Bank of America N.A. further threatens to enter and inspect the Esquivel Property under the authority of the discharged debt evidenced by the Tangible Herda Promissory Note.

**Arguments**

The Bank of America N.A. Threat to Collect on a Debt Under the Tangible Herda Promissory Note is a Direct Defiance of this United States Bankruptcy Court

11. The debt obligation of the Tangible Herda Promissory Note was determined by this United States Bankruptcy Court to be an unsecured debt.

> pursuant to BK Rule 3001(d) *Evidence of Perfection of Security Interest. If a security interest in property of the debtor is claimed, the proof of claim shall be accompanied by evidence that the security interest has been perfected.*

Bank of America N.A. objected and presented its alleged proof of claim, however, was unable to prove in the eyes of this Court that it had standing as a secured creditor. As such, the debt of the Tangible Herda Promissory Note was ordered discharged.

12. In this November 02, 2012 letter, Bank of America N.A., as servicer to the holder of the discharged Tangible Herda Promissory Note, under the power of that Promissory Note, threatens to collect monies owed though that Promissory Note by initiating foreclosure proceeding against the Esquivel property. This action is a direct disregard and defiance of the

determination of this United States Bankruptcy Court that the debt under the Promissory Not has been discharged.

In the November 27, 2012 Letter Bank of America N.A Does Not Attempt To, and Can Not if it Were to Attempt To, Enforce a Security Interest Separately from the Promissory Note

13.     A panel of the United States Court of Appeals for the Eleventh District issued a published opinion in *Reese v. Ellis, Painter, Ratterree & Adams, LLP, 678 F.3d 1211 (11th Cir. 2012)*. In this opinion it was noted that;

> *"Promissory note" is a contract evidencing a debt and specifying terms under which one party will pay money to another."*

> *"Security interest" is not a promise to pay a debt, but is an interest in some collateral that a lender can take if a debtor does not fulfill a payment obligation."*

> *"Mortgage" is a type of security interest with real property as the collateral."*

> *"Fact that dunning letter and other documents sent to consumers relate to the enforcement of a security interest does not prevent them from also relating to the collection of a debt, ..... a communication may have dual purposes."*

14.     That same panel of the United States Court of Appeals for the Eleventh District reinforced the *Reese* opinion in *Birster and Birster v. American Home Mortgage Servicing Inc. No. 11-13574 D.C. Docket No. 9:10-cv-80735-WPD (7/18/2012)* by citing *Reese v. Ellis*:

*". . . A communication related to debt collection does not become unrelated to debt collection simply because it also relates to the enforcement of a security interest."*

There is No Evidenced Payee of the Herda Tangible Promissory Note

15. A copy of the Herda Tangible Promissory Note was evidenced into this Bankruptcy Court. The copy of the Herda Tangible Promissory Note evidenced into this Court has a special indorsement with an as of yet unnamed payee on the bottom right hand side of page 2 of the copy of the Tangible Herda Note. (See Exhibit "C" attached within)

16. The UCC allows any party to complete an incomplete special indorsement, making that party entitled to enforcement rights upon that negotiable instrument. If the copy of the Herda Tangible Promissory Note is true and accurate then no one has of yet made a claim as payee under the Herda Tangible Promissory Note.

17. With no named payee evidenced, the Bank of America N.A. claimed ownership of the Herda Tangible Promissory Note is as the bearer of the instrument by possession alone. If Bank of America N.A. or someone else does hold the actual original Herda Tangible Promissory Note they would be possessors of an instrument, incomplete in its negotiation, evidencing a debt that has been discharged.

The Herda Tangible Note has been Determined Not to be Secured by Real Property

18. For a Party with ownership of a Tangible Note to be a Holder in Due Course with the rights and power of foreclosure, the "Power of Sale", the Deed of Trust (Security securing) must remain secured to Real Property. <u>When a separation of Ownership of the Tangible Obligation and the Ownership of Conditions which secure the Tangible Obligation occurs by failing to follow mandated law, the Deed of Trust (Security Instrument securing) is no longer</u>

secured by Real Property as there can not be an attachment and perfection of a Deed of Trust to that of a discharged Tangible Note, there can not be a Holder in Due Course of the Tangible Herda Note. Such owner has lost the right to seek alternate payment by use of a now invalid security instrument. Therefore, any Party seeking to bring a claim, against real estate title in a foreclosure, as Holder in Due Course of a Secured Deed of Trust, must demonstrate an unbroken chain of properly recorded assignments of the Deed of Trust/ Mortgage and a parallel unbroken chain of completed Tangible Note indorsements. Making a claim of beneficial interest in a Deed of Trust without an unbroken chain of properly recorded assignments of the Deed of Trust/ Mortgage and a parallel unbroken chain of completed Tangible Note indorsements would place anyone doing so in jeopardy of violating Federal Statutes and/or Local Laws of Jurisdiction.

19.   When that subsequent owner of the Herda Tangible Promissory Note fails to permanently perfect (filing of record as required by law) ownership of the associated Herda Deed of Trust into their name, while gaining ownership of a Note, it renders a Secured Note into an Unsecured Note. Ownership of Note, not joined with ownership of a Real Property Lien (the Deed of Trust), separates the Tangible Promissory Note debt from the Conditions to enforce the Power of Sale. The UCC has no retroactive means to re-establish an unsecured negotiable instrument back into a secured negotiable instrument. Secured status and Unsecured status is dependent upon ownership the Deed of Trust in compliance with local laws of jurisdiction NRS 104.9301.

By These Actions Bank of America N.A. is in Violation of FDCPA 15 USC § 1692

20.   Bank of America N.A. is attempting to enforce the claim of a security interest on Real Property in complete violation of 15 USC § 1692 of the FDCPA- Unfair Practices. Bank of America N.A. is claiming to act as servicer on behalf of a Note holder who has no Beneficial Interest in the Herda Deed of Trust. There also can be no foreclosure of the Herda Deed of Trust without accounting for and dealing with the underlying Herda Tangible Promissory

Note. FDCPA claims for illegal and fraudulent consumer debt collection projected through foreclosure actions remain actionable.

<u>Bank of America N.A. has been Previously Sanctioned for and Continues These Same Actions</u>

21.     Bank of America N.A. has been previously sanctioned by the United States Bankruptcy Court in *re McClure No. 07-43036 -DML* (11/23/2009) for the same practices exhibited here, "willful violation of a discharge injunction". In that instance the McClures were awarded $82,339.14 in compensatory damages and sanctions were imposed against Bank of America N.A. in the amount of $100,000.00.

22.     Bank of America N.A. has also been sanctioned by the United States Bankruptcy Court in *re Kirkbride No. 08-0012-8-JRL* (11/19/2010) for the same practices exhibited here, "flagrantly disregarded the Court's order and discharge injunction". In that instance the Kirkbrides were awarded $63,000.00 in compensatory damages and sanctions were imposed against Bank of America N.A. in the amount of $63,000.00 for punitive damages.

23.     Bank of America N.A. has also been sanctioned by the United States Bankruptcy Court in *re Anita Smith No. 6:08-bk-0135-ABB* (3/21/2012) for the same practices exhibited here, "violations of the Debtor's discharge injunction". In that instance Anita Smith was awarded $11,500.00 in compensatory damages.

<u>Summation</u>

24.     Transfers of ownership [intangible interest in the Herda intangible obligation] are governed by UCC Article 9. Ownership means the right to economic benefits [intangible payment stream] of the Herda Note. The original intangible obligor as pledging the security

interest is the party liable for the intangible payment stream and if there is a foreclosure, it would be by the intangible obligee pursuing the assets of the intangible obligor for foreclosure

25. Without the intangible oblige having being properly assigned and perfected the beneficial interest of the Herda Deed of Trust there is no Secured Deed of Trust to attach to the Herda Tangible Promissory Note. A Deed of Trust can only enforce its conditions over the debt through the Note's representation or evidence of, specifically, the attached Intangible Obligation. When ownership or possession of a Note does not include ownership of the specific attached Intangible Obligation, a Deed of Trust can not survive a moment as an enforceable contract.

26. Ownership of the discharged Herda Intangible Obligation can not be rejoined to Ownership of the Herda Tangible Promissory Note or to the Herda Deed of Trust.

27. Bank of America N.A., acting as servicer for the intangible obligee under an Intangible Security Interest, has no claim of enforcement of any rights against the Herda property as there is no secured nor perfected attachment of the Herda Deed of Trust to the Herda Tangible Promissory Note.

28. The blatant actions of Bank of America N.A., as intangible servicer attempting a foreclosure action, on the behalf of a Intangible Note Holder, when there is no secured interest in the Herda property, are in defiance of the Bankruptcy Court determination to discharge the debt of the Herda Tangible Promissory Note. With the discharge of the Tangible Herda Promissory Note debt obligation there can be no intangible obligation. (See Exhibit "D" attached within)

29. Bank of America N.A. should be sanctioned for its continuing actions of attempting a foreclosure when the Intangible Noteholder that is claiming to be represented can have no

enforcement rights against the Herda Property and no Secured Interest in the Herda Deed of Trust.

WHEREFORE, Debtors move this Court for Judgment as follows:

(1)   That this Honorable Court reopen this Bankruptcy Case;

(2)   That the Tangible Herda Promissory Note evidencing the debt discharged on September 27, 2010 by this Court be ordered to be brought forward by the Holder, to this Court, to be permanently canceled and/or destroyed;

(3)   That this Court award Joseph Esquivel and Lori Esquivel fka Lori Herda compensatory damages to reflect damages caused not only by direct violation of the Esquivel's protection under a Bankruptcy but also by the damages that would have resulted in the improper foreclosure attempt by Bank of America N.A.

(4)   That this Court sanction Bank of America N.A. for its blatant disregard and defiance of this Court's discharge order of the debt under Tangible Herda Promissory Note in a manner that reflects the Bank of America N.A. blatant, continued, repeated and ongoing disregard and defiance of the authority of the United States Bankruptcy Court in this and other instances;

(5)   That this Court restate that the property rights of the Debtor have been determined to be eliminated of any unproven claim and or lien;

(6)   That the Public Record in Clark County be ordered corrected to reflect this Court's determination of discharge and satisfaction of all unproven liens on the Esquivel Property;

(7)    That any claim of Bank of America N.A. attempting to enforce rights as servicer to the Tangible Herda Promissory Noteholder or as holder of the Tangible Herda Promissory Note against the Herda property be dismissed with prejudice as those rights can not exist;

(8)    Whatever other remedies that this Honorable Court deems Right and Proper;

Dated this 27 day of November , 2012

By: *[signature]*
JOSEPH R. ESQUIVEL, JR., PRO SE
DEBTOR

*[signature]*
LORI ESQUIVEL fka LORI HERDA,
PRO SE DEBTOR

# EXHIBIT "A"



**Bank of America**
**Home Loans**

Customer Service
PO Box 5170
Simi Valley, CA 93062-5170

Statement date **10/30/2012**
**Account Number 097135374**
Property address
6940 Surrey Court

1 of 4

**Home loan overview**
Principal Balance                                      $194,650.09
Escrow balance                                         -$4,758.51

0 1 3 6 1 5 7 01 AT 0.371 **AUTO  T5 0 9490 89145-5224
MSR C2 AG 0501-----0--2--- C0000066 IN 1 P36294
LORI HERDA
6940 Surrey Ct
Las Vegas NV 89145-5224



### FOR INFORMATION PURPOSES                           FOR CUSTOMER SERVICE: 1.800.669.6607

### IMPORTANT NOTICE

**The Details of this Special Notice:** We appreciate the opportunity to service your loan, value our relationship with you and are always looking for ways to increase customer satisfaction. The purpose of this notice is to clarify for you why we are providing this special notice and to let you know that it will appear in all future monthly statements you receive. If you don't want us to send you monthly statements in the future, please call us at 1.800.669.6607.

**The Impact of the Bankruptcy:** Our records indicate that in the past you received a discharge of this debt in a bankruptcy case. Section 524 of the Bankruptcy Code tells us the discharge of this debt means you have no personal obligation to repay it. The discharge also protects you from any efforts by anyone to collect this discharged debt as a personal liability of the debtor. You cannot be pressured to repay this debt. On the other hand, the security agreement allows foreclosure if the requirements under the loan documents are not met. We also need to tell you that this communication is from a debt collector. This quick summary is not intended as legal advice. You should consult with your own advisors if you have legal questions about your rights.

**Payment Details:** We received a number of calls from homeowners disturbed that they were receiving this message, as their bankruptcy occurred some time ago. Others called asking for detailed information about the home loan. Therefore, we are providing detailed loan information as a courtesy to you. This is not an attempt to collect a debt that has been discharged. This is not a demand for payment. The coupon below and the envelope are provided as a courtesy to you.

The loan documents provide that if we do not receive the next scheduled home loan payment by 11/16/2012, the loan may be assessed a late charge of $63.95.

If you would like to receive more information, including options such as how to pay electronically and stop receiving paper monthly statements, please contact us at 1.800.669.6607. Thank you for your business and we look forward to serving you in the coming years.

**Payments and amounts summary**

| Monthly payment breakdown as of 10/30/2012 | | Total payments to bring loan current† | |
|---|---:|---|---:|
| Principal and/or interest payment | $1,278.93 | Principal and interest payments (past and current) | $52,436.13 |
| Escrow payment amount | $142.89 | Escrow payments (past and current) | $7,791.34 |
| **Total payment amount 11/01/2012** | **$1,421.82** | **Total** | **$60,227.47** |

| | | **Total payments and amounts** | |
|---|---|---|---:|
| †For more information, please see the **Other Important Information** section of this statement. | | Outstanding payments (incl. opt. prod. as applies) | $58,805.65 |
| | | Current payment 11/01/2012 | $1,421.82 |
| | | Outstanding late charges | $831.35 |
| | | Fees due | $904.86 |
| | | **Total** | **$61,963.68** |

---

**You can make your payment:**

- By automatic draft payment using PayPlan
- Online at www.bankofamerica.com
- By phone - call 1.800.669.6607
- At any Bank of America Banking Center
- By mail using the enclosed envelope
  - Make your check payable to
    Bank of America, N.A.
  - Please write your loan number on the check or money order
  - Include this payment coupon with your check (do not staple your check to the coupon)
  - Please do not send cash or include correspondence

Loan Number  **097135374**    (3)
Lori Herda
6940 Surrey Court
Las Vegas, NV 89145

9490

Bank of America, N.A.
PO BOX 650070
DALLAS, TX 75265-0070

**11/01/2012**                            **$1,421.82**

Additional Principal

Additional Escrow

Total amount enclosed

0971353743000001421820001485 77

⑆586990058⑆ 0971353 74 ⑈

0136157 0331307

EXHIBIT "B"


**Bank of America**

**Home Loans**
P.O. Box 650070
Dallas, TX 75265-0070

Business Address:
7105 Corporate Drive
Plano TX 75024

Send Payments to:
P.O. Box 650070
Dallas, TX 75265-0070

October 29, 2012

Lori Herda
6940 Surrey Court
Las Vegas, NV 89145-5224

Account No.: 97135374
Property Address:
6940 Surrey Court
Las Vegas, NV 89145-5224

## NOTICE OF INTENT TO ACCELERATE AND FORECLOSE

Dear Lori Herda:

**IMPORTANT NOTICE:** THIS NOTICE IS BEING FURNISHED FOR INFORMATIONAL PURPOSES ONLY AND SHOULD NOT BE CONSTRUED AS AN ATTEMPT TO COLLECT AGAINST YOU PERSONALLY. WHILE YOUR OBLIGATION TO BANK OF AMERICA, N.A. MAY HAVE BEEN DISCHARGED, BY OPERATION OF LAW, BANK OF AMERICA, N.A. HAS RETAINED THE ABILITY TO ENFORCE ITS RIGHTS AGAINST THE PROPERTY SECURING THE LOAN IN THE EVENT OF A DEFAULT.

Bank of America, N.A. (hereinafter "Bank of America, N.A.") services the home loan described above on behalf of the holder of the promissory note (the "Noteholder"). The loan is in serious default because the required payments have not been made. The total amount now required to reinstate the loan as of the date of this notice is as follows:

| | | | |
|---|---|---|---|
| Monthly Charges: | 07/01/2009 | | $46,009.27 |
| | 02/01/2012 | | $12,796.38 |
| Late Charges: | 07/01/2009 | | $191.85 |
| | 01/01/2012 | | $639.50 |
| Other Charges: | Total Late Charges: | | $0.00 |
| | Uncollected Costs: | | $904.86 |
| | Partial Payment Balance: | | ($0.00) |
| | | **TOTAL DUE:** | **$60,541.86** |

You have the right to cure the default. To cure the default, on or before December 8, 2012, Bank of America, N.A. must receive the amount of $60,541.86 plus any additional regular monthly payment or payments, late charges, fees and charges which become due on or before December 8, 2012.

The default will not be considered cured unless Bank of America, N.A. receives "good funds" in the amount of $60,541.86 on or before December 8, 2012. Please contact Bank of America at 1-800-669-0102 to determine the full amount owed. If any check (or other payment) is returned to us for insufficient funds or for any other reason, "good funds" will not have been received and the default will not have been cured. No extension of time to cure will be granted due to a returned payment. Bank of America, N.A. reserves the right to accept or reject a partial payment of the total amount due without waiving any of its rights herein or otherwise. For example, if less than the full amount that is due is sent to us, we can keep the payment and apply it to the debt but still proceed to foreclosure since the default would not have been cured.

If the default is not cured on or before December 8, 2012, the mortgage payments **will be accelerated** with the full amount remaining accelerated and becoming due and payable in full, and foreclosure proceedings will be initiated at that time. As such, the failure to cure the default may result in the foreclosure and sale of your property.

However, Bank of America, N.A. and the Noteholder shall be entitled to collect all fees and costs incurred by Bank of America, N.A. and the Noteholder in pursuing any of their remedies, including but not limited to reasonable attorney's fees, to the full extent permitted by law. Further, you have the right to assert in the foreclosure proceeding and/or may have the right to bring a court action to assert the non-existence of a default or any other defense you may have to acceleration and foreclosure.

Pursuant to your loan documents, Bank of America, N.A. may, enter upon and conduct an inspection of your property because your loan is in default. The purposes of such an inspection are to (i) observe the physical condition of your property, (ii) verify that the property is occupied and/or (iii) determine the identity of the occupant. If you do not cure the default prior to the inspection, other actions to protect the mortgagee's interest in the property (including, but not limited to, winterization, securing the property, and valuation services) may be taken. **The costs of the above-described inspections and property preservation efforts will be charged to your account as provided in your security instrument and as permitted by law.**

This communication is from Bank of America, N.A., the servicer of your home loan.

Please write your account number on all checks and correspondence.
We may charge you a fee (of up to $40.00) for any payment returned or rejected by your financial institution, subject to applicable law.   C3_4367 BLQNSENV 15225 09/04/12

**Payment Instructions:**

EXHIBIT "C"

Account No.: 097135374

Prepared by: JANELL HAAS

LOAN #: 97135374

# NOTE

MAY 03, 2005          LAS VEGAS          NEVADA
[Date]                       [City]                       [State]

6940 SURREY COURT, LAS VEGAS, NV 89145
[Property Address]

## 1. BORROWER'S PROMISE TO PAY

In return for a loan that I have received, I promise to pay U.S. $ 205,000.00 (this amount is called "Principal"), plus interest, to the order of the Lender. The Lender is
COUNTRYWIDE HOME LOANS, INC.
I will make all payments under this Note in the form of cash, check or money order.
I understand that the Lender may transfer this Note. The Lender or anyone who takes this Note by transfer and who is entitled to receive payments under this Note is called the "Note Holder."

## 2. INTEREST

Interest will be charged on unpaid principal until the full amount of Principal has been paid. I will pay interest at a yearly rate of 6.375 %.
The interest rate required by this Section 2 is the rate I will pay both before and after any default described in Section 6(B) of this Note.

## 3. PAYMENTS

(A) Time and Place of Payments
I will pay principal and interest by making a payment every month.
I will make my monthly payment on the FIRST day of each month beginning on
JULY 01, 2005 . I will make these payments every month until I have paid all of the principal and interest and any other charges described below that I may owe under this Note. Each monthly payment will be applied as of its scheduled due date and will be applied to interest before Principal. If, on JUNE 01, 2035 , I still owe amounts under this Note, I will pay those amounts in full on that date, which is called the "Maturity Date."
I will make my monthly payments at
P.O. Box 10219, Van Nuys, CA 91410-0219
or at a different place if required by the Note Holder.

(B) Amount of Monthly Payments
My monthly payment will be in the amount of U.S. $ 1,278.93

## 4. BORROWER'S RIGHT TO PREPAY

I have the right to make payments of Principal at any time before they are due. A payment of Principal only is known as a "Prepayment." When I make a Prepayment, I will tell the Note Holder in writing that I am doing so. I may not designate a payment as a Prepayment if I have not made all the monthly payments due under the Note.
I may make a full Prepayment or partial Prepayments without paying a Prepayment charge. The Note Holder will use my Prepayments to reduce the amount of Principal that I owe under this Note. However, the Note Holder may apply my Prepayment to the accrued and unpaid interest on the Prepayment amount, before applying my Prepayment to reduce the Principal amount of the Note. If I make a partial Prepayment, there will be no changes in the due date or in the amount of my monthly payment unless the Note Holder agrees in writing to those changes.

## 5. LOAN CHARGES

If a law, which applies to this loan and which sets maximum loan charges, is finally interpreted so that the interest or other loan charges collected or to be collected in connection with this loan exceed the permitted limits, then: (a) any such loan charge shall be reduced by the amount necessary to reduce the charge to the permitted limit; and (b) any sums already collected from me which exceeded permitted limits will be refunded to me. The Note Holder may choose to make this refund by reducing the Principal I owe under this Note or by making a direct payment to me. If a refund reduces Principal, the reduction will be treated as a partial Prepayment.

## 6. BORROWER'S FAILURE TO PAY AS REQUIRED

(A) Late Charge for Overdue Payments

LOAN #: 97135374

### (C) Notice of Default

If I am in default, the Note Holder may send me a written notice telling me that if I do not pay the overdue amount by a certain date, the Note Holder may require me to pay immediately the full amount of Principal which has not been paid and all the interest that I owe on that amount. That date must be at least 30 days after the date on which the notice is mailed to me or delivered by other means.

### (D) No Waiver By Note Holder

Even if, at a time when I am in default, the Note Holder does not require me to pay immediately in full as described above, the Note Holder will still have the right to do so if I am in default at a later time.

### (E) Payment of Note Holder's Costs and Expenses

If the Note Holder has required me to pay immediately in full as described above, the Note Holder will have the right to be paid back by me for all of its costs and expenses in enforcing this Note to the extent not prohibited by applicable law. Those expenses include, for example, reasonable attorneys' fees.

## 7. GIVING OF NOTICES

Unless applicable law requires a different method, any notice that must be given to me under this Note will be given by delivering it or by mailing it by first class mail to me at the Property Address above or at a different address if I give the Note Holder a notice of my different address.

Any notice that must be given to the Note Holder under this Note will be given by delivering it or by mailing it by first class mail to the Note Holder at the address stated in Section 3(A) above or at a different address if I am given a notice of that different address.

## 8. OBLIGATIONS OF PERSONS UNDER THIS NOTE

If more than one person signs this Note, each person is fully and personally obligated to keep all of the promises made in this Note, including the promise to pay the full amount owed. Any person who is a guarantor, surety or endorser of this Note is also obligated to do these things. Any person who takes over these obligations, including the obligations of a guarantor, surety or endorser of this Note, is also obligated to keep all of the promises made in this Note. The Note Holder may enforce its rights under this Note against each person individually or against all of us together. This means that any one of us may be required to pay all of the amounts owed under this Note.

## 9. WAIVERS

I and any other person who has obligations under this Note waive the rights of Presentment and Notice of Dishonor. "Presentment" means the right to require the Note Holder to demand payment of amounts due. "Notice of Dishonor" means the right to require the Note Holder to give notice to other persons that amounts due have not been paid.

## 10. UNIFORM SECURED NOTE

This Note is a uniform instrument with limited variations in some jurisdictions. In addition to the protections given to the Note Holder under this Note, a Mortgage, Deed of Trust, or Security Deed (the "Security Instrument"), dated the same date as this Note, protects the Note Holder from possible losses which might result if I do not keep the promises which I make in this Note. That Security Instrument describes how and under what conditions I may be required to make immediate payment in full of all amounts I owe under this Note. Some of those conditions are described as follows:

If all or any part of the Property or any Interest in the Property is sold or transferred (or if Borrower is not a natural person and a beneficial interest in Borrower is sold or transferred) without Lender's prior written consent, Lender may require immediate payment in full of all sums secured by this Security Instrument. However, this option shall not be exercised by Lender if such exercise is prohibited by Applicable Law.

If Lender exercises this option, Lender shall give Borrower notice of acceleration. The notice shall provide a period of not less than 30 days from the date the notice is given in accordance with Section 15 within which Borrower must pay all sums secured by this Security Instrument. If Borrower fails to pay these sums prior to the expiration of this period, Lender may invoke any remedies permitted by this Security Instrument without further notice or demand on Borrower.

PAY TO THE ORDER OF

_____
WITHOUT RECOURSE
COUNTRYWIDE HOME LOANS, INC.

BY _____
David A. Spector
Managing Director

EXHIBIT "D"

# Bankruptcy Injunction Violation



Tangible – Tangible Obligor
Discharged Tangible Obligation
Nullified the Security Instrument

Discharged Tangible Obligation | Tangible Security | Attachment Perfection "Nullity"

Interest In

### Intangible Obligation
### Intangible Obligor

Intangible Obligation
Intangible Interest in Tangible

Discharged Tangible Security

Notice of "Intangible" Foreclosure
Violation of the Discharge Injunction

Claiming a right to collect under a Tangible Security Instrument that has no tangible obligation to Attach and Perfect too is a nullity.

Willful and intentional act by intangible servicer to collect a discharged tangible obligation by attempting to collect under an Intangible Obligation created by an Intangible Obligor